

FILED
MAR 16 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMETRI J. DANIELS
5208 Martinique Lane
Alexandria, Virginia
202-255-6515

    Plaintiff *Pro Se*,

v.

MICHAEL CHERTOFF,
Secretary,
U.S. DEPARTMENT OF HOMELAND
SECURITY
Washington, DC 20528

    Defendant.

Case: 1:07-cv-00505
Assigned To : Walton, Reggie B.
Assign. Date : 3/16/2007
Description: DANIELS V. CHERTOFF

JURY ACTION

# COMPLAINT
(Disability, Retaliation or Reprisal, and Hostile Work Environment)

1. Plaintiff Demetri J. Daniels brings this action against Defendant Michael Chertoff, Secretary, United States Department of Homeland Security (Agency), to recover compensatory damages and other actions that will make the Plaintiff "whole" (in the condition he would have been but for the discrimination), for:

    a) violating Sections 501 of the Rehabilitation Act of 1973, as amended, that prohibits employment discrimination against Federal employees with disabilities and incorporates the requirements of the Americans with Disabilities Act;

    b) harassing or "retaliating" against an individual who engaged in the protected activities to oppose unlawful EEO practices and to

participate in EEO proceedings, as described under Title VII of the Civil Right Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*; and for

c) creating or tolerating a hostile work environment directed at Plaintiff, a covered individual, who opposed unlawful EEO practices and participated in EEO proceedings as defined by Title VII of the Civil Right Act of 1964, as amended.

## I. PARTIES AND JURISDICTION

2. Demetri J. Daniels is a resident of Fairfax County, Virginia, residing at 5208 Martinique Lane, Alexandria, 22315.

3. Michael Chertoff is the head of the United States Department of Homeland Security, an agency of the Federal government within the meaning of 5 U.S.C. §552a (a) (1) and 552(e).

4. The United States Department of Homeland Security employed Mr. Daniels, as a Supervisory Auditor in the Office of Inspector General until April 30, 2005, the date of his forced disability of retirement.

5. Section 706(f) (3) of Title VII, as amended, 42 U.S.C. §2000e-5, provides this Court with jurisdiction over the Defendant because the alleged discriminatory and retaliatory/reprisal acts took place at 1120 Vermont Avenue, in Washington, DC.

6. This Court has subject matter jurisdiction pursuant 29 U.S.C. §1331. Venue is proper in this Court pursuant to 28 U.S.C. §1391.

7. Mr. Daniels properly exhausted his administrative remedies pursuant to 29 C.F.R. §1614.4079(b).

## II. STATEMENT OF FACTS

8. The Plaintiff, Demetri J. Daniels, is a former Supervisory Auditor for the Agency, the Department of Homeland Security's (DHS) Office of Inspector General (OIG).

9. Mr. Daniels, an African-American male, had been with the Agency since its inception, March 1, 2003, until his forced disability retirement on April 30, 2005.

10. In addition to his duties auditing duties, Mr. Daniels also worked for the Agency as a part-time Equal Employment Opportunity (EEO) Counselor, as described in 29 CFR 1614.105.

11. On May 2, 2003, the Agency's EEO Director, Ms. Pauline Campbell, formally assigned Mr. Daniels to resolve the EEO complaint filed by Ms. Patsye Ervin, an auditor in the DHS-OIG Atlanta Field Office.

12. Mr. Daniels immediately sent an email to his immediate superiors in DHS-OIG, notifying them of his involvement as the assigned EEO Counselor.

13. During the initial EEO counseling session, on May 17, 2003, Ms. Ervin named Mr. Gary Barard, her Atlanta Field Office Director, as responsible for her discrimination complaint.

14. Mr. Daniels explained to Ms. Ervin his past association with Mr. Barard, which extended over 30 years; and that he worked for Mr. Barard about 15 years ago.

15. He also explained to Ms. Ervin a well-known fact: That Mr. Barard was a close friend to the then- DHS Acting Inspector General, Richard Skinner.

16. After his meeting with Ms. Ervin, Mr. Daniels e-mailed Mr. Barard on May 21, 2003 at 9:12a.m., to assure him of his neutrality.

17. Mr. Daniels reported that he wrote this letter to (1) reaffirm the EEO Counselor's required neutral posture, (2) describe the objectives and scope of his limited review based on his talk with Ms. Ervin, and (3) facilitate a successful resolution.

18. As mentioned in the following paragraphs of this complaint, Mr. Daniels claims that his employer's conduct from May 21, 2003 forced him to retire on disability on April 30, 2005, ten (10) years short of his career goal; and in post-retirement continues to harm his socially, medically and economically.

19. Moreover, as mentioned in the following paragraphs of this complaint, Mr. Daniels claims that his employer's conduct from May 21, 2003 until his forced disability retirement on April 30, 2005, had the effect of unreasonably interfering with his work performance and created an intimidating, hostile, or offensive work environment and, taken as a whole, constituted constructive discharge.

20. On May 21, 2003, at 9:25a.m., Mr. Barard responded to Daniels' 9:12a.m email. He addressed his email to his immediate supervisor, Ms. Nancy Hendricks. His email contained four false and unsubstantiated allegations about me, the Plaintiff, known below as, "Jim." Mr. Barard stated:

   a) "I have heard that Patsy, with Jim's assistance, have been working to develop a sex discrimination complaint against the office."

    b) While I was Jim's supervisor, "I found Jim's performance as an auditor unacceptable and had to put him on a Performance Improvement Plan (PIP)." "Jim has not forgotten this and I do not believe he can be objective."

    c) "During a recent visit to Washington D.C. in April, Jim asked me several questions about Patsy[e] pending CORE termination, without informing me that he was representing her as EEO counselor."

    d) "I have been contacted that Jim has contacted several former female employees I have supervised inquiring about how they were treated."

21. Though Mr. Barard's four accusations were entirely false, it served as sufficient proof for Mr. Reback, Chief Counsel to the DHS Inspectors General, to make the following finding on May 27, 2003.

22. Without any prior discussion with Mr. Daniels, Mr. Reback sent him this email, which Daniels read on May 28, 2003: Reback stated:

23. "I placed a call to you earlier today but have not heard back. I have learned that you had a prior working relationship with at least one of the individuals involved in the Patsy Ervin EEO complaint. Accordingly, you have a conflict of interest as well as an appearance of a conflict and cannot be involved as the counselor in this matter. Please withdraw so that a new counselor can be assigned."

24. Note: This pattern of deception is similar to the current case involving two border patrol agents convicted; though the DHS-IG later admitted to Congress that the claimed documentary proof did not exist.

25. I forwarded Mr. Reback's May 27, 2003 email to my immediate supervisor, Ms. Nancy Hendricks and also to the EEO Director, Ms. Pauline Campbell, who had assigned me to the case. Both seemed puzzled by Mr. Reback's conflict of interest finding.

26. Ms. Hendricks responded, in part, "Jim, I will be out until Thursday. I would like for you to get back with Rick Reback about the EEO situation. I think if you have a chance to sit down and talk things out, it would definitely help everyone understand what is going on. Get Pauline Campbell involved if necessary. I will have my cell phone with me if you need to call me. Thanks."

27. Mr. Daniels' leave records show that shortly after reading Mr. Reback's accusatory email, Mr. Daniels suffered an on-the-job recurrence of a pre-existing condition, Post Traumatic Stress Disorder, PTSD, on May 28, 2003.

28. According to medical evidence, "this disorder tends to be more severe when the stressor involves deliberate human malice as opposed to a twist of fate or bad luck."

29. The triggering event leading to this condition was Mr. Daniels' false arrest for shoplifting years ago. This false arrest caused Mr. Daniels great embarrassment and fear.

30. One crucial aspect of that event was that the authorities, similar to Mr. Reback, did not question Mr. Daniels or permit him to present any defense before his arrest.

31. This feeling of helplessness and fear of a summary conclusion of guilt returned when Mr. Daniels received the May 28, 2003 email from Richard Reback, Counsel to the Inspector-General, ordering ( not recommending or suggesting) Mr. Daniels to remove himself as EEO counselor on a case.

32. When ordering Mr. Daniels to remove himself as EEO Counselor, Mr. Reback violated the chain of command, as required by IG Ervin's written office procedure. Had he consulted Nancy Hendricks, my immediate supervisor, he would have known about my medical disorder; and I would still be a respected as a productive Federal employee.

33. Moreover, Mr. Reback failed to consult with the EEO Director, who assigned me as the EEO Counselor in this matter.

34. For Mr. Daniels, his medical condition warranted several accommodations.

35. One key accommodation allowed Mr. Daniels to work at home beginning May 26, 2004—a year after his May 28, 2003 on the job injury.

36. Mr. Daniels believed that the delay to grant him the work-at-home accommodation was deliberate and contrary to DHS Secretary Tom Ridge's October 9, 2003 policy to accommodate the needs of those with disabilities.

37. Mr. Daniel's leave records further show that from May 29, 2003 to June 23, 2003, when he applied for Worker's Compensation benefits, he had taken a total of 110 hours medical leave, or about 14 work days.

38. The Plaintiff did not find out about the four unsupported and false accusations contained in Mr. Barard's May 21 email until June 23, 2003, when his supervisor, Ms. Nancy Hendricks, signed his application to receive Worker's Compensation benefits.

39. On July 12, 2003, Mr. Daniels filed an EEO complaint, the first in his Federal career.

40. In a July 25, 2003 letter, Mr. Daniel's attorney, James R. Klimaski, notified Ms. Nancy Hendricks, Daniels' immediate supervisor, that "Daniels has asked me to represent him concerning the incident at the Agency which caused him to take medical leave."

41. According to Mr. Daniels' attorney, "one symptom of PTSD is an individual's inability to return to the location where the stressor took place.

42. DHS-OIG is headquartered at 1120 Vermont Avenue in Washington, D.C. Mr. Daniels last day at that location was June 23, 2003.

43. Mr. Daniels asked Ms. Hendricks to send all oral and written communications from the Agency through his attorney.

44. Mr. Daniels believed this communication plan was needed because the on-the-job-injury acutely affected his concentration and memory.

45. On October 24, 2003, Mr. Reback, who allegedly caused Mr. Daniels' injury, wrote to Mr. Daniels' attorney, " Neither the OIG nor any of its employees accepts any responsibility for Mr. Daniels' decision to absent himself from work since May 27, 2003.

46. Mr. Daniels took exception to this statement because, in his opinion, Mr. Reback caused his injury. As such, for him to sign this letter would constitute a real conflict of interest on his part, same as what he accused Daniels of having as an EEO Counselor.

47. When interviewed by the EEO Counselor on October 25, 2004 about his statement (numbered 45), Mr. Reback responded, "You need to ask Doris Wojnorwski at 202-254-4211 because I don't have the answer."

48. However, according to the DHS-OIG monthly newsletter, Ms. Wojnorwski was hired on November 3, 2003, after Mr. Reback wrote his October 24, 2003 letter.

49. On December 18, 2003, Monica R. Senger, the DHS-OIG Director of Human Resources wrote to Daniels' attorney, "We will be arranging for an Agency doctor to review the medical records and examine Mr. Daniels in order for us to determine whether he continues to be eligible for the participation in the leave transfer program and whether or not the requested accommodations are reasonable."

50. On March 1, 2004, Doctor Martin G. Allen, a Board Certified Psychiatrist issued Ms. Senger's requested medical report to DHS-OIG Program Manager, Edward Stulginsky.

51. Below is a summary of Doctor Martin G. Allen's findings:
   a) "Last June, Mr. Daniels was removed from a case on which he was working because of a potential conflict of interest. This event—which would ordinarily be of limited consequence for most people—had great

impact on Mr. Daniels because of his emotional fragility and his previous traumatic experience."

b) "There has been a clear and sever impact of his condition, on his overall health and major life activities."

c) "Duty accommodations are clearly warranted; their therapeutic value would be to help restore Mr. Daniels to a functioning, contributing member of society."

52. Dr. Allen also noted that one way PTSD manifests itself is emotional fragility—the individual's emotions protect him or her from placing her or himself in situations creating a stress reaction.

53. The Agency ignored Dr. Allen's March 1, 2004 recommendations.

54. Instead, Mr. Edward Stulginsky prepared a Notice of Proposed Removal on March 8, 2004.

55. Mr. Daniels never met Mr. Stulginsky. So he took exception to the conclusion reached in his March 8, 2004 Notice of Proposed Removal, in which he stated—

a) "Your repeated failure to adhere to your supervisors' instructions and to report to work has raised serious questions in management's mind as to your overall integrity and dependability, and it has also had a negative impact on the organization."

56. Mr. Daniels believed that this sentiment was also expressed when Mr. Daniels' attorney stated—

a) "There was an implication that Mr. and Mrs. Daniels were somehow conspiring to deceive the Agency concerning the receipt of his security papers." Mr. Klimaski stated that he "believed this implication came from the Agency's counsel."

57. In his Proposal to Remove Daniels from Federal service, Mr. Edward Stulginsky stated that the evidence in his proposal supports the conclusions reached.

58. However, Mr. Daniels alleges that this evidence included an e-mail by a co-worker who said that he was engaged in a marriage counseling business. The co-worker later apologized to Mr. Daniels, in writing, for the erroneous claim.

59. Other evidence used by Mr. Stulginsky stated that Mr. Daniels and his spouse attempted to abuse the leave donor program. The Agency, subsequently, restored him to the leave donor program after Congressman Moran intervened.

60. Mr. Daniels believes that by removing him from the leave transfer program on January 25, 2004 and returning surplus leave in Mr. Daniels donated leave account, Mr. Stulginsky succeeded in charging him with AWOL on January 26, 2004. In short, Mr. Stulginsky intentionally created a leave deficit; then charged Daniels with AWOL.

61. Mr. Daniels believes that, because of his mental disability, and possibly because of his race and gender, Mr. Stulginsky was motivated to ignore

Page 11 of 13

Dr. Allen's March 1, 2004 medical report, which he had at the time of his March 8, 2004 proposed removal letter.

62. On May 17, 2004 Mr. Daniels asked Congressman James P. Moran to intervene and help resolve the employer/employee conflict.

63. With the help of Congressman Moran, Mr. Daniels' accommodations were granted on May 26, 2004, when he (1) began working at home (2) was restored to the leave donor program, and (3) was removed from the proposed threat to terminate from Federal service.

64. However, the Agency did not pay Mr. Daniels the wages and benefits it erroneously withheld from January 26 to May 25, 2004.

65. Moreover, Mr. Daniels worked at home without the resources needed to perform the essential functions of his job. For example, Mr. Daniels had to pay for his own research books, even though he requested reimbursement.

66. Also by refusing to admit any wrongdoing, the Agency denied Mr. Daniels the timely and needed medical treatment from the Department of Labor.

67. This only worsened Mr. Daniels' medical condition, which continued after his forced disability retirement.

## III. RELIEF REQUESTED

WHEREFORE, Plaintiff Demetri J. Daniels requests judgment against Michael Chertoff, Secretary of Homeland Security, as follows:

A. $300,000 in compensatory damages.[1]

B. Back pay and benefits.

C. Reasonable reimbursement of costs.

D. Such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff Demetri J. Daniels demands a jury to determine all issues so triable.

Respectfully submitted,

March 16, 2007
Date

By: _____
Demetri J. Daniels
5208 Martinique Lane
Alexandria, Virginia 22315
202-255-6515

Plaintiff *Pro Se*

Attachment: 3 pages

DHS Final Decision, Received December 20, 2006
Agency Number: HS 03-HQ-002342

---

[1] Not considered as part of ADR relief; which ended prior to April 30, 2005.



Office for Civil Rights and Civil Liberties
U.S. Department of Homeland Security
Washington, DC 20528

# Homeland Security

*Complaint of Demetri Daniels v. Michael Chertoff,*
*Secretary, Department of Homeland Security*
Agency Number: HS 03-HQ-002342

DEC 1 1 2006

### CERTIFIED AND REGULAR MAIL
### RETURN RECEIPT REQUESTED

Ray S. Smith, III
Marshall and Lueder, LLC
Five Concourse Parkway, Suite 800
Atlanta, GA 30328

RECEIVED
DEC 2 0 2006

Dear Mr. Smith:

This is the Department of Homeland Security's (DHS) Final Decision on the above-identified complaint of discrimination filed on December 27, 2004, by Demetri J. Daniels, former Supervisory Auditor with DHS, Office of Inspector General, Audit Division, whom you represent.

DHS, Office of Equal Employment Opportunity (DHS-HQ EEO) received a cover letter along with attachments to support the complaint on January 3, 2005. Attachments included: (1) a Notice of Final Interview and Right to File Formal Complaint dated December 14, 2004; and (2) a copy of the final draft of the EEO Counselor's Report dated December 14, 2004. On January 7, 2005, Complainant was advised to submit additional documentation to support his claim.

On January 25, 2005, DHS-HQ EEO received the following documents from Complainant: (1) a cover letter dated January 23, 2005; (2) DHS-Form 3090-1 dated January 23, 2005; and (3) a copy of the EEO Counselor's Report.

Title 29, Code of Federal Regulations (C.F.R.) §1614.107(a)(1) requires an agency to dismiss any discrimination complaint that fails to state a claim under Subsections 1614.103 or 1614.106(a). To state a claim, an individual must be an "aggrieved employee" within the scope of 29 C.F.R. §1614.103, which the Equal Employment Opportunity Commission (EEOC) has defined as one who sustains a present harm or loss with respect to a term, condition, or privilege of employment for which there is a remedy. Diaz v. Dep't of the Air Force, EEOC Request No. 05931049 (1994). "A tangible employment action constitutes a significant change in employment status, ...." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998). Terms, conditions, or privileges of employment include hiring, termination, compensation, promotion, demotion, discipline, reasonable accommodation, appraisals, awards, training benefits, assignments, overtime, leave and tours of duty. Dyess v. U.S. Postal Service, EEOC Appeal No. 01964103 (1997). "An agency is required to address EEO complaints only when filed by an individual who has suffered direct, personal deprivation at the hand of the employer; the agency's act must have caused some concrete effect on

the aggrieved person's employment status." <u>Quinones v. Dep't of Defense</u>, EEOC Request Appeal No. 05920051 (1992).

Pursuant to 29 C.F.R. §1016.106(c) a complaint must contain a signed statement from the person claiming to be aggrieved or that person's attorney and the signed statement must be sufficiently precise to identify the aggrieved individual and the agency and to describe generally the action(s) or practice(s) that form the basis of the complaint. Lacking a description of the allegations of discrimination, an EEO complaint does not reflect that a complainant is aggrieved, i.e., has suffered a harm to a term or condition of her employment. <u>Colter v. Dep't of the Army</u>, EEOC Appeal No. 01A44284 (2005) (the agency's dismissal of the complaint for failure to state a claim was affirmed). EEOC has held that in the absence of such a precise statement, allegations lack sufficient specificity to permit an investigation and, hence, fail to state a claim under 29 C.F.R. §1614.103. <u>Peoples v. Department of Treasury</u>, Appeal No. 01A21058 (2002) (complainant's unclarified allegations that she had not been promoted in 26 years, and that the agency did not communicate effectively with her and was insensitive, failed to constitute a justifiable claim); and <u>Johnson v. U.S. Postal Service</u>, EEOC Appeal No. 01970385 (1997) (agency's dismissal of allegations upheld by EEOC where a complainant failed to provide the requested dates of the alleged incidents and other relevant information about them). In this case, Complainant's lack of a precise statement, including information on the conduct at issue and the incidents giving rise to such conduct results in his failure to establish himself as an "aggrieved employee." Therefore, his complaint fails to state a claim for which relief may be granted.

Subsection 1614.107(a)(5) provides for the dismissal of a complaint, or portions thereof, when the issues raised therein are moot. An allegation is moot only if: (1) there is no reasonable expectation that the alleged violation will recur; and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. <u>Henderson v. Department of the Treasury</u>, EEOC Request No. 05940820 (1995); <u>County of Los Angeles v. Davis</u>, 440 U.S. 625,631 (1979); <u>Waller v. Perry, Secretary, Department of Defense</u>, EEOC Appeal No. 01964123 (1997) (EEOC affirmed dismissal where complainant alleged she was "harassed and threatened" holding that the second prong of the <u>Davis</u> standard was met because it was not apparent that there was any relief to which appellant would be entitled in the event she could prove discrimination).

In his letter dated January 25, 2005, Complainant stated that the remedy he seeks is to be made whole socially, professionally, educationally, economically and medically. In this case, DHS is not empowered to engage in any remedial or corrective action that would achieve the requested relief. Furthermore, on or about February 22, 2005, Complainant's treating physician advised him not to return to work because of his disability. Complainant subsequently retired on April 30, 2005. As a result, there is no reasonable expectation that the alleged discrimination will recur because Complainant is no longer employed with DHS. Since Complainant's disability and his retirement are interim events that have eradicated the effects of the alleged discrimination, both prongs of the <u>Davis</u> standard are met in this case.[1] Therefore, the issues raised in this complaint are moot.

Accordingly, for the reasons stated above and pursuant to the EEOC regulations cited, this complaint is dismissed in its entirety. An award of attorney's fees is not appropriate. This letter

---

[1] It is noted that Complainant did not request compensatory damages.

2

constitutes the final action by DHS on this complaint. If Complainant is dissatisfied with this decision, he may file an appeal according to the instructions at Enclosure (1). The appeal form is at Enclosure (2).

Sincerely,

Carmen H. Walker
Deputy Officer
Equal Employment Opportunity Programs
Office for Civil Rights and Civil Liberties

Enclosures: (1) Notice of Appeal Rights
(2) EEOC Form 573

cc: Demetri J. Daniels
5208 Martinique Lane
Alexandria, Virginia 22315

HQ EEO Officer
Department of Homeland Security – Headquarters
245 Murray Drive, SW
Bldg. 410
Washington, DC 20528

KHK

3

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
Demetri J. Daniels

## DEFENDANTS
Michael Chertoff, Secretary, U.S. Department of Homeland Security

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Fairfax, VA
(EXCEPT IN U.S. PLAINTIFF CASES)  88888

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
n/a (Plaintiff is filing pro se.)

ATTORNEYS (IF KNOWN)

Case: 1:07-cv-00505
Assigned To : Walton, Reggie B.
Assign. Date : 3/16/2007
Description: DANIELS V. CHERTOFF

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
◉ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A. Antitrust**

○ **B. Personal Injury/Malpractice**

○ **C. Administrative Agency Review**
☐ 151 Medicare Act
Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

OR   ○ **F. Pro Se General Civil**

```
Court Name: District of Columbia
Division: 1
Receipt Number: 4616002952
Cashier ID: dcallis
Transaction Date: 03/16/2007
Payer Name: DEMETRI DANIELS

CIVIL FILING FEE
 For: DEMETRI DANIELS
 Amount:      $350.00

MONEY ORDER
 Check/Money Order Num: 08511744672
 Amt Tendered: $350.00

Total Due:     $350.00
Total Tendered: $350.00
Change Amt:      $0.00

07-0505

Only when the bank clears the
check, money order, or verifies
credit of funds, is the fee or debt
officially paid or discharged. A
$45 fee will be charged for a
returned check.
```

tcy
appeal 28 USC 158
Withdrawal 28 USC 157

Petitions
Death Penalty
Mandamus & Other
Civil Rights
Prison Condition

Rights
opyrights
atent
rademark

x Suits
es (US plaintiff or
fendant
S-Third Party 26
C 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ⊙ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
42 U.S.C. Sec. 2000e-5, Sec. 706(f)(3) of Title VII, as amended. Retaliation and disability discrimination.

| VII. REQUESTED IN COMPLAINT | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ 500,000 JURY DEMAND: | Check YES only if demanded in complaint<br>YES ☒   NO ☐ |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | (See instruction) | YES ☐   NO ☒ | If yes, please complete related case form. |
|---|---|---|---|

DATE March 16, 2007   SIGNATURE OF ATTORNEY OF RECORD _Demetri_ /s/

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.