UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMETRI J. DANIELS                        )
                                          )
                    Plaintiff,            )
                                          )          Civil Action No. 07-0505 (RBW)
          v.                              )
                                          )
MICHAEL CHERTOFF, Secretary,              )
U.S. Department of Homeland Security      )
                                          )
                    Defendants.           )
                                          )

## NOTICE OF FILING OF EXHIBITS

On January 15, 2008, Defendant, Attorney General Michael Mukasey, through counsel

filed a motion to dismiss or in the alternative for summary judgment.  Attached are the exhibits

which support that dispositive motion.  The Defendant did not include the four medical reports

of the Plaintiff which are exhibits to the dispositive motion because the Defendant has moved to

file those exhibits under seal.  See Exhibits 12, 18, 23 (redacted in full) and 30 (redacted in part).


Dated: January 16, 2008                 Respectfully submitted,


                                         /s/
                                        ANDREA McBARNETTE, D.C. Bar  # 483789
                                        Assistant United States Attorney Center Building
                                        555 Fourth Street, N.W.
                                        Washington, D.C. 20530
                                        (202) 514-7153

Exhibit 1, Emails May 21, 2003

## Daniels, James

| | |
|---|---|
| From: | Daniels, James |
| Sent: | Wednesday, May 21, 2003 9:12 AM |
| To: | 'gary.barard@dhs.gov' |
| Cc: | 'david.'; 'kimble@dhs.gov'; Hendricks, Nancy |
| Subject: | Notification Letter -- EEO |

Wednesday, May 21, 2003

Gary J. Barard
Field Office Director
DHS-OIG, Atlanta Field Office

Good Morning, Gary

As you may know, I will soon interview several employees who worked or have worked under your supervision in the Atlanta District Office. When an employee initiates the EEO process, the supervisor and those interviewed must cooperate fully with the EEO Counselor. So, I would like to take this opportunity to familiarize you with my role as the assigned EEO Counselor.

It is important for you to know that I am not an agent for management or the aggrieved employee. As the assigned EEO Counselor, my role is to gather pertinent information impartially and facilitate a resolution of the allegations.

For resolution, some of the considerations are what is fair to the complainant, acceptable to the manager or supervisor, consistent with law and agency policy, and in the overall best interest of the agency. Ultimately, responsible management officials are in the best position to resolve the matter, if it can be resolved.

This informal stage of the EEO complaint process is designed to reveal what took place and allow the problem (s) to be resolved. Early resolutions are encouraged because they can help create a good outcome for all. They can negate the destructive influence of an open complaint and can prevent more complaints based on the original issue.

Gary, I would like to thank you in advance for your full cooperation.


Jim

James Daniels
EEO Counselor
DHS-OIG

Exhibit F-23.3

05/06/05  FRI 13:22 FAX 202 646 4320        EQUAL RIGHTS                                    ☑003

**From:**      Barard, Gary
**Sent:**      Wednesday, May 21, 2003 9:25 AM
**To:**        Hendricks, Nancy
**Subject:**   Patsy Erwin Re: Cell Phone and other Matters

Hi Nancy:

I just received Patsy Erwin's E-mail relating to our Administrative Officer's request for cell phones and noticed that you and Jim Daniels were sent a copy.
The purpose of this E-Mail is to provide you with a brief background on the telephone issue and express concern about Jim Daniels' involvement in whatever complaint Patsy is attempting to develop.

Regarding the telephone issue, several members of our senior staff (George Peoples, Chris Gamble, Raul Adrian, Sharon Thompson, Billy Howard, ect)  currently do  not have cell phones and we have been advised by Admin staff in HQ that we will not be getting any replacements phones in the foreseeable future, if ever .Those without phones are supervising or performing as AIC on major jobs, and are in constant travel status. I have a need to communicate with these employees frequently but at times it has been quite difficult to contact them while they are in the field. On the other hand, those with cell phones are seldom, if ever contacted by cell phone and when an attempt is made, there is no answer. Therefore, to address this problem, our Administrative Officer suggested that we retrieve cell phones from all GS 11 and 12, and develop a redistribution plan. The Admin. Officer is currently working on a redistribution plan with our two GS -14. However, Patsy apparently believes that the recall of cell phones is personnaly directed at her. This is not so.

I have heard that Patsy, with Jim's assistance, have been working to develop a sex discrimination complaint against the office. Rest assured, Patsy has not been discriminated against in any form or fashion. If any thing, concessions have been made on her behalf and this maybe the cause for her current actions and feeling of empowerment. Nonetheless, if she believe the contrary, its her right to pursue. However, I have some serious concerns if Jim Daniels is working with her as a EEO Counselor.

First, I was Jim's supervisor while I served as FEMA Acting IG and Assistant IG for Audit. While his supervisor, I found Jim's performance as an auditor unacceptable and had to put him on a Performance Improvement Plan (PIP). Jim hasn't forgotten this and I do not believe he can be objective.  Also, during a recent visit to Washington D.C. in April, Jim asked me several questions about Patsy pending CORE termination, without informing me that he was representing her as EEO counselor. Finally, I have been informed that Jim has contacted several former female employees I have supervised inquiring about how they were treated. Although I firmly believe I have treated all employees fairly, I find Jim's action as an EEO Counselor appalling.

Please contact me if you have any questions.


Gary

Exhibit 2, Email May 27, 2003

**Daniels, James**

From:              Rebeck, Richard
Sent:              Tuesday, May 27, 2003 6:28 PM
To:                Daniels, James
Subject:           EEO complaint

Jim,

I placed a call to you earlier today but have not heard back. I have learned that you had a prior working relationship with at least one of the individuals involved in the Patsy Ervin EEO complaint. Accordingly, you have a conflict of interest as well as an appearance of a conflict and cannot be involved as the counselor in this matter. Please withdraw so that a new counselor can be assigned.

Thanks, Rick

1

Exhibit 3, Letter of July 12, 2003

July 12, 2003

James Daniels
DHS-OIG
5208 Martinique Lane
Alexandria, Virginia 22315

Pauline Campbell, Director
Office of Equal Rights
500 C Street S.W., Room 407
Washington, DC 20472

Dear Ms. Campbell:

Please accept my apology for not staying in touch with your office. I last spoke with you on May 28, 2003. At that time I told you that I was asked to withdraw as an EEO Counselor based on an appearance of a conflict of interest, in fact and appearance. I was not consulted or given the opportunity to respond before this decision; and this is my first written response since that decision.

As you requested, on Monday, July 14, I will give you the information that the OIG's servicing personnel office, the Bureau of Public Debt, sent to me. I will also include the EEO forms signed by the Complainant and the approved extension signed by you. Though I performed some analytical work, it may not be in the best interest of the employee or management to include this information, since I was accused of having, without any doubt, a genuine conflict of interest. It may be better for the new counselor to start fresh and draw his or her own conclusions.

A few months ago, Deputy Secetary Gordon England published his 13 "Principles of Leadership". Of these, I would like to recall these three: (11) "Treat every person right with dignity and respect— nobody is more important than anyone else," (12) "Be forthright, honest and direct with every person and in every circumstance", and (13) "Make ethical standards more important than legal requirements."

Had these three principles been followed, I would not be initiating the EEO complaint process today, which comes within 45 days of this job incident. After five years of counseling others, I will now need an EEO Counselor for the first time in my 29-year federal carreer.

My initial appointment with an EEO Counselor would have to be delayed until I am medically fit to return to duty. I am also hoping that, by that time, I would feel better about what happened and withdraw my concern. I realize that the author of the attached e-mail was simply doing what he had been told to do--what was politically expedient. Moreover, failing to realize that there are two sides to every story, he acted only on what he was told. Had there been a

conflict of appearance, in fact or appearance, I would have recused myself as I have done before.

     Pauline, please give my regards to Joan Johnson. She is a credit to your EEO Program. But for reasons that were beyond her control, I was not able to respond and keep her informed.

     Thank you for your patience and understanding.

James Daniels

attachment (May 27, 2003 email)

**Daniels, James**

From:
Sent:                    Reback, Richard
To:                      Tuesday, May 27, 2003 6:28 PM
Subject:                 Daniels, James
                         EEO complaint

Jim,

I placed a call to you earlier today but have not heard back. I have learned that you had a prior working relationship with at least one of the individuals involved in the Patsy Ervin EEO complaint. Accordingly, you have a conflict of interest as well as an appearance of a conflict and cannot be involved as the counselor in this matter. Please withdraw so that a new counselor can be assigned.

Thanks, Rick

1

Exhibit 4, Workers' Compensation Claim

SEP-19-2005 MON 03:14 PM BPD                    FAX NO. 3044808282                    P. 09/17

**Federal Employee's Notice of
Traumatic Injury and Claim for
Continuation of Pay/Compensation**

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

**CONFIDENTIAL**

Employee: Please complete all boxes 1 - 15 below. Do not complete shaded areas.
Witness: Complete bottom section 16.
Employing Agency (Supervisor or Compensation Specialist): Complete shaded boxes a, b, and c.

**Employee Data**

| 1. Name of employee (Last, First, Middle) DANIELS JAMES | | | 2. Social Security Number |
|---|---|---|---|
| 3. Date of birth Mo. Day Yr. -50 | 4. Sex ☑ Male ☐ Female | 5. Home telephone 703-922-5388 | 6. Grade as of date of injury GS Level 14 Step 8 |

| 7. Employee's home mailing address (Include city, state, and ZIP code) 5208 MARTINIQUE LANE Alexandria Virginia 22315 | 8. Dependents ☑ Wife, Husband ☐ Children under 18 years ☐ Other |
|---|---|

**Description of Injury**

9. Place where injury occurred (e.g. 2nd floor, Main Post Office Bldg., 12th & Pine)
DHS-OIG 1120 Vermont Avenue N.W. 10th Floor, Washington DC

| 10. Date injury occurred Mo. Day Yr. 5-28-03 | Time 8:00 ☑ a.m. ☐ p.m. | 11. Date of this notice Mo. Day Yr. 6-4-03 | 12. Employee's occupation Auditor |
|---|---|---|---|

13. Cause of injury (Describe what happened and why)

See Attached Cause and Nature of Injury
Pre-existing Condition previously reported.

14. Nature of injury (Identify both the injury and the part of body, e.g., fracture of left leg)

See Attached Cause and Nature of Injury

Occupation code: GM0511
b. Type code 620  c. Source code 0280
OWCP Use - NOI Code

**Employee's Signature**

15. I certify, under penalty of law, that the injury described above was sustained in performance of duty as an employee of the United States Government and that it was not caused by my willful misconduct, intent to injure myself or another person, nor by my intoxication. I hereby claim medical treatment, if needed, and the following, as checked below, while disabled for work.

☑ b. Continuation of regular pay (COP) not to exceed 45 days and compensation for wage loss if disability for work continues beyond 45 days. If my claim is denied, I understand that the continuation of my regular pay shall be charged to sick or annual leave, or be deemed an overpayment within the meaning of 5 USC 5584.

☐ a. Sick and/or Annual Leave

I hereby authorize any physician or hospital (or any other person, institution, corporation, or government agency) to furnish any desired information to the U.S. Department of Labor, Office of Workers' Compensation Programs (or to its official representative). This authorization also permits any official representative of the Office to examine and to copy any records concerning me.

Signature of employee or person acting on his/her behalf _James Daniels_          Date 6-4-03

Any person who knowingly makes any false statement, misrepresentation, concealment of fact or any other act of fraud to obtain compensation as provided by the FECA or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment or both.

Have your supervisor complete the receipt attached to this form and return it to you for your records.

**Witness Statement**

16. Statement of witness (Describe what you saw, heard, or know about this injury)

| Name of witness | Signature of witness | | Date signed |
|---|---|---|---|
| Address | City | State | ZIP Code |

Form CA-1
Rev. Apr. 1998

1/15

SEP-19-2005 MON 03:14 PM BPD                    FAX NO. 3044808282                    P. 10/17

Official Supervisor's Report: Please complete information requested below.

**Supervisor's Report**

17. Agency name and address of reporting office (include city, state, and zip code)
*Department of Homeland Security, Office of Inspector General*
*1120 Vermont Ave. 10th Floor Washington DC*

OWCP Agency Code **4B02I6**
OSHA Site Code **N/A**
ZIP Code

18. Employee's duty station (Street address and ZIP code)
*Same as above*

19. Employee's retirement coverage
☒ CSRS  ☐ FERS  ☐ Other, (identify)

20. Regular work hours: From: **7:00** ☒ a.m. ☐ p.m.  To: **4:30** ☐ a.m. ☒ p.m.

21. Regular work schedule: ☐ Sun. ☒ Mon. ☒ Tues. ☒ Wed. ☒ Thurs. ☒ Fri. ☐ Sat.

22. Date of Injury  Mo. Day Yr. **5/28/03**

23. Date notice received  Mo. Day Yr. **6/4/03**

24. Date stopped work  Mo. Day Yr. **6/10/03**  Time: **9:30** ☒ a.m. ☐ p.m.

25. Date pay stopped  Mo. Day Yr. **N/A**

26. Date 45 day period began  Mo. Day Yr. **6/11/03**

27. Date returned to work  Mo. Day Yr. **N/A**  Time: ☐ a.m. ☐ p.m.

28. Was employee injured in performance of duty?  ☒ Yes  ☐ No  (If "No," explain)

29. Was injury caused by employee's willful misconduct, intoxication, or intent to injure self or another?  ☐ Yes  (If "Yes," explain)  ☒ No

30. Was injury caused by third party?  ☒ Yes  ☐ No  (If "No," go to Item 32.)

31. Name and address of third party (include city, state, and ZIP code)
*per employee email from Chief Counsel, Richard Reback*

32. Name and address of physician first providing medical care (include city, state, ZIP code)
*INOVA Emergency - Alexandria Hospital*

33. First date medical care received  Mo. Day Yr. **6/10/03**

34. Do medical reports show employee is disabled for work?  ☒ Yes  ☐ No

35. Does your knowledge of the facts about this injury agree with statements of the employee and/or witnesses?  ☒ Yes  ☐ No  (If "No," explain)

36. If the employing agency controverts continuation of pay, state the reason in detail.
*N/A*

37. Pay rate when employee stopped work  **$ 100,645** Per **year**

**Signature of Supervisor and Filing Instructions**

38. A supervisor who knowingly certifies to any false statement, misrepresentation, concealment of fact, etc., in respect of this claim may also be subject to appropriate felony criminal prosecution.

I certify that the information given above and that furnished by the employee on the reverse of this form is true to the best of my knowledge with the following exception:

Name of supervisor (Type or print)  *Nancy L. Hendricks*

Signature of supervisor  *Nancy L. Hendricks*

Supervisor's Title  *Deputy Assistant IG for Audit*

Date  **6/23/03**

Office phone  **(202) 254-4178**

39. Filing instructions
☐ No lost time and no medical expense: Place this form in employee's medical folder (SF-66-D)
☐ No lost time, medical expense incurred or expected: forward this form to OWCP
☒ Lost time covered by leave, LWOP, or COP: forward this form to OWCP
☐ First Aid injury

Form CA-1,

Rev. Apr. 1999

CONFIDENTIAL    CONFIDENTIAL   2/15    CONFIDENTIAL

SEP-19-2005 MON 03:15 PM BPD                    FAX NO. 3044808282              P. 11/17

Wednesday, June 04, 2003                         **CONFIDENTIAL**

RE:        James Daniels

SUBJECT:   Attachment to Form CA-1, Federal Employee's Notice of Traumatic
           Injury and Claim for Continuation of Pay

*Cause and Nature of Injury*

1. Pre-existing condition first reported on November 3, 1997 (see attached approved leave request).

2. On May 28, 2003, the pre-existing condition was aggravated when DHS-OIG auditor James Daniels opened the attached e-mail at work.

3. The injured employee requested and took time-off from work from May 29 to June 1; and for 5 hours on June 3, 2003 (see attached).

4. As a result of this injury, the employee's prescribed medications for the pre-existing condition increased; necessary to reduce the recurring symptoms associated with this medical disorder (avoidance, anxiety, depression, loss of concentration, etc).

10411

## Request for Leave or Approved Absence

| 1. Name (Last, first, middle) | | 2. Employee or Social Security Number |
|---|---|---|
| DANIELS JAMES | | |

**3. Organization**

DHS-OIG

| Type of Leave/Absence | | | | | | 5. Family and Medical Leave |
|---|---|---|---|---|---|---|

| Check appropriate box(es) and enter date and time below | Date From | To | Time From | To | Total Hours | If annual leave, sick leave, or leave without pay will be used under the Family and Medical Leave Act of 1993 (FMLA), please provide the following information: |
|---|---|---|---|---|---|---|
| ☑ Accrued annual leave | 5-09 | 5-30 | 7:00 | 4:30 | 18 | |
| ☐ Restored annual leave | | | | | | I hereby invoke my entitlement to family and medical leave for: |
| ☐ Advance annual leave | | | | | | |
| ☐ Accrued sick leave | | | | | | ☐ Birth/Adoption/Foster care |
| ☐ Advance sick leave | | | | | | ☐ Serious health condition of spouse, son, daughter, or parent |

**Purpose:**
☐ Illness/injury/incapacitation of requesting employee
☐ Medical/dental/optical examination of requesting employee
☐ Care of family member, including medical/dental/optical examination of family member, or bereavement
☐ Care of family member with a serious health condition
☐ Other

☐ Serious health condition of self.

**CONFIDENTIAL**

*Contact your supervisor and/or your personnel office to obtain additional information about your entitlements and responsibilities under the FMLA. Medical certification of a serious health condition may be required by your agency.*

| ☑ Compensatory time off | 6-1 | 6-1 | 7:00 | 4:30 | 9 |
|---|---|---|---|---|---|
| ☐ Other paid absence (specify in remarks) | | | | | |
| ☐ Leave without pay | | | | | |

**6. Remarks** ON-THE-JOB recurrence of PRE-EXISTING CONDITION. AGGRAVATED on MAY 28, 2003.

**7. Certification:** I certify that the leave/absence requested above is for the purpose(s) indicated. I understand that I must comply with my employing agency's procedures for requesting leave/approved absence (and provide additional documentation, including medical certification, if required) and that falsification of information on this form may be grounds for disciplinary action, including removal.

| 7a. Employee signature | 7b. Date Signed |
|---|---|
| JAMES Daniels | JUNE 3 2003 |

| 8a. Official action on request: | ☐ Approved  ☐ Disapproved | (If disapproved, give reason. If annual leave, initiate action to reschedule.) |
|---|---|---|

**8b. Reason for disapproval**

| 8c. Signature | 8d. Date signed |
|---|---|
| Dennis R Ucht | 6/3/03 |

**Privacy Act Statement**
**Section 6311** of title 5, United States Code, authorizes collection of this information. The primary use of this information is by management and your payroll office to approve and record your use of leave. Additional disclosures of the information may be: To the Department of Labor when processing a claim for compensation regarding a job connected injury or illness; to a State unemployment compensation office regarding a claim; to Federal Life Insurance or Health Benefits carriers regarding a claim; to a Federal, State, or local law enforcement agency when your agency becomes aware of a violation or possible violation of civil or criminal law; to a Federal agency when conducting an investigation for employment or security reasons; to the Office of Personnel Management or the General Accounting Office when the information is required for evaluation of leave administration; or the General Services Administration in connection with its responsibilities for records management.

**Public Law 104-134** (April 26, 1996) requires that any person doing business with the Federal Government furnish a social security number or tax identification number. This is an amendment to title 31, Section 7701. Furnishing the social security number, as well as other data, is voluntary, but failure to do so may delay or prevent action on the application. If your agency uses the information furnished on this form for purposes other than those indicated above, it may provide you with an additional statement reflecting those purposes.

Office of Personnel Management
5 CFR 630

Local Reproduction Authorized

Optional Form 71
June 2004
Formerly Standard Form (SF) 71

Exhibit 5, Letters of Denial from Department of Labor

File Number: 252032093
NODPOD-D-I

U.S. DEPARTMENT OF LABOR

EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
PO BOX 8300
LONDON KY 40742
Phone: (202) 513-6800

October 1, 2003



Date of Injury: 05/28/2003
Employee: James Daniels

JAMES DANIELS
5208 MARTINIQUE LANE
ALEXANDRIA, VA 22315

Dear Mr. Daniels:

## NOTICE OF DECISION

Your claim for compensation is denied because the evidence does not establish that you were injured in the performance of duty as required for coverage under the Federal Employees' Compensation Act (FECA).

In order for an injury to be covered under the FECA, the evidence must establish that the injury arose out of and in the course of employment. This generally means that the injury occurred while you were performing your duties as a Federal employee, and was related to the performance of those duties.

You filed a timely claim establishing that you were a Federal employee, who sustained an injury. The evidence provided does not establish that the injury occurred within the performance of duty. The claim lacked medical evidence to support your claim for an injury, medical evidence does not address how your federal employment has caused or contributed to your alleged condition/injury. The treating physician has listed your diagnosis as Post Traumatic Stress Disorder however your treating physician does not provide an explanation of how your Federal employment has contributed to or caused your alleged condition/injury.

We advised you of the deficiencies of your claim in a letter dated August 6, 2003 and gave you the opportunity to provide the necessary evidence to support your claim for an injury. You submitted the following evidence in response; CA-20 dated 9/5/03, CA-17 dated 8/4/03 and a CA-20 dated 8/4/03 from Antoinette Lewis, MD. The evidence was not sufficient because it does not establish that your injury occurred in the performance of duty. You have not submitted any evidence to this office addressing how your federal employment has caused, aggravated or contributed to your alleged condition/injury.

The Employees' Compensation Appeals Board has held that:

Initially, the Federal Employees' Compensation Act (FECA) does not apply to each and every injury or illness that is somehow related to an employee's employment. This based on the Lillian Cutler decision of the Employees' Compensation Appeals Board (28 ECAB 125). The Employees' Compensation Appeals Board (ECAB) has made decisions relating to claims of stress and of an emotional nature. Only incidents or factors which are

File Number: 252032093
NODPOD-D-I

considered to be in the performance of duty or factors of employment are covered by the
benefits of the Federal Employees' Compensation Act (FECA).

As a general rule, and employee's emotional reaction to an administrative or personnel
matter is not covered under the FECA.  William Karl Hansen, 49 ECAB__(Docket No. 95-
2925, issued October 23, 1997); Bernard Snowden, 49 ECAB__(Docket No. 95-1670,
issued October 23, 1997).

The Board has held that "Actions by coworkers or supervisors that are considered
offensive or harassing by a claimant may constitute compensable employment factors to
the extent that the implicated disputes and incidents arise in the performance of duty.  To
meet his or her burden of proof, a claimant must establish a factual basis for the claim by
supporting the harassment allegations with probative and reliable evidence."  Lillie M.
Hood, 48 ECAB__(Docket No. 96-57, issued November 1, 1996).

Based on these findings, the claim is denied because it is not established that your injury
occurred in the performance of duty.  Medical treatment is not authorized and prior
authorization, if any, is terminated.

Your employing agency will charge any previously paid Continuation of Pay to your sick and/or
annual leave balance or declare it an overpayment.

If you disagree with this decision, you should carefully review the attached appeal rights, and
pursue whichever avenue is appropriate to your situation.

Sincerely,

*Pamela Burke*

Pamela Burke
Claims Examiner

I Concur: Although the office found that the single
incident of being removed from a case
occurred, the action was a Personnel/
Eileen Padar     Administrative matter. The APPEALS Board
Senior Claims Examiner has consistently held that such
matters do not fall within the "Performanc
Enclosure: Appeal Rights of Duty" unless evidence is
presented to show the Employing
HOMELAND SECURITY
OFF OF THE INSPECTOR GENERAL Agency acted abusively or in
DEPARTMENT OF TREASURY BPD error. No such evidence
200 3RD STREET   ROOM 408     was presented.
PARKERSBURG, WV 26101

File Number: 252032093
NODPOD-D-I

## FEDERAL EMPLOYEES' COMPENSATION ACT APPEAL RIGHTS

If you disagree with the attached decision, you have the right to request an appeal. If you wish to request an appeal, you should review these appeal rights carefully and decide which appeal to request. There are 3 different types of appeal: HEARING (this includes either an Oral Hearing, or a Review of the Written Record), RECONSIDERATION, and ECAB REVIEW. YOU MAY ONLY REQUEST ONE TYPE OF APPEAL AT THIS TIME. Place an "X" on the attached form indicating which appeal you are requesting. Complete the information requested at the bottom of the form. Place the form on top of any material you are submitting. Then mail the form with attachments to the address listed for the type of appeal that you select. Always write the type of appeal you are requesting on the outside of the envelope ("HEARING REQUEST", "RECONSIDERATION REQUEST", or "ECAB REVIEW"). Your appeal rights are as follows:

**1. HEARING:** If your injury occurred on or after July 4, 1966, and you have not requested reconsideration, as described below, you may request a **Hearing**. To protect your right to a hearing, any request for a hearing must be made before any request for reconsideration by the District Office (5 U.S.C. 8124(b)(1)). Any hearing request must also be made in writing, within 30 calendar days after the date of this decision, as determined by the postmark of your letter. (20 C.F.R. 10.616). There are **two forms of hearing**. You may request either one or the other, but not both.

    **a.** One form of Hearing is an **Oral Hearing**. An informal oral hearing is conducted by a hearing representative at a location near your home. You may present oral testimony and written evidence in support of your claim. Any person authorized by you in writing may represent you at an oral hearing.

    **b.** The other form of a Hearing is a **Review of the Written Record**. This is also conducted by a hearing representative. You may submit additional written evidence, which must be sent with your request for review. You will not be asked to attend or give oral testimony.

**2. RECONSIDERATION:** If you have additional evidence or legal argument that you believe will establish your claim, you may request, in writing, that OWCP reconsider this decision. The request must be made within one calendar year of the date of the decision, clearly state the grounds upon which reconsideration is being requested, and be accompanied by relevant evidence not previously submitted. This evidence might include medical reports, sworn statements, or a legal argument not previously made, which apply directly to the issue addressed by this decision. In order to ensure that you receive an independent evaluation of the new evidence, persons other than those who made this determination will reconsider your case. (20 C.F.R. 10.605-610)

**3. REVIEW BY THE EMPLOYEES' COMPENSATION APPEALS BOARD (ECAB):** If you believe that all available evidence that would establish your claim has already been submitted, you have the right to request review by the ECAB (20 C.F.R. 10.625). The ECAB will review only the evidence received prior to the date of this decision (20 C.F.R. Part 501). Any request for review by the ECAB should be made within 90 days from the date of this decision. The ECAB may waive failure to file within 90 days if you request review within one year of the date of this decision and show a good reason for the delay.

If you request reconsideration or a hearing (either oral or review of the written record), OWCP will issue a decision that includes your right to further administrative review of that decision.

File Number: 252032093
NODPOD-D-I

Employee: JAMES  DANIELS

## APPEAL REQUEST FORM

If you decide to appeal this decision, read your Appeal Rights and these instructions carefully.  Specify which procedure you request by checking one option below.  Place this form on top of any materials specified below that you are submitting. Mail **THIS FORM**, along with any additional materials **TO THE APPROPRIATE ADDRESS**.  YOU MAY REQUEST ONLY ONE TYPE OF APPEAL AT THIS TIME.

_____ **HEARING - ORAL**

_____ **HEARING - REVIEW OF THE WRITTEN RECORD:**
    1) Submit this form within <u>30 calendar days of the date of the decision</u>
    2) You may submit additional written evidence with your request.

Write "HEARING REQUEST" on the outside of your envelope and mail it to:
    **Branch of Hearings and Review**
    **Office of Workers' Compensation Programs**
    **P. O. Box 37117**
    **Washington, DC  20013-7117**

_____ **RECONSIDERATION:**
    1) Submit your request within <u>1 calendar year of the date of the decision</u>.
    2) You must state the grounds upon which reconsideration is being requested.  Your request must include relevant new evidence or legal argument not previously made.

Write "RECONSIDERATION REQUEST" on the outside of your envelope and mail it to:
    **DOL DFEC Central Mailroom**
    **P. O. Box 8300**
    **London, KY  40742**

_____ **ECAB APPEAL:**
    1) Submit this form within <u>90 calendar days of the date of the decision</u>.
    2) No additional evidence after the date of the decision will be reviewed.
    3) To expedite the processing of your ECAB appeal, you may include a completed copy of the AB 1 form used by ECAB to docket appeals available on the Department of Labor Web Site at www.dol.gov/ecab

Write "ECAB REVIEW" on the outside of your envelope and mail it to:
    **Employees' Compensation Appeals Board**
    **200 Constitution Avenue NW, Room N-2609**
    **Washington, DC  20210**

SIGNATURE_____
PRINTED NAME_____ TODAY'S DATE_____
ADDRESS_____ DECISION DATE_____
CITY _____STATE_____ PHONE_____
    ZIP_____

U.S. DEPARTMENT OF LABOR

EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
PO BOX 8300
LONDON KY 40742
Phone: (202) 513-6800

October 7, 2004

Date of Injury: 06/28/2004
Employee:    James Daniels

JAMES DANIELS
5208 MARTINIQUE LANE
ALEXANDRIA, VA 22315

Dear Mr. Daniels:

## NOTICE OF DECISION

Your claim for compensation is denied because the evidence does not establish that you were injured in the performance of duty as required for coverage under the Federal Employees' Compensation Act (FECA).

On June 28, 2004, you went to Kinko's to retrieve the paperwork needed to update your security clearance. There is no explanation how your personal government security papers arrived at Kinko's in Waldorf, Maryland.

In order for an injury to be covered under the FECA, the evidence must establish that the injury arose out of and in the course of employment. This generally means that the injury occurred while you were performing your duties as a Federal employee, and was related to the performance of those duties.

You filed a timely claim establishing that you were a Federal employee, who sustained an injury. The evidence provided does not establish that the injury occurred within the performance of duty. Your injury did not occur on the premises of your employment establishment. According to Homeland Security, they did not instruct you to go to Kinko's on June 28, 2004. You did not provide any evidence verifying that your supervisor instructed you to go to Kinko's. At the time of this incident you were not performing any job related duties.

We advised you of the deficiencies of your claim in a letter dated August 16, 2004 and gave you the opportunity to provide the necessary evidence. You submitted the following evidence in response: you provided this office with a nine page statement; copy of our August 16, 2004 letter; pay period 13 time sheet; request for leave and approved absence; Charles County Sheriff Report; Fed Ex Kinko's employ statements; Second Weekly Progress Report; Petition for Name Change; Dr. Martin G. Allen's medical report; form CA-2a, Notice of Recurrence; progress report explaining recurrence; time and attendance report for pay period 15; Secretary Tom Ridge's EEO and Sexual Harassment Policy Statement; your response to our letter requesting additional medical evidence; and September 10, 2004 Memorandum from Marth Barksdale, Supervisory Auditor. The evidence was not sufficient because it does not establish that your injury occurred in the performance of duty.

Ms. Barksdale states the Department of Homeland Security does not have a written policy for retrieving DHS document. You agency contacts support that normally carries out such duties. She also states in her memo dated September 10, 2004 that

"The agency has no knowledge of what papers were found in Waldorf. Mr. Daniels has not provided us with copies of the documents he retrieved there nor are we aware of any OIG employee or any person on behalf of OIG sending documents to Mr. Daniels through the Kinko's in Waldorf, Maryland".

You live in Alexandra, Virginia. On June 28, 2004, you were informed by the Kinko's that personal government papers were found at Kinko's in Waldorf, Maryland. You were to Kinko's to retrieve these papers. This was a personal errand. You were not performing any duties related to your job as an auditor with Homeland Security. You did not provide any evidence that Homeland Security sent the documents to Kinko's. You did not provide any evidence that Homeland Security error or acted abusively when forward documents to you from the work place.

**Generally, reactions to actions taken in an administrative capacity are not compensable. But error or abuse by the employing establishment in what would other-wise be an administrative or personnel matter, or evidence that the employing establishment acted unreasonably in the administration of a personnel matter, may afford coverage. Abe E. Scott, 45 ECAB 164 (1933); Frederick D. Richardson, 45 ECAB 581 (1994); Rudy Madril, 45 ECAB 602 (1994); Joseph F. McHale, 45 ECAB 669 (1994).**

Based on these findings, the claim is denied because it is not established that your injury occurred in the performance of duty. Medical treatment is not authorized and prior authorization, if any, is terminated.

Your employing agency will charge any previously paid Continuation of Pay to your sick and/or annual leave balance or declare it an overpayment.

If you disagree with this decision, you should carefully review the attached appeal rights, and pursue whichever avenue is appropriate to your situation.

Sincerely,

SHARON COLLINS
Claims Examiner

I agree.

CHARMAYNE BROWNE
Senior Claims Examiner

Enclosure: Appeal Rights

File Number: 252047824
NODPOD-D-I

U.S. DEPARTMENT OF LABOR

EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMPENSATION PROGRAMS
PO BOX 8300
LONDON KY 40742
Phone: (202) 513-6800

January 21, 2005

Date of Injury: 11/12/2004
Employee:    Demetri Daniels

DEMETRI J. DANIELS
5208 MARTINIQUE LANE
ALEXANDRIA, VA 22315

Dear Mr. Daniels:

### NOTICE OF DECISION

Your claim for compensation is denied because the evidence does not establish that you were injured in the performance of duty as required for coverage under the Federal Employees' Compensation Act (FECA).

On November 12, 2004 you was home processing single audit reports. You used the last part of your tour of duty in resolving your EEO complaint.

In order for an injury to be covered under the FECA, the evidence must establish that the injury arose out of and in the course of employment. This generally means that the injury occurred while you were performing your duties as a Federal employee, and was related to the performance of those duties.

You filed a timely claim establishing that you were a Federal employee, who sustained an injury. The evidence provided does not establish that the injury occurred within the performance of duty.

We advised you of the deficiencies of your claim in letter dated December 14, 2004. You submitted the following documents.

(1) Your statement dated January 12, 2005, in reference to letter dated 12-14-04 requesting clarification of factual evidence a total of 18 pages including the following:

    (a)  Answer to question number 1 and 2 on the above letter.
    (b)  Federal Emergency Management Agency ARTS input sheets; dated 11-12-04
    (c)  Fax transmission verification report, dated 7-12-03;
    (d)  your letter to Ms. Pauline Campbell, Director Office of Equals Rights dated 7-12-03
    (e)  e-mail from Richard Reback to you dated 5-27-03. This is prior to your date of injury of 11-12-04.
    (f)  Memo Insert Complainant's Name from Pauline C. Campbell, Director, Office of Equal Rights: Ref. Extension of EEO Counseling dated 9-1-04.
    (g)  Memo from James Klimaski; Counsel to Ms. Gladys Kessee dated 11-1-04
    (h)  Medical note from Dr. Antoinette M. Lewis dated 11-17-04 indicating that you was evaluated in his office today. Also a disability slip form INOVA Emergency Care

File Number: 252047824
NODPOD-D-I

Center indicated that you were seen in the emergency department. This report
did not include an opinion from your treating physician, based upon a complete
factual and medical background regarding your injury, supported by medical
rationale explaining the nature of the relationship between the diagnosed conditions
and the specific employment factors you identified on Form CA-1.

(i)   CA-20 Attending physician's Report dated 12-01-04 with a diagnosis of acute
Exacerbation of Post Traumatic Stress Disorder due to workplace perception of his
behavior.

(j)   Three (3) back forms of CA-1 dated 6-23-03; 8-04-04 and 11-29-04

(k)   copy of development letter sent to you on 12-14-04.

Evidence on file consisted of the following: CA-1 Notice of Traumatic Injury dated 11-29-04
indicating this was a new injury (non-recurrent) and was related to a "Brief Psychological
Evaluatuion (OWCP File #252044239). Supplemental Statement to the CA-1 dated 11-29-04 by
Ms. Belinda J. Finn; Memorandum for Karen Vincent from you dated 12-2-04; Ref. Medical and
forms to OWCP on the job injury of 11-12-04; Memorandum from Belinda Finn to you dated 11-
30-04; Memorandum for Pauline Campbell, Director, DHS.FEMA Office of Equals rights,
through Gladys Kessee, EEO Counselor, DHA/FEMA from you dated 11-15-04; CA-20
Attending physician's report dated 11-17-04 and 12-01-04; Brief Psychological Evaluation dated
7/14/04 by Dr. Jan E. Fiske, Psychiatrist. This evaluation if prior to date of injury of 11-12-04.

The Employees' Compensation Appeals Board has held that:

Initially, the Federal Employees' Compensation Act (FECA) does not apply to each and every
injury or illness that is somehow related to an employee's employment. This based on the
Lillian Cutler decision of the Employee's Compensation Appeals Board (28 ECAB 125). The
Employees' Compensation Appeals Board (ECAB) has made decisions relating to claims of
stress and of an emotional nature. Only incidents or factors which are considered to be in the
performance of duty or factors of employment are covered by the benefits of the Federal
Employees' Compensation Act. (FECA)

As a general rule, and employee's emotional reaction to an administrative or personnel matter is
not covered under the FECA. William Karl Hansein, 49 ECAB _ (Docket No. 95-2925, issued
October 23, 1997); Bernard Snowden, 49 ECAB___(Docket No. 95-1670, issued October 23,
1997).

Mere perceptions of harassment or discrimination do not constitute a compensable factor of
employment. There must be evidence that harassment or discrimination did in fact occur.
Lorraine E. Schroeder, 44 ECAB (1192).

    Unless a claimant establishes a compensable factor of employment, it is unnecessary to
address the medical evidence of record. Garry M. Carlo, 47 ECAB___ (Docket No. 94-201,
issued January 29, 1996).

 Based on these findings, the claim is denied because it is not established that your injury
occurred in the performance of duty. Medical treatment is not authorized and prior
authorization, if any, is terminated.

Your employing agency will charge any previously paid Continuation of Pay to your sick and/or
annual leave balance or declare it an overpayment.

File Number: 252047824
NODPOD-D-I

If you disagree with this decision, you should carefully review the attached appeal rights, and pursue whichever avenue is appropriate to your situation.

Sincerely,

Carmen I. Rivera
Claims Examiner

Enclosure: Appeal Rights

HOMELAND SECURITY
OFF OF THE INSPECTOR GENERAL
DEPARTMENT OF TREASURY BPD
200 3RD STREET    ROOM 408
PARKERSBURG, WV 26101

File Number: 252047824
NODPOD-D-I

## FEDERAL EMPLOYEES' COMPENSATION ACT APPEAL RIGHTS

**If you disagree with the attached decision, you have the right to request an appeal. If you wish to request an appeal, you should review these appeal rights carefully and decide which appeal to request. There are 3 different types of appeal: HEARING (this includes either an Oral Hearing, or a Review of the Written Record), RECONSIDERATION, and ECAB REVIEW. <u>YOU MAY ONLY REQUEST ONE TYPE OF APPEAL AT THIS TIME</u>. Place an "X" on the attached form indicating which appeal you are requesting. Complete the information requested at the bottom of the form. Place the form on top of any material you are submitting. Then mail the form with attachments to the address listed for the type of appeal that you select. Always write the type of appeal you are requesting on the outside of the envelope ("HEARING REQUEST", "RECONSIDERATION REQUEST", or "ECAB REVIEW"). Your appeal rights are as follows:**

**1. HEARING:** If your injury occurred on or after July 4, 1966, and you have not requested reconsideration, as described below, you may request a **Hearing**. To protect your right to a hearing, any request for a hearing must be made before any request for reconsideration by the District Office (5 U.S.C. 8124(b)(1)). Any hearing request must also be made in writing, within 30 calendar days after the date of this decision, as determined by the postmark of your letter. (20 C.F.R. 10.616). There are **two forms of hearing**. You may request either one or the other, but not both.

   **a.** One form of Hearing is an **Oral Hearing**. An informal oral hearing is conducted by a hearing representative at a location near your home. You may present oral testimony and written evidence in support of your claim. Any person authorized by you in writing may represent you at an oral hearing.

   **b.** The other form of a Hearing is a **Review of the Written Record**. This is also conducted by a hearing representative. You may submit additional written evidence, which must be sent with your request for review. You will not be asked to attend or give oral testimony.

**2. RECONSIDERATION:** If you have additional evidence or legal argument that you believe will establish your claim, you may request, in writing, that OWCP reconsider this decision. The request must be made within one calendar year of the date of the decision, clearly state the grounds upon which reconsideration is being requested, and be accompanied by relevant evidence not previously submitted. This evidence might include medical reports, sworn statements, or a legal argument not previously made, which apply directly to the issue addressed by this decision. In order to ensure that you receive an independent evaluation of the new evidence, persons other than those who made this determination will reconsider your case. (20 C.F.R. 10.605-610)

**3. REVIEW BY THE EMPLOYEES' COMPENSATION APPEALS BOARD (ECAB):** If you believe that all available evidence that would establish your claim has already been submitted, you have the right to request review by the ECAB (20 C.F.R. 10.625). The ECAB will review only the evidence received prior to the date of this decision (20 C.F.R. Part 501). Any request for review by the ECAB should be made within 90 days from the date of this decision. The ECAB may waive failure to file within 90 days if you request review within one year of the date of this decision and show a good reason for the delay.

If you request reconsideration or a hearing (either oral or review of the written record), OWCP will issue a decision that includes your right to further administrative review of that decision.

File Number: 252047824
NODPOD-D-I

Employee: DEMETRI  J.  DANIELS

## APPEAL REQUEST FORM

**If you decide to appeal this decision, read your Appeal Rights and these instructions carefully.  Specify which procedure you request by checking one option below.  Place this form on top of any materials specified below that you are submitting.  Mail <u>THIS FORM</u>, along with any additional materials <u>TO THE APPROPRIATE ADDRESS</u>.   YOU MAY REQUEST ONLY ONE TYPE OF APPEAL AT THIS TIME.**

_____ **HEARING - ORAL**

_____ **HEARING - REVIEW OF THE WRITTEN RECORD:**
    1) Submit this form within <u>30 calendar days of the date of the decision</u>
    2) You may submit additional written evidence with your request.

**Write "HEARING REQUEST" on the outside of your envelope and mail it to:**
    **Branch of Hearings and Review**
    **Office of Workers' Compensation Programs**
    **P. O. Box 37117**
    **Washington, DC  20013-7117**

---

_____ **RECONSIDERATION:**
    1) Submit your request within <u>1 calendar year of the date of the decision.</u>
    2) You must state the grounds upon which reconsideration is being requested.  Your request must include relevant new evidence or legal argument not previously made.

**Write "RECONSIDERATION REQUEST" on the outside of your envelope and mail it to:**
    **DOL DFEC Central Mailroom**
    **P. O. Box 8300**
    **London, KY  40742**

---

_____ **ECAB APPEAL:**
    1) Submit this form within <u>90 calendar days of the date of the decision</u>.
    2) No additional evidence after the date of the decision will be reviewed.
    3)  To expedite the processing of your ECAB appeal, you may include a completed copy of the AB 1 form used by ECAB to docket appeals available on the Department of Labor Web Site at www.dol.gov/ecab

**Write "ECAB REVIEW" on the outside of your envelope and mail it to:**
    **Employees' Compensation Appeals Board**
    **200 Constitution Avenue NW, Room N-2609**
    **Washington, DC  20210**

---

SIGNATURE_____    TODAY'S DATE_____
PRINTED NAME_____    DECISION DATE_____
ADDRESS_____    PHONE_____
CITY _____STATE_____ZIP_____

Exhibit 6, Letter dated September 24, 2003

11/20/2003 16:47 FAX 2022544305      DHS OIG                    042/064
OCT-23-2003 THU 03:50 PM HUMAN RESOURCE DIV      FAX NO. 3044807679   P. 07
Case 1:07-cv-00505-RBW   Document 12-2   Filed 01/16/2008   Page 28 of 57
OFFICE DEPO.
PAGE 05/06

OCT-23-03 THU  2:52 PM  KLIMASKI & ASSOCIATES       FAX NO.  202 296 5601      P. 3

# KLIMASKI & ASSOCIATES, P.C.
### *Attorneys at Law*

James R. Klimaski*

———————
Edward J. Eidenlus**
Lynn I. Miller*

*Firm Administration*
Jon Pinkus

September 24, 2003

**Via HAND-DELIVERY**

1400 K Street NW
Suite 1000
Washington, DC 20005-2403
(202) 296-5600
(202) 296-5601 Fax
firm@klimaskilaw.com
www.klimaskilaw.com

*Confidential*                *Confidential*                *Confidential*

Richard Reback
Chief Counsel to the Inspector General
United States Department of Homeland Security
1120 Vermont Avenue NW
10th Floor
Washington DC  20005

                              *Re:*    James Daniels

Dear Mr. Reback:

        As you may know, we represent James Daniels concerning his on-the-job injury of
May 28, 2003.  It is our understanding that Mr. Daniels' physician, Antoinette Lewis, M.D., has
determined that Mr. Daniels can begin returning to work on September 29, 2003.

        This letter is to request that you permit Mr. Daniels to reintegrate into his job through a
gradual process, beginning with working at home.  Doing so would avoid triggering Mr. Daniels'
Post Traumatic Stress Disorder (PTSD) again.  Mr. Daniels had pre-existing PTSD which left
him vulnerable to the email of May 27, 2003, concerning his alleged conflict of interest in the
Patsy Ervin EEO complaint.  Mr. Daniels read this email on May 28, 2003.

        Medicine recognizes PTSD as a serious illness, which reoccurs with new stressors.
PTSD prevents an individual from leading a normal life, adversely impacting on work, sleep,
relationships, decision making and other life tasks.  A PTSD sufferer has no control over the
disease and must undergo medical treatment.  Unfortunately, that treatment takes time to work.
A PTSD patient cannot recover overnight.

        One symptom of PTSD is an individual's inability to return to the location where the
stressor took place.  The trigger for this recurrence of Mr. Daniels' PTSD occured in connection
with his job duties and in the office.  Therefore, immediately returning to this environment will
be difficult for Mr. Daniels, despite his desire to work again.

* Also admitted in Maryland
** Also admitted in New York

11/20/2003 16:48 FAX  2022544305        DHS OIG                        043/064
OCT-23-2003 THU 03:59 PM HUMAN RESOURCE DIV              FAX NO. 2024207079  Page 29 of 57  P. 08
                                                         OFFICE DEPO.                        PAGE 06/06

OCT-23-03 THU  2:53 PM  KLIMASKI & ASSOCIATES      FAX NO.  202 296 5801              P. 4

*KLIMASKI & ASSOCIATES, P.C.*
Attorneys and Counsellors at Law

Richard Reback
September 24, 2003
Page 2

Another problem with rapid reintegration is that Mr. Daniels' co-workers may not understand why Mr. Daniels took sick leave because there is no physical sign that he had an illness. Moreover, the stigma associated with a mental condition, including PTSD, still continues, leading many people to consider the sick person "crazy." These factors increase Mr. Daniels' difficulty of returning to the office.

The best means of getting Mr. Daniels "back to work," would be a gradual transition, beginning with his working at home. Mr. Daniels could then focus on resuming his job duties without experiencing reactions from co-workers and superiors. Once Mr. Daniels becomes comfortable with these duties, which led to the stressor, he could return to the work place and set about interacting with his co-workers and superiors.

In sum, only a gradual return best protects Mr. Daniels from suffering a relapse of PTSD. Mr. Daniels could once again become the exemplary employee he was before May 28, 2003.

Mr. Daniels also wishes to apply to the Leave Transfer Program as a leave recipient. Because of his illness, Mr. Daniels has used or expects to use all his available annual and sick leave. Such leave is necessary if the PTSD flares up again, preventing Mr. Daniels from working, whether at home or in the office. Again, Mr. Daniels has no control over or advance notice of another attack of PTSD.

I look forward to discussing these matters with you and agreeing on these resolutions of Mr. Daniels' situation. Please call me upon receipt of this letter.

Sincerely,

James R. Klimaski
Counsel for James Daniels

cc: James Daniels

JRK / wjp

Exhibit 7, Supervisor's Memo to Record of Nov. 19, 2003

MEMO TO THE RECORD

November 19, 2003

The purpose of this memo is to document certain events or conversations relating to Jim
Daniels and his absence from the office since June 2003. Mr. Daniels had been off of
work since June 2003 to what he claims is a work related injury. Mr. Daniels informed
me that he was applying for Workman's Compensation and that he was entitled to request
injury leave for a period of up to 45 days from the date of injury. He also informed me
that he was aware that if the Department of Labor denied his request for Workman's
Compensation, that he owed the government for the time "advanced" to him under injury
leave. I informed Dick Berman and Rick Reback that I was approving the request for
such leave.

After the 45 day period of injury leave, Mr. Daniels requested that he be put on annual
leave and sick leave until he could return to work. I approved such leave. In September
or October 2003, I was informed that Mr. Daniels had retained an attorney and wanted to
discuss his return to the work place. I gave the information to Rick Reback, as I felt that
I should not be in contact with Mr. Daniels attorney, but that someone from the OIG's
legal staff should. Rick Reback agreed.

I was informed that Mr. Daniels and Dick Berman and Rick Reback had worked out a
plan for him to return to work. This was done through Mr. Daniels attorney.
Evidentially, Mr. Daniels stated that he couldn't return to the work place at Vermont
Avenue, so an alternate work site was agreed to. Mr. Daniels would report to work at the
Press Building in Washington DC where a temporary work station would be set up for
him to include a phone and a computer. Mr. Daniels agreed to return to work on a part
time basis with his first reporting date set for October 28, 2003. I had agreed to meet Mr.
Daniels at the Press Building to get him started back into the work environment.

On October 28, 2003, I was home on leave and could not meet Mr. Daniels. I had made
arrangements with Dennis White, Audit Director, to meet Mr. Daniels in my absence.
Mr. Daniels called me on my cell phone at home, not realizing that I was not at the Press
Building. He called to let me know that he was outside the Press Building, he had a nurse
with him, and he wasn't able to bring himself to walk through the doors to get to his work
station. When I informed him that I was not there, but Dennis was, he said that he had
something to deliver and asked if Dennis could meet him outside. This was arranged.

In a memo dated October 28, 2003, Mr. Daniels stated that he was requesting 240 hours
of advanced sick leave as he was running out of annual and sick leave. He also stated
that he applied for the leave donor program. Sometime the week of October 27, after I
received his request for advanced leave, Mr. Daniels called to discuss his request. I told
him that I had received his request, but that I had to check on the OIG policies regarding
the granting of advanced sick leave. It was during this conversation that Mr. Daniels
informed me that he was also putting in paper work to request a medical retirement. He
stated that I should be receiving some paperwork for me to fill out regarding his

employment. He informed me also that he had been denied his Workman's Compensation request, but that he intended to appeal the decision.

Based on conversations with Shalonda Smith, Dick Berman, and Rick Reback, I decided to inform Mr. Daniels that his request for advanced leave was being denied. I called Mr. Daniels at his home. I told Mr. Daniels that his request was being denied and explained that it due to the lack of confidence that we had in his eventual return to work. Mr. Daniels asked if I would approve just a portion of the request, specifically 80 hours. I told him no and explained again why. He asked if he came back to work, would I then advance him leave. I told him that it would depend, that just showing up one day for a few hours was not sufficient evidence that he would be returning to work on a full time basis. I said that I would need to see a pattern of his return to the work place. At this point, Mr. Daniels said that he wanted to return to work. It was agreed that he would return on November 12, 2003 at the Press Club from 9:00 am to 12:00 noon. I agreed to meet Mr. Daniels at the work site.

On November 12, 2003, I arrived at the Press Club work site at approximately 8:45 am. I waited until 9:30 am and Mr. Daniels had not arrived, so I left to return to Vermont Avenue. At approximately 10:00 am, Mr. Daniels called me at work and stated that he was at the work site, he was late because of the weather, and that he knew that I had waited for him. When I asked about the computer left for him, Mr. Daniels stated that there was no computer on his desk. I told him that he was at the wrong desk and that a different one had been set up for him. I told him where it was and to please go to that desk and then call me. I waited an hour and had not received a call from Mr. Daniels, so I called him. I asked if every thing was OK and if he could get onto the computer. Mr. Daniels stated that the computer was set up, but that he couldn't get into the email because of his illness. He had been talking with his doctor and his nurse was with him. He stated that he would leave by noon.

Subsequent to November 12, 2003, Mr. Daniels called me and we discussed alternatives to his returning to work. I did ask if he felt he could at least come by Vermont Avenue and get some work, if he was unable to open up emails. He said no. I then said that we needed to work out some way for him to get work. I decided that we could take some paper work to the Press Club work site for him to work on. Mr. Daniels agreed. It was decided that he would return on Monday, November 17, 2003. I told him that Martha Barksdale would meet him there. I also told Mr. Daniels that I need a leave slip requesting Leave without Pay, for the hours that he didn't have leave available. I believe that during this conversation Mr. Daniels asked me if I would donate leave to him and I told him no.

On November 17, 2003, Martha Barksdale, on my direction, called Mr. Daniels' work site phone before she was to leave for the Press Building, just in case he didn't show up. She called several times and got no answer. I then called Jeff Arman, who sits close to the work site for Mr. Daniels. Jeff stated that Mr. Daniels had not shown up that day.

I then called Mr. Daniels home and a female voice answered the phone. I asked if Mr. Daniels was home and she said she didn't know. I asked if she could leave a message that I called and would he please call me.

Sometime around noon on November 17, Mike McPoland, OIG auditor, entered my office and stated that he had just met Jim Daniels outside the office building and that Jim asked him to deliver an envelope to me. In the envelope was a leave slip (improperly filled out), a Xeroxed copy of a medical slip and a payment for nursing services, and a xeroxed copy of his memo dated November 12, 2003.

Nancy L. Hendricks
11/20/03

Exhibit 8, Leave Request Package dated Oct. 29, 2003

11/26/2003 16:53 FAX 2022544305                                              @055/064

# KLIMASKI & ASSOCIATES, P.C.

*Attorneys at Law*

James R. Klimaski*
—————
Edward J. Elder++
Lynn I. Miller*

*Firm Administration*
Jon Pinkus

October 29, 2003

**Via HAND-DELIVERY**

1400 K Street NW
Suite 1000
Washington, DC 20005-2403
(202) 296-5600
(202) 296-5601 Fax
firm@klimaskilaw.com
www.klimaskilaw.com

Richard Reback
Chief Counsel to the Inspector General
United States Department of Homeland Security
1120 Vermont Avenue NW
10th Floor
Washington DC  20005

      *Re:*  James Daniels

Dear Mr. Reback:

   My client asked me to deliver the enclosed documents and letter to you and Ms. Nancy Hendricks.

   Please let me know if either of you have any questions or require any additional information.  Your support and cooperation in this matter is appreciated.

        Sincerely,

        James R. Klimaski

Enclosures

JRK / wjp

* *Also admitted in Maryland*
** *Also admitted in New York*

CONFIDENTIAL                                         CONFIDENTIAL

## Request for Leave or Approved Absence

| 1. Name (Last, first, middle) | 2. Employee or Social Security Number |
|---|---|
| DANIELS JAMES | |

**3. Organization**

DHS-OIG

| 4. | Type of Leave/Absence | | | | | 5. | Family and Medical Leave |
|---|---|---|---|---|---|---|---|

| Check appropriate box(es) and enter date and time below | Date | | Time | | Total Hours | If annual leave, sick leave, or leave without pay will be used under the Family and Medical Leave Act of 1993 (FMLA), please provide the following information: |
|---|---|---|---|---|---|---|
| | From | To | From | To | | |
| ☐ Accrued annual leave | 10-29 | 10-31 | 7:00 | 4:30 | 27 | |
| ☐ Restored annual leave | | | | | | |
| ☐ Advance annual leave | | | | | | |
| ☐ Accrued sick leave | | | | | | ☐ I hereby invoke my entitlement to family and medical leave for: |
| ☐ Advance sick leave | | | | | | |

Purpose: ☑ Illness/injury/incapacitation of requesting employee

☐ Medical/dental/optical examination of requesting employee

☐ Care of family member, including medical/dental/optical examination of family member, or bereavement

☐ Care of family member with a serious health condition

☐ Other * IF NO ANNUAL LEAVE IS AVAILABLE, please APPLY TO SICK or ADVANCED SICK LEAVE.

☐ Birth/Adoption/Foster care

☐ Serious health condition of spouse, son, daughter, or parent

☐ Serious health condition of self

☐ Compensatory time off

☐ Other paid absence (specify in remarks)

☐ Leave without pay

Contact your supervisor and/or your personnel office to obtain additional information about your entitlements and responsibilities under the FMLA. Medical certification of a serious health condition may be required by your agency.

**6. Remarks**

I went to the Alexandria Hospital at 6:00p.m. on October 27, 2003. I was treated for symptoms related to a recurrence of pre-existing PTSD. After hospital staff consulted with my treating physician, I received a medical leave of absence from work for October 28. A doctor's visit was scheduled that same day. However, as directed by my employer, I reported to work on October 28. I was accompanied from my home by a nurse, who drove my car in order to reduce the possibility of accidents to myself and others. My condition and symptoms prevented me from getting out of my car and entering the alternate worksite. The nurse met Dennis White who greeted me at my car. I informed him of my condition and gave him two documents for Nancy Hendricks. The nurse drove me back home to recuperate. ( See Attached Documents ).

**7. Certification**

employin certificati...

| 7a. Employee's signature | 7b. Date signed |
|---|---|
| James Daniels | 10-29-03 |

**8a. Official action on request**     ☐ Approved     ☐ Disapproved     (If disapproved, give reason. If annual leave, initiate action to reschedule.)

**8b. Reason for disapproval**

| 8c. Signature | 8d. Date signed |
|---|---|

**Privacy Act Statement**

Section 6311 of title 5, United States Code, authorizes collection of this information. The primary use of this information is by management and your payroll office to approve and record your use of leave. Additional disclosure of the information may be: To the Department of Labor when processing a claim for compensation regarding a job connected injury or illness; to a State unemployment compensation office regarding a claim; to Federal Life Insurance or Health Benefits carriers regarding a claim; to a Federal, State, or local law enforcement agency when your agency becomes aware of a violation or possible violation of civil or criminal law; to a Federal agency when conducting an investigation for employment or security reasons; to the Office of Personnel Management or the General Accounting Office when the information is required for evaluation of leave administration; or the General Services Administration in connection with its responsibilities for records management.

Public Law 104-134 (April 26, 1996) requires that any person doing business with the Federal Government furnish a social security number or tax identification number. This is an amendment to title 31, Section 7701. Furnishing the social security number, as well as other data, is voluntary, but failure to do so may delay or prevent action on the application. If your agency uses the information furnished on this form for purposes other than those indicated above, it may provide you with an additional statement reflecting those purposes.

Office of Personnel Management
5 CFR 630                                Local Reproduction Authorized                OPM Form 71
June 2001
Formerly Standard Form (SF) 71

P 1 of 3

INOVA ALEXANDRIA
HOSPITAL

| Patient Name | OP/ED: ED   MRN 03434625   10/27/03 AH |
| | DANIELS, JAMES                      53M |
| | TYPE E   ACCT: 033006099 DOB: 04/28/50 |
| | DR: |
| | ED DR:EDP, PHYSICIAN                   6 |

WAS SEEN AND TREATED AT
INOVA ALEXANDRIA HOSPITAL
EMERGENCY ON
10/27/03
Out of work
10/28/03

_(signature)_                R.N., M.D., P.A.C.

CAT #82487A / R#-01 • PADS OF 100

---

NAME (please print) CHRISHANA Owusu
SELF EMPLOYED HEALTH CARE PROVIDER
CLASSIFICATION (circle one):   RN   LPN  (CNA)  COMPANION
CLIENT NAME James Daniels
CLIENT ADDRESS 5208 Martinique LN
Alexandria VA
PHONE 703-922-5388

|        | DATE | TIME STARTED | TIME FINISHED | TOTAL HOURS |
|--------|------|--------------|---------------|-------------|
| MON.   |      |              |               |             |
| TUES.  | 10/28/03 | 7:45A | 11:45P | 4 HRS |
| WED.   |      |              |               |             |
| THURS. |      |              |               |             |
| FRI.   |      |              |               |             |
| SAT.   |      |              |               |             |
| SUN.   |      |              |               |             |

| RATE/HR | AMT. REC'D | TOTAL HOURS FOR WEEK TO NEAREST 1/4 |
|---------|-----------|-------------------------------------|
| 16.00   | 64.00     | 4 HRS |

CLIENT SIGNATURE James Daniel

WHITE COPY- CLIENT        YELLOW COPY- Nursing Referral Service
                          of Northern Virginia, Inc.
                          P.O. Box 9792
                          McLean, VA 22102
                          (703) 442-0229

Medical evidence
to support requested
leave will be
submitted by
10-31-03.

_(signature)_ Daniels

P. 2 of 3

2003

Nancy Hendricks
Deputy Assistant Inspector General
Department of Homeland Security
Washington, DC

Dear Nancy

As you may know, for medical reasons, I have been unable to return to work since June 23, 2003. I have made some improvements, however I am not fully ready to resume my normal duties with the zest that you are accustomed to seeing. Karen Vincent at BPD has all the medical data to support my application.

My gradual return to work would require me now to request 240 hours of advanced sick leave. Please process this request as soon as possible, since I have nearly exhausted all sick and annual leave.

I have also applied to become a recipient to the leave donor program.

Nancy, what happened is unfortunate. I do not want to fix the blame ; but only to correct the situation.

I would like to end with this quote. It reminds me of the good days and the kind remarks that you said about my work.

After Benjamin Franklin had received a letter thanking him for kindness, he replied:

"As to the kindness you mention, I wish I could have been of more service to you than I have been, but if I had, the only thanks that I should desire are that you would always be ready to serve any other person that may need your assistance, and so let good offices go around, for mankind are all of a family. As for my part, when I am employed in serving others I do not look upon myself as conferring favors but paying debts."

Nancy, thank you.

James Daniels

P. 3-13

CONFIDENTIAL

# Request for Leave or Approved Absence

| 1. Name (Last, first, middle) | 2. Employee or Social Security Number |
|---|---|
| DANIELS, JAMES | |

**3. Organization**
DHS-OIG

**4.** Type of Leave/Absence

| Check appropriate box(es) and enter date and time below | Date | | Time | | Total Hours |
|---|---|---|---|---|---|
| | From | To | From | To | |
| ☐ Accrued annual leave | | | | | |
| ☐ Restored annual leave | | | | | |
| ☐ Advance annual leave | | | | | |
| ☐ Accrued sick leave | | | | | |
| ☐ Advance sick leave | | | | | |

**Purpose:**
☑ Illness/injury/incapacitation of requesting employee
☐ Medical/dental/optical examination of requesting employee
☐ Care of family member, including medical/dental/optical examination of family member, or bereavement
☐ Care of family member with a serious health condition
☐ Other

☐ Compensatory time off
☑ Other paid absence (specify in remarks) — DONATED LEAVE; SEE ATTACHED
☐ Leave without pay

**5. Family and Medical Leave**

If annual leave, sick leave, or leave without pay will be used under the Family and Medical Leave Act of 1993 (FMLA), please provide the following information:

☐ I hereby invoke my entitlement to family and medical leave for:

☐ Birth/Adoption/Foster care

☐ Serious health condition of spouse, son, daughter, or parent

☐ Serious health condition of self

*Contact your supervisor and/or your personnel office to obtain additional information about your entitlements and responsibilities under the FMLA. Medical certification of a serious health condition may be required by your agency.*

**6. Remarks**
See ATTACHED 2 DocumenTs: (1) medical clearance for November 12, 2003 and (2) ReSults of 11-12 Return to Work.

**7. Certification:** I certify that the leave/absence requested above is for the purpose(s) indicated. I understand that I must comply with my employing agency's procedures for requesting leave/approved absence (and provide additional documentation, including medical certification, if required) and that falsification of information on this form may be grounds for disciplinary action, including removal.

| 7a. Employee signature | 7b. Date signed |
|---|---|
| James Daniels | 11-12-03 |

| 8a. Official action on request | ☐ Approved    ☐ Disapproved | *(If disapproved, give reason. If annual leave, initiate action to reschedule.)* |
|---|---|---|

**8b. Reason for disapproval**

| 8c. Signature | 8d. Date signed |
|---|---|
| | |

**Privacy Act Statement**
Section 6311 of title 5, United States Code, authorizes collection of this information. The primary use of this information is by management and your payroll office to approve and record your use of leave. Additional disclosures of the information may be: To the Department of Labor when processing a claim for compensation regarding a job connected injury or illness; to a State unemployment compensation office regarding a claim; to Federal Life Insurance or Health Benefits carriers regarding a claim; to a Federal, State, or local law enforcement agency when your agency becomes aware of a violation or possible violation of civil or criminal law; to the Office of Personnel Management or the General Accounting Office when conducting an investigation for employment or security reasons; to the Office of Personnel Management or the General Accounting Office when the information is required for evaluation of leave administration; or the General Services Administration in connection with its responsibilities for records management.

Public Law 104-134 (April 26, 1996) requires that any person doing business with the Federal Government furnish a social security number or tax identification number. This is an amendment to title 31, Section 7701. Furnishing the social security number, as well as other data, is voluntary, but failure to do so may delay or prevent action on the application. If your agency uses the information furnished on this form for purposes other than those indicated above, it may provide you with an additional statement reflecting those purposes.

Office of Personnel Management
5 CFR 630

Local Reproduction Authorized

OPM Form 71
June 2001
Formerly Standard Form (SF) 71

P. 103

```
**********************************************************************************
*                                                               P. 01         *
*                        TRANSACTION REPORT                                    *
*                        ─────────────────                 NOV-20-2003 THU 04:10 PM *
*                                                                              *
*      RECEIVE                                                                 *
*                                                                              *
*   DATE  START    SENDER        RX TIME   PAGES TYPE      NOTE           M#  DP *
*   ─────────────────────────────────────────────────────────────────────────  *
*   NOV-20 03:41 PM 2022544305    28'28"    64  RECEIVE    OK                   *
*                                                                              *
**********************************************************************************
```

Exhibit 9, Letter of Nov. 21, 2003 with Voicemail Transcripts

# DEPARTMENT OF HOMELAND SECURITY
## Office of Inspector General
### Washington, DC 20528

November 21, 2003

James Daniels
5208 Martinique Lane
Alexandria, VA  22315

Re:  Participation in Leave Program

Dear Mr. Daniels:

I am writing with respect to your participation in the Federal government's voluntary leave transfer program.  You were accepted into this program based on medical documentation indicating that you suffered from post traumatic stress disorder.  Your name has been circulated to employees in the Office of Inspector General (OIG) and donations to your account have been made.

On Monday, November 17, 2003, you telephoned Shalonda Smith, an employee in the OIG, to discuss circulating your name and participation in the leave share program to other components in the Department of Homeland Security so that you could receive additional donations.  You telephoned at 2:13 p.m. and 2:17 p.m.  By copy of this letter to your personal representative, Mr. Klimaski, we are providing him audio copies of the recorded telephone calls and transcripts prepared by Verizon Communications for review.

Based on both the tone and substance of your initial telephone call on that date, we have serious reservations about whether you should have been authorized to participate in the voluntary leave program and whether you continue to be affected by a medical emergency as defined in 5 CFR § 630.902.  Accordingly, we are notifying you that we propose to terminate your participation in the leave share program effective December 13, 2003.

Pursuant to 5 CFR § 630.910(a)(3), you have the right to respond orally and in writing to this notice.  Any reply must be received by December 1, 2003, and should be addressed to:

Edward F. Cincinnati
Assistant Inspector General for Administration
U.S. Department of Homeland Security
Washington, DC  20528.

Because of delays in mail delivery in the Washington, DC area, we encourage any reply to be transmitted by facsimile to 202 254-4285.  If you wish to submit an oral reply as well, please

telephone me at your earliest convenience and no later than November 25, 2003, so that we may schedule a time.

If, after considering any reply, we decide to terminate your participation in the voluntary leave transfer program, any unused donated leave will be returned to the donors. Furthermore, if we determine that you should not have been placed in the voluntary leave donor program from the beginning, you will be expected to return to the Government the amount of donated leave used from entering the program until your termination from the program.

If you have any questions in connection with the foregoing, you may contact me at (202) 254-4066.

Sincerely,

Mona Segner
Director, Human Resources and
Workforce Planning

Copy:  James Klimaski (w/ enclosed audio recordings and transcript)

563732

---------- FORWARDED MESSAGE -- SHALONDA SMITH ----------

Hello, this is Robert Fraser with Verizon Communications.  Today is Monday, November 17th.  The envelope information on this message is, it was received on Friday.  That puts the date as Friday, November 14th.  It was received at 2:13 p.m. from telephone number 703-922-5388.  Message length is 53 seconds.

--------- FORWARDED MESSAGE -----------

You know what, I'm going to get eight or more in  **(inaudible)** following week. They're going to have -- I'm going to have at least three or four pay periods in the bank.  Un-ah, un-ah.  And that's just this.  If **that goes** through all the DHS and FEMA, which is going to take probably till the end of January or February, then go EEOC.  [Laughs]

I'm going to all.  Then I'll going to go to the Army, then I'm going BOP.  I'm going to every last one, **(inaudible)**.  **what's the problem?** **(inaudible)** you want something to eat?  Stressed out?

Oh, come on now, I'm going to go get you some movie.  Un-ah.  Come on D.  D, that's mother nature -- mother nature, D, mother **(inaudible)**, okay.  Let me call -- let me call this guy.

563733

---------- FORWARDED MESSAGE -- SHALONDA SMITH -------------------

This is Robert Fraser with Verizon Communications. Today is Monday, November 17th.
The envelope information on this message is, it was received on Friday. That places
the date as November 14th, 2003. The message was received from 703-922-5388 at 2:17
p.m., and the message length is 59 seconds.

--------- FORWARDED MESSAGE ------------

Good afternoon, Shalonda. Hope you're having a good day. This is Jim Daniels. I
found some information out about how to get the -- **that lead** notification to
FEMA.

The person you need to speak with there -- you may already know her. Her name is
Allison Hargove. That's H-A-R-G-O-V-E. Her number there is 202-646-3784.

What Allison would need is a copy of that notification letter, and then she would --
she could forward that to FEMA's IT people to send it out agency-wide. She will be
back in the office on Tuesday, I believe, the 18th.

So that's all we need to do to get things going. But I will give you a call back
later next week to make sure that you understand the message.

Have a wonderful weekend, and I look forward to speaking with you then. Again, Jim
Daniels. Talk with you later, bye-bye.

Exhibit 10, Letter of Dec. 1, 2003

# Klimaski & Associates, P.C.

1400 K Street, N.W., Ste 1000, Washington, D.C. 20005 ℩ PHONE 202.296.5600 ℩ FAX 202.296.5601

# FAX
## TRANSMITTAL

**Date:** December 1, 2003

**TO:** Edward F. Cincinnati, Assistant Inspector General for Administration

**Fax #** 202.254.4285          **Phone #**  202.254.4048

**FROM:** James R. Klimaski

**Re:** Response to Notice regarding Participation in Donated Leave Program

Total # of pages including transmittal sheet:       **3**

## Comments

*2 pm*
*or Friday/Monday*

Confidential

*tomorrow at 2.*

### PRIVILEGED & CONFIDENTIAL

*This facsimile contains privileged and confidential information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the address below via the postal service. Thank you.*

*If you do not receive all pages, please call us at 202.296.5600*

Z:\Admin Froms\FAX coversheet wordperfect.wpd

# KLIMASKI&ASSOCIATES, P.C.
### *Attorneys at Law*

James R. Klimaski*

Edward J. Elder*
Lynn I. Miller*

*Firm Administration*
Jon Pinkus

**Confidential**

December 1, 2003

1400 K Street NW
Suite 1000
Washington, DC 20005-2403
(202) 296-5600
(202) 296-5601 Fax
firm@klimaskilaw.com
www.klimaskilaw.com

Edward F. Cincinnati
Assistant Inspector General for Administration
U.S. Department of Homeland Security
Washington, D.C. 20528

      Re:    James Daniels
                 Participation in Leave Program

Dear Mr. Cincinnati:

      On November 24, 2003, I received a letter from Mona Segner, Director of Human Resources and Work Force Planning. Accompanying the letter was a compact disc recording two telephone conversations left on the voicemail of Sholanda Smith, an employee in the Office of the Inspector General. Transcriptions of the audio messages were also included on the disc.

      I had difficulty discerning the first message, but found the second message, timed at 2:17 p.m., easily understandable. I found nothing in this second message to cause any alarm. The first message was puzzling at first, then I realized that Mr. Daniels was obviously not intending to leave a message, but was rather talking with someone else when he discovered Ms. Smith was not going to pick up her telephone.

      I contacted Mr. Daniels and he immediately recognized that he was carrying on a conversation with his wife, Dee Daniels, begun by her while Ms. Smith's voicemail message played out. Mrs. Daniels is a disabled veteran who also suffers from depression. Mr. Daniels simply held the telephone in his hand while talking to his wife and eventually placed the receiver back on the phone cradle ending the connection. This explains the reason for the inaudible portions of the conversation and its disjointed nature. Nothing can be or should be concluded from this message.

      There should be no questions that Mr. Daniels suffers from Post Traumatic Stress Disorder. His treating physician has verified this diagnosis and has kept the Agency informed as to the treatment progress. Mr. Daniels has twice been able to engage in work at the national Press Building and a third effort is scheduled. Ms. Hendricks has been very responsive in working through this situation with Mr. Daniels. The Agency is losing a great employee with her retirement.

* Also admitted in Maryland
** Also admitted in New York

Edward F. Cincinnati
December 1, 2003
Page 2

Mr. Daniels is not attempting to abuse the leave donor program. I would like to revisit the issue of the work-from-home accommodation. I believe this, in conjunction with the off-site work efforts, should speed Mr. Daniels' return to full and productive employment.

I wish to invoke Mr. Daniels' right to make an oral presentation in response to the November 21st letter.

Sincerely,

James R. Klimaski

Exhibit 11, Letter of Dec. 8, 2003 Documenting Agreement
between OIG and Pl.'s Counsel

```
***    TX REPORT    ***
*********************

TRANSMISSION OK

TX/RX NO              3864
CONNECTION TEL                92022965601
SUBADDRESS
CONNECTION ID
ST. TIME             12/08 15:44
USAGE T              00'59
PGS. SENT               2
RESULT               OK
```



# DEPARTMENT OF HOMELAND SECURITY

## OFFICE OF INSPECTOR GENERAL
### WASHINGTON, DC 20528

### FACSIMILE TRANSMITTAL SHEET

| TO: James Klimaski | FROM: Doris A. Wojnarowski |
|---|---|
| COMPANY: Klimaski & Associates | PHONE NUMBER: 202 254-4211 |
| FAX NUMBER: 296-5601 | TOTAL NO. OF PAGES INCLUDING COVER: 2 |
| PHONE NUMBER: | DATE: 12/8/03 |

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY

NOTES/COMMENTS:

Mr. Klimaski,

Just a follow up to our
Friday mtg re James Daniels



# DEPARTMENT OF HOMELAND SECURITY

### OFFICE OF INSPECTOR GENERAL
### WASHINGTON, DC 20528

#### FACSIMILE TRANSMITTAL SHEET

| TO: *James Klimaski* | FROM: Doris A. Wojnarowski |
|---|---|
| COMPANY: *Klimaski & Associates* | PHONE NUMBER: 202 254-4211 |
| FAX NUMBER: *296-5601* | TOTAL NO. OF PAGES INCLUDING COVER: *2* |
| PHONE NUMBER: | DATE: *12/8/03* |

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY

NOTES/COMMENTS:

*Mr. Klimaski,*

*Just a follow up to our Friday mtg re James Daniels*

*Doris*



# DEPARTMENT OF HOMELAND SECURITY
### Office of Inspector General
### Washington, DC 20528

December 8, 2003

BY FACSIMILE

Mr. James R. Klimaski, Esquire
Klimaski & Associates, P.C.
1400 K Street, NW
Suite 1000
Washington, DC  20005-2403

Dear Mr. Klimaski:

This is to follow up on our meeting of December 5, 2003, concerning your client, James Daniels, an employee of the DHS OIG.

At the meeting to provide you an opportunity to make an oral reply to OIG's notice to terminate Mr. Daniels' participation in the leave donor program, you agreed to provide additional medical documentation concerning Mr. Daniels' condition of post traumatic stress disorder.  This documentation should include a current diagnosis, the prognosis including when Mr. Daniels can expect to return to work full time, relevant clinical findings, and a discussion of how his condition may effect his ability to perform the essential functions of his position as an auditor.  In particular, the discussion of his ability to perform as an auditor should include any limitations on his ability to use a computer in connection with his work, e.g., limitations on the use of electronic mail, word processing software, etc.

You indicated your intent to obtain this information by December 12, 2003.  We appreciate your willingness to provide this additional documentation and look forward to receiving it timely.

If you have any questions, please feel free to contact me at 202 254-4211.

Sincerely,

Doris A. Wojnarowski
Associate Counsel

Exhibit 12, Lewis Summary Medical Report of Dec. 15, 2003

Exhibit 13, Letter of Dec. 18, 2003

# DEPARTMENT OF HOMELAND SECURITY
### Office of Inspector General
### Washington, DC 20528

December 18, 2003

BY FACSIMILE and FIRST CLASS MAIL

Mr. James R. Klimaski, Esquire
Klimaski & Associates, P.C.
1400 K Street, NW
Suite 1000
Washington, DC  20005-2403

Dear Mr. Klimaski:

Yesterday we received a summary medical report from Dr. Antoinette M. Lewis dated December 15, 2003, concerning Mr. James Daniels. This report did not provide sufficient medical documentation for us to determine whether Mr. Daniels continues to qualify for the leave transfer program. Consequently, a consent form for release of Mr. Daniels' medical records from Dr. Lewis will be sent to you shortly and we are also arranging for an Agency doctor to review Mr. Daniels' records and to exam him.

Dr. Lewis' report was provided in response to our letter of November 21, 2003, notifying Mr. Daniels that we proposed to terminate him from the leave transfer program effective December 13, 2003, because of our concerns that he no longer had a medical emergency that qualified him to participate in the program. We met with you on December 5 to allow you to present an oral reply on Mr. Daniels' behalf and at that meeting we explained that additional medical documentation was necessary. On December 8, Ms. Wojnarowski of our Counsel's office confirmed in writing the type of medical information that we needed. The report from Dr. Lewis is inadequate.

In particular, we need any clinical findings; results of diagnostic tests, procedures or other medical assessments; the treatment history, including the length and frequency of Dr. Lewis' treatment; when Mr. Daniels could be expected to return to work full time; the basis for Dr. Lewis' recommendation that Mr. Daniels be permitted to work at home given that we have provided the other recommended accommodations at an alternate worksite; when Mr. Daniels could be expected to begin working part time; the meaning of "part time;" the basis for suggesting that Mr. Daniels would respond telephonically given that he has repeatedly failed to respond to efforts by his supervisor, Ms. Hendricks, to contact him by telephone over the last several weeks, etc.

Accordingly, this is to notify you, and thereby your client, that we will be sending you a consent form for release of medical records shortly and would appreciate your cooperation in obtaining your client's signature. We will also be arranging for an Agency doctor to review the medical records and examine Mr. Daniels in order for us to determine whether he continues to be eligible for participation in the leave transfer program and whether or not the recommended accommodations are reasonable.

In the interim, Mr. Daniels is welcome to report for duty at the National Press Building at 529 14th Street, NW, Suite 200, Washington, DC. When he is available for work, he should contact J. Richard Berman, Assistant Inspector General for Audits, at 202-254-4100, for assignments. If you have any questions concerning this letter please contact me at 202-254-4100.

Sincerely,

Mona R. Segner
Director of Human Resources Division

Copy: James Daniels

Exhibit 14, Letter of Jan. 14, 2004



# DEPARTMENT OF HOMELAND SECURITY
# OFFICE OF INSPECTOR GENERAL

(202) 254-4100 (Main Office)

(202) 254-4285 (Main Fax)

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO:<br>Mr. James Klimaski, Esq | FROM:<br>Edward Stulginsky |
| COMPANY:<br>Klimaski & Associates | DATE:<br>1/14/03 |
| FAX NUMBER:<br>202-296-5601 | TOTAL NO. OF PAGES INCLUDING COVER:<br>9 |
| PHONE NUMBER: | RE:<br>Mr. James Daniels |

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY

NOTES/COMMENTS:

OFFICE OF INSPECTOR GENERAL
WASHINGTON, DC 20528



# DEPARTMENT OF HOMELAND SECURITY

### Office of Inspector General
### Washington, DC 20528

January 14, 2004

BY FACSIMILE and FEDERAL EXPRESS

Mr. James Daniels
5208 Martinique Lane
Alexandria, VA 22315

Dear Mr. Daniels:

As a result of Nancy Hendricks' retirement from the OIG, I am now serving as the Acting
Deputy Assistant Inspector General for Audits, and therefore, I am serving as your new
supervisor. I understand that you have been absent from the office for much of the past six
months due to an alleged disability. In order for the office to function successfully, it is
critical that all employees maintain regular work schedules and perform the essential
functions of their assigned positions. Your absence places a burden on your coworkers.

In a letter dated December 18, 2003, you and your attorney, Mr. James R. Klimaski, were
notified that the medical documentation you provided regarding your ongoing medical
condition was insufficient for us to determine if you were eligible to continue participating in
the leave transfer program. In that letter, it was indicated that a form would be sent to you
for your use in authorizing the release of your medical records from Dr. Lewis to a doctor
who will assist us in determining an appropriate response to your request for accommodation.
This form is enclosed for your use. You should sign this form and submit it to your doctor,
who should then forward all your medical records and a copy of the release form to Deborah
Stowe, Federal Occupational Health, 4350 East West Highway, 3rd Floor, Bethesda, MD
20814. Ms. Stowe should receive these records by January 30, 2004. After the medical
documentation has been examined by a doctor with Federal Occupational Health, you may be
required to undergo an examination. If this is the case, I will notify you of the place and time
that you are to report for the examination.

In the medical report dated December 15, 2003, by Antoinette M. Lewis, M.D., you were
cleared to work at home; however, I have no reason to believe that you could effectively
work at home. In fact, your previous supervisor, Nancy Hendricks, attempted to contact you
on November 17, 2003; November 24, 2003; and December 1, 2003; and you did not respond
to her calls. You also have refused Federal Express packages that were sent to your
residence.

The December 15, 2003 medical report also did not document any reasons that you cannot
return to work at the alternate work site. **Therefore, you are directed to return to work on**

**Monday, January 26, 2004, at 9:00 a.m., at the National Press Building, 529 14th Street, Suite 200, Washington, DC 20045.**

If you fail to report at the designated time and place, or fail to telephone me with an administratively acceptable explanation for your absence, you will be charged with Absence Without Leave (AWOL). I can be reached at (202) 254-4168, and you must call me as soon as you are aware that you will be unable to report to work, and no later than 10:00 a.m. on the day the leave is requested. If you cannot reach me, then you should call Richard Berman, Assistant Inspector General for Audits, at (202) 254-4100. Please note that a charge of AWOL can be the basis of disciplinary action up to and including removal from DHS-OIG. No sick leave, including annual leave in lieu of sick leave that you received through the leave transfer program, will be approved without accompanying medical documentation, on the medical provider's letterhead with the doctor's original signature, that includes the following information:

1. Diagnosis, including the current clinical status.

2. Prognosis, including plans for future treatment and an estimate of the expected date of full or partial recovery.

3. An explanation of the impact of the medical conditions on overall health and major life activities both on and off the job.

4. Narrative explanation of the medical basis for any conclusion that the medical condition has or has not become static or well stabilized and the likelihood that you may experience sudden or subtle incapacitation as a result of the medical condition.

5. Narrative explanation of the medical basis for a conclusion that indicates the likelihood that you are, or are not, expected to suffer injury or harm by carrying out, with or without accommodation, the tasks or duties of your position.

Also, please be advised that you may be entitled to time off under the provisions of the Family and Medical Leave Act (FMLA). In order to be entitled to time off under the provisions of the FMLA, you must invoke such entitlement. You can accomplish this by completing block 5 on form OPM 71. Additionally, you must provide a medical certificate from your health care provider. The medical certificate must include:

1. The date the serious health condition commenced.

2. The probable duration of the serious health condition or specify that the serious health condition is a chronic or continuing condition with an unknown duration and whether you are presently incapacitated and the likely duration and frequency of episodes or incapacity.

3.    The appropriate medical facts within the knowledge of the health care provider regarding the serious health condition, including a general statement as to the incapacitation, examination, or treatment that may be required by a health care provider.

4.    A statement that you are unable to perform one or more of the essential functions of your position.

In the case of certification for intermittent leave for planned medical treatment, the dates (actual or estimates) on which such treatment is expected to be given, the duration of such treatment, and the period of recovery, if any, should be included. The certification for leave should also note if the serious health condition is a chronic or continuing condition with an unknown duration, and/or whether you are presently incapacitated. If incapacitated, it should note the likely duration and frequency of episodes of incapacity.

Under the provisions of the FMLA, you have 15 calendar days after you invoke FMLA to provide the necessary medical documentation. After you invoke FMLA, I will grant you "provisional leave" in the form of LWOP until you provide the necessary medical documentation. If you do not provide the documentation within the required timeframe or if the documentation to support your FMLA request is unacceptable, we will change the provisional LWOP to AWOL. Be advised that a charge of AWOL can serve as the basis for disciplinary action up to and including removal from DHS-OIG.

For your convenience, I am enclosing for your use a form that your health care provider can complete to provide the above-mentioned documentation.

If you have any questions regarding these matters, please contact me at (202) 254-4168 or contact Jessica R. Hoffman, Human Resources Specialist, at (304) 480-6775.


Sincerely,

*Edward J. Stulginsky*

Edward Stulginsky
Acting Deputy Assistant Inspector General for Audits


Copy:  James Klimaski, Esq.          w/enclosures

Enclosures:    Certification of Health Care Provider Form
              Medical Documentation Release Form

3



**Certification of Health Care Provider**
(Family and Medical Leave Act of 1993)

**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division

| *(When completed, this form goes to the employee, <u>Not to the Department of Labor</u>.)* | OMB No.: 1215-0181<br>Expires:    07/31/04 |
|---|---|

| 1. Employee's Name | 2. Patient's Name *(If different from employee)* |
|---|---|
| | |

3. Page 4 describes what is meant by a **"serious health condition"** under the Family and Medical Leave Act. Does the patient's condition[1] qualify under any of the categories described?  If so, please check the applicable category.

   (1) _____  (2) _____  (3) _____  (4) _____  (5) _____  (6) _____ , or None of the above _____

4. Describe the **medical facts** which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:.

5. a. State the approximate **date** the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present **incapacity**[2] if different):

   b. Will it be necessary for the employee to take work only **intermittently or to work on a less than full schedule** as a result of the condition (including for treatment described in Item 6 below)?

   If yes, give the probable duration:

   c. If the condition is a **chronic condition** (condition #4) or **pregnancy**, state whether the patient is presently incapacitated[2] and the likely duration and frequency of **episodes of incapacity**[2]:

---

[1] Here and elsewhere on this form, the information sought relates **only** to the condition for which the employee is taking FMLA leave.

[2] "Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom.

Form WH-380
Revised December 1999

6. a. If additional **treatments** will be required for the condition, provide an estimate of the probable number of such treatments.

      If the patient will be absent from work or other daily activities because of **treatment** on an **intermittent** or **part-time** basis, also provide an estimate of the probable number of and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any:

  b. If any of these treatments will be provided by **another provider of health services** (e.g., physical therapist), please state the nature of the treatments:

  c. **If a regimen of continuing treatment** by the patient is required under your supervision, provide a general description of such regimen (*e.g.*, prescription drugs, physical therapy requiring special equipment):

7. a. If medical leave is required for the employee's **absence from work** because of the **employee's own condition** (including absences due to pregnancy or a chronic condition), is the employee **unable to perform work** of any kind?

  b. If able to perform some work, is the employee **unable to perform any one or more of the essential functions of the employee's job** (the employee or the employer should supply you with information about the essential job functions)? If yes, please list the essential functions the employee is unable to perform:

  c. If neither a. nor b. applies, is it necessary for the employee to be **absent from work for treatment?**

8. a. If leave is required to **care for a family member** of the employee with a serious health condition, **does the patient require assistance** for basic medical or personal needs or safety, or for transportation?

b. If no, would the employee's presence to provide **psychological comfort** be beneficial to the patient or assist in the patient's recovery?

c. If the patient will need care only **intermittently** or on a part-time basis, please indicate the probable **duration** of this need:

_____                    _____
Signature of Health Care Provider                                                          Type of Practice

_____                    _____
Address                                                                                            Telephone Number

_____                    _____
                                                                                                       Date

**To be completed by the employee needing family leave to care for a family member:**

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

_____                    _____
Employee Signature                                                                        Date

A **"Serious Health Condition"** means an illness, injury, impairment, or physical or mental condition that involves one of the following:

1. Hospital Care

   **Inpatient care** (*i.e.*, an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity[2] or subsequent treatment in connection with or consequent to such inpatient care.

2. Absence Plus Treatment

   (a) A period of incapacity[2] of **more than three consecutive calendar days** (including any subsequent treatment or period of incapacity[2] relating to the same condition), that also involves:

       (1) **Treatment[3] two or more times** by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (*e.g.*, physical therapist) under orders of, or on referral by, a health care provider; or

       (2) **Treatment** by a health care provider on **at least one occasion** which results in a **regimen of continuing treatment[4]** under the supervision of the health care provider.

3. Pregnancy

   Any period of incapacity due to **pregnancy**, or for **prenatal care**.

4. Chronic Conditions Requiring Treatments

   A **chronic condition** which:

       (1) Requires **periodic visits** for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

       (2) Continues over an **extended period of time** (including recurring episodes of a single underlying condition); and

       (3) May cause **episodic** rather than a continuing period of incapacity[2] (*e.g.*, asthma, diabetes, epilepsy, etc.).

5. Permanent/Long-term Conditions Requiring Supervision

   A period of **Incapacity**[2] which is **permanent or long-term** due to a condition for which treatment may not be effective. The employee or family member must be **under the continuing supervision of, but need not be receiving active treatment by, a health care provider.** Examples include Alzheimer's, a severe stroke, or the terminal stages of a disease.

6. Multiple Treatments (Non-Chronic Conditions)

   Any period of absence to receive **multiple treatments** (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for **restorative surgery** after an accident or other injury, **or** for a condition that **would likely result in a period of Incapacity**[2] **of more than three consecutive calendar days in the absence of medical intervention or treatment,** such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), and kidney disease (dialysis).

This optional form may be used by employees to satisfy a mandatory requirement to furnish a medical certification (when requested) from a health care provider, including second or third opinions and recertification (29 CFR 825.306).

*Note:* Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.

---

[3] Treatment includes examinations to determine if a serious health condition exists and evaluations of the condition. Treatment does not include routine physical examinations, eye examinations, or dental examinations.

[4] A regimen of continuing treatment includes, for example, a course of prescription medication (*e.g.*, an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition. A regimen of treatment does not include the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider.

---

### Public Burden Statement

We estimate that it will take an average of 10 minutes to complete this collection of information, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. If you have any comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, send them to the Administrator, Wage and Hour Division, Department of Labor, Room S-3502, 200 Constitution Avenue, N.W., Washington, D.C. 20210.

**DO NOT SEND THE COMPLETED FORM TO THIS OFFICE; IT GOES TO THE EMPLOYEE.**

## AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION

I authorize and direct Antoinette M. Lewis, M.D., 2121 K Street, NW, Suite 800, Washington, DC 20037, to disclose my entire medical record, including medications prescribed and all laboratory reports, and any other protected health information concerning me to the Department of Homeland Security, Office of Inspector General (OIG) and its agent, Federal Occupational Health (FOH). This includes information on the diagnosis and treatment of mental illness, the use of alcohol and drugs, and includes psychotherapy notes.

By my signature below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this authorization and I instruct you to release and disclose my entire medical records without restriction. Specifically, this authorization covers disclosure of copies of written records as well as oral disclosures in discussions with FOH doctors.

This protected health information is to be disclosed under this Authorization so that OIG may 1) determine whether I continue to be eligible to participate in the voluntary leave transfer program; 2) whether I have a "qualified disability" that necessitates accommodation; and, if so, 3) what accommodations, if any, are appropriate from a medical perspective.

This authorization shall remain in force for six months following the date of my signature below, and a copy of this authorization is as valid as the original. I understand that I have the right to revoke this authorization in writing, at any time, by providing written notification to Dr. Lewis and OIG. I understand that a revocation is not effective to the extent that Dr. Lewis has already relied on this Authorization to disclose information about me.

Release all medical records to Deborah Stowe, Federal Occupational Health, 4350 East West Highway, 3rd Floor, Bethesda, MD 20814, telephone (301) 594-4209.


_____          _____
James Daniels                            Social Security Number



_____          _____
Address                                  City              State/Zip Code



_____          _____
Date of Birth                            Signature Date

Exhibit 15, Letter of Feb. 9, 2004



# DEPARTMENT OF HOMELAND SECURITY

### Office of Inspector General
### Washington, DC 20528

February 9, 2004

BY FIRST CLASS MAIL and FEDERAL EXPRESS

Mr. James Daniels
5208 Martinique Lane
Alexandria, VA 22315

Dear Mr. Daniels:

This is in further reference to your continued participation in the leave transfer program.

In a letter dated November 21, 2003, you and your attorney, Mr. James R. Klimaski, were notified of a proposal to terminate your participation in the leave transfer program unless evidence was provided that verified you were entitled to remain in the program. The proposed termination was based on telephone messages that you left for Ms. Shalonda Smith, an Office of Inspector General (OIG) employee. Audio copies of the messages and transcripts were provided to your attorney for review.

On December 5, 2003, a meeting was held with Mr. Klimaski, who indicated that medical documentation regarding your condition would be provided to the OIG by December 12, 2003. A letter dated December 8, 2003, by Doris A. Wojnarowski, Associate Counsel, was sent to Mr. Klimaski confirming this.

A medical report from Antoinette M. Lewis, M.D. was received by OIG on December 17, 2003, but it did not contain the information necessary for us to determine if you were eligible to continue participating in the leave transfer program. The fact that this report was inadequate was related to you and Mr. Klimaski in a letter dated December 18, 2003, by Mona R. Segner, Director of Human Resources Division.

On January 14, 2003, I sent a letter to you and Mr. Klimaski informing you that you needed to submit the requested medical documentation by January 30, 2004, to Deborah Stowe, Federal Occupational Health. I also provided you a medical records release form to assist you in obtaining your records. As of this date, Federal Occupational Health has received no medical documentation from you.

1

Be advised that, based on your failure to provide the medical documentation that OIG has been requesting since November 21, 2003, your participation in the leave transfer program is being terminated effective January 25, 2003.

If you have any questions regarding this matter, please contact me at (202) 254-4168 or contact Jessica R. Hoffman, Human Resources Specialist, at (304) 480-6775.

Sincerely,

Edward Stulginsky
Acting Deputy Assistant Inspector General for Audits

Copy:  James Klimaski, Esq.
       BY FACIMILE and FIRST CLASS MAIL

Exhibit 16, Letter of Feb. 10, 2004

# *Klimaski & Associates, P.C.*

1819 L Street, N.W., Seventh Floor, Washington, D.C. 20036 ● PHONE 202.296.5600 ● FAX 202.296.5601

# FAX
# TRANSMITTAL

Date:
February 10, 2004
TO:    Edward Stulginsky, Acting Deputy Assistant Inspector General

Fax #    (202)254-4285

FROM:   James Klimaski

Re:    James Daniels

**Total # of pages including transmittal sheet:    2**

## CONFIDENTIAL

For Mr. Stulginsky only

**Comments**

*PRIVILEGED & CONFIDENTIAL*

*This facsimile contains privileged and confidential information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the address below via the postal service. Thank you.*

*If you do not receive all pages, please call us at 202.296.5600*

# KLIMASKI & ASSOCIATES, P.C.
### *Attorneys at Law*

James R. Klimaski*

Lynn I. Miller*
Edward J. Elder*⁺

*Case Management*
Jon Pinkus

1819 L Street, NW
Seventh Floor
Washington, DC 20036-3807
(202) 296-5600
(202) 296-5601 Fax
*firm@klimaskilaw.com*
*www.klimaskilaw.com*

February 10, 2004

Edward Stulginsky
Acting Deputy Assistant Inspector General
    for Audits
Department of Homeland Security
Office of the Inspector General
Washington, DC 22315

Re: James Daniels

Dear Mr. Stulginsky:

In your letter dated January 14, 2004, you requested that James Daniels give Antionette Lewis, M.D., his treating psychiatrist, permission to release a copy of his medical file to a physician for an Independent Medical Examination (IME). The IME would enable the Agency to determine an appropriate accommodation for Mr. Daniels. However, the release form the Agency sent does not name a physician, but rather a "Deborah Stowe" — an unidentified individual. Mr. Daniels will not permit anyone other than a physician to review his medical records. Mr. Daniels is willing to then undergo an IME for his post traumatic stress disorder.

Please identify the physician who will examine Dr. Lewis' records on Mr. Daniels and we will make sure that physician promptly receives them. Mr. Daniels has provided a complete diagnosis of his medical problem to the Agency from the outset of this matter. We sent the Agency the initial comprehensive diagnosis Jan E. Fiske, Psy.D. Moreover, Dr. Lewis' report to the Agency in December 2003 constituted a sufficient medical update.

The inability to resolve the problem has exacerbated Mr. Daniels' psychological problem. We know, however, that the Agency is trying in good faith to return a very productive employee to its work force. If you could send another medical release with the name of the physician who will perform the IME, we will immediately send that physician Mr. Daniels' medical records.

Sincerely,

James R. Klimaski

*Also admitted in Maryland
⁺⁺Also admitted in New York

Exhibit 17, Letter of Feb. 11, 2004

# DEPARTMENT OF HOMELAND SECURITY

**Office of Inspector General**
Washington, DC 20528

February 11, 2004

BY COURIER

Mr. James R. Klimaski, Esquire
Klimaski & Associates, P.C.
1819 L Street, NW
Seventh Floor
Washington, DC  20036

Dear Mr. Klimaski:

Pursuant to your request of February 10, 2004, we have redrafted the enclosed Authorization for Release of Medical Information substituting the name of Dr. Martin Allen, a board certified psychiatrist, for that of Deborah Stowe, an administrator with Federal Occupational Health.

We look forward to receiving Dr. Allen's results expeditiously.

Sincerely,

Edward Stulginsky
Acting Deputy Assistant Inspector General
for Audits

## AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION

I authorize and direct Antoinette M. Lewis, M.D., 2121 K Street, NW, Suite 800, Washington, DC 20037, to disclose my entire medical record, including medications prescribed and all laboratory reports, and any other protected health information concerning me to the Department of Homeland Security, Office of Inspector General (OIG) and its agent, Federal Occupational Health (FOH). This includes information on the diagnosis and treatment of mental illness, the use of alcohol and drugs, and includes psychotherapy notes.

By my signature below, I acknowledge that any agreements I have made to restrict my protected health information do not apply to this authorization and I instruct you to release and disclose my entire medical records without restriction. Specifically, this authorization covers disclosure of copies of written records as well as oral disclosures in discussions with FOH doctors.

This protected health information is to be disclosed under this Authorization so that OIG may 1) determine whether I continue to be eligible to participate in the voluntary leave transfer program; 2) whether I have a "qualified disability" that necessitates accommodation; and, if so, 3) what accommodations, if any, are appropriate from a medical perspective.

This authorization shall remain in force for six months following the date of my signature below, and a copy of this authorization is as valid as the original. I understand that I have the right to revoke this authorization in writing, at any time, by providing written notification to Dr. Lewis and OIG. I understand that a revocation is not effective to the extent that Dr. Lewis has already relied on this Authorization to disclose information about me.

Release all medical records to Martin Allen, M.D., 2121 Wisconsin Ave NW, Suite 280, Washington, DC 20007.


_____          _____
James Daniels                             Social Security Number



_____          _____
Address                                   City              State/Zip Code



_____          _____
Date of Birth                             Signature Date

Exhibit 18, Allen Medical Report of March 1, 2004

Exhibit 19, Emails of March 2, 2004

**Dave Nuhfer**

03/02/2004 02:16 PM

To: "Reback, Richard" <Richard.Reback@dhs.gov>,
cc: "Wojnarowski, Doris" <Doris.Wojnarowski@dhs.gov>, "Stulginsky,
    Edward" <Edward.Stulginsky@dhs.gov>, "Cincinnati, Ed"
    <Ed.Cincinnati@dhs.gov>, "'Jessica.Hoffman@bpd.treas.gov'"
    <Jessica.Hoffman@bpd.treas.gov>
Subject: Re: FW: Allen report

Rick,

In regard to the questions raised in both emails, Dr Allen called me yesterday to discuss what we wanted him to do and what questions we wanted answered. I told him that I thought that this information had already been sent to him but that we would do so again. During our conversation I mentioned the various issues you have identified (the offending email, his phone call comments, his not returning phone calls, his not accepting mail, his outside employment, allowing him to report to work at another work site, etc.). Dr Allen asked that we also include this background information.

As soon as I arrived at work this morning (before the requested document was finalized), Dr Allen called again. He told me he found the document that we sent him with instructions on what we wanted him to provide. He also told me that he had contacted the employee's doctor yesterday. He told me that the employee's doctor was under the impression that the employee had been in contact with DHS by telephone and did not know that the employee was not returning phone calls and was refusing mail. I asked him if he saw any need for a written document outlining the background information. He told me that he could respond based on what he had.

Dr Allen also told me that getting the employee back to work full time would be a gradual process. He told me that it would the first month or two would be the part time at home concept which, based on the input of the employee's doctor, would increase gradually. I asked him what the total time frame would be before he would return to work full time. He told me around five months. He also told me that he felt that if these accommodations were tried and were unsuccessful, that (given the past efforts to return him to work) DHS would have done everything they could do to return this employee to work. He told me that if this was the end result, he would have no problem testifying to that effect before EEO or MSPB.

At this point, I think we need to look at whether the information we have would be considered sufficient to conclude that Mr. Daniels was incapacitated. I think that Dr. Allen's reply would support that conclusion. However, I don't see anything that would explain why the employee could call his supervisor to report his absences as instructed.

I also found out today that Mr. Daniels has been repeatedly contacting the payroll staff to determine the status of leave donations and has told them that he does not trust DHS management because they are out to get him. With that mind set, I would be surprised if the accommodations suggested work.

Dave

**"Reback, Richard"**
**<Richard.Reback@dhs.gov>**

03/02/2004 11:45 AM

To:    "'Dave.Nuhfer@bpd.treas.gov'" <Dave.Nuhfer@bpd.treas.gov>,
"Jessica.Hoffman@bpd.treas.gov" <Jessica.Hoffman@bpd.treas.gov>, "Cincinnati, Ed"
<Ed.Cincinnati@dhs.gov>, "Stulginsky, Edward" <Edward.Stulginsky@dhs.gov>,
"Wojnarowski, Doris" <Doris.Wojnarowski@dhs.gov>

cc:
Subject:    FW: Allen report

My apologies, two other points I meant to include:

Dr. Allen did not examine Mr. Daniels.  Does the doctor need
to in
order to render a final opinion.

Dr. Allen only had info from Mr. Daniels' physician, and
therefore
did not have the complete factual context.

Next step: 1)  I suggest that we gather the additional factual
info.

2)  I suggest that we relay the additional factual info to Dr.
Allen
with a request that he assess whether or not it changes his views; that we
ask Dr. Allen whether he needs to examine Mr. Daniels; that we ask Dr.
Allen, in light of the complete factual picture, whether the identified
accomodations are appropriate given the efforts the agency has made thus
far; and that we ask Dr. Allen whether he has a medical opinion, in light of
the full record, on whether Daniels' condition would have a bearing on the
conduct for which the OIG is proposing disciplinary action.

Rick

> -----Original Message-----
> From:                Reback, Richard
> Sent:                Tuesday, March 02, 2004 11:13 AM
> To:                'Dave.Nuhfer@bpd.treas.gov';
'Jessica.Hoffman@bpd.treas.gov';
> Cincinnati, Ed; Stulginsky, Edward; Segner, Mona; Wojnarowski, Doris
> Subject:                Allen report
>
> All,
>
> The third para of Dr. Allen's report identifies the
materials on
> which he based his conclusions.  There appear to be signficant factual
> information that is not identified that may or may have a bearing on the
> doctor's medical views, including the following:
>
>        - a copy of the offending email;
>        - a copy of the audio and written transcript of his telephone calls
> to Sholanda Smith;
>        - a copy of the email in which he apparently is soliciting another
> employee to assist him in establishing a marriage counseling business;
>        - the fact that several employees have come forwarded to report that
> Daniels has called them (while he has been out of the office) to asking
> for them to donate leave to him;
>        - a description of agency efforts thus far to provide accomodations
> to Mr. Daniels, including establishment of a new offsite location at the
> Press Club building, offers for him to work parttime over a period of
> several weeks; reporting on an interim basis to a new supervisor (first
> Ms. Hendricks, at his request, and then Mr. Stulginsky upon Hendricks'
> retirement); restructuring of job duties so he would have less stress;
>        - Daniels repeated refusals to accept federal express deliveries,
>        - Danies' repeated failures to call into his supervisor to report

```
> his absences.
>
>                     It also would be useful, in light of the apparent concensus
to go
> forward with a notice of proposed removal, whether Dr. Allen has any views
> (based on an expanded factual record that includes the information above)
> on whether Daniels' condition would have played a role in preventing him
> from reporting to work at the Press Club, or calling into his supervisor,
> the items that have formed the basis of the notice of proposed removal.
>
>
Rick
>
>
>                     Dr. Allen did not examine Mr. Daniels.  He appeared to have
no
> information other than what Mr. Daniels has provided about
```

Exhibit 20, Notice of Proposed Removal of March 8, 2004



# DEPARTMENT OF HOMELAND SECURITY
## Office of Inspector General
### Washington, DC 20528

March 8, 2004

<u>BY FIRST CLASS MAIL and FEDERAL EXPRESS</u>

**Memorandum For:** James Daniels
Auditor

**From:** Edward Stulginsky
Acting Deputy Assistant Inspector General for Audits

**Subject:** Notice of Proposal to Remove

This is notice that I am proposing to remove you from your position of Auditor, GS-0511-14, in the Department of Homeland Security, Office of Inspector General (DHS-OIG), and Federal service, no sooner than 30 calendar days from the date you receive this notice. This proposed action is issued in accordance with Title 5 Code of Federal Regulations (CFR) Part 752. This action is proposed to promote the efficiency of the service.

## Background

In May 2003, you were voluntarily serving as an EEO counselor as a collateral duty. On May 28, 2003, you opened an email from DHS-OIG legal counsel in which the counsel stated that he had learned that you had a prior working relationship with one of the individuals involved in the EEO complaint. The email continued, "Accordingly, you have a conflict of interest as well as an appearance of a conflict and cannot be involved as the counselor in this matter. Please withdraw so that a new counselor can be assigned." You then left work and reported that a previously diagnosed condition (Post-Traumatic Stress Disorder) was exacerbated by this email. You filed a claim with the Office of Workers' Compensation Programs, which was denied on October 1, 2003. You requested reconsideration, and your request was denied on November 14, 2003. You requested reconsideration again, and on December 8, 2003, the prior decision was reconfirmed.

With the exception of reporting to work for a few hours on November 12, 2003, you have been absent from work since mid June 2003. You were cleared to return to work on a part time basis at an alternate work site (National Press Building) starting October 28, 2003. You came to the building that morning with your nurse, but did not enter the building. On November 10, 2003, you were again medically cleared to return to work in a light duty capacity on November 12, 2003. You agreed to meet Nancy Hendricks, your supervisor at that time, at 9:00 a.m., but she left the site at 9:30 a.m. when you had not arrived yet. You called Ms. Hendricks from the worksite at approximately 10:00 a.m., and she told you where a desk had been set up for you, and told you to call her from that desk. About an hour later, Ms. Hendricks called you, and you

stated that you began to panic when you turned on the computer, so you had called your doctor. You left the worksite shortly after that.

On November 14, 2003, you called Shalonda Smith regarding your participation in the leave transfer program. You called Ms. Smith at 2:13 p.m. and 2:17 p.m. During the first call, you were apparently speaking to someone else. Regarding leave donated from DHS-OIG employees, you stated, "I'm going to have at least three or four pay periods in the bank. Un-ah, un-ah." You then stated that you were going to go to other agencies to get donations and laughed. You stated, "I'm going to every last one." These comments give the impression that you were well enough to engage in telephone communications with others, particularly when the communications benefited you.

Subsequent to November 12, 2003, you called Ms. Hendricks to discuss alternatives to your returning to work. It was agreed that you would report to the National Press Building on November 17, 2003. Ms. Hendricks agreed to get some paper work to this worksite for you to work on. That morning, when you did not answer your worksite phone, Ms. Hendricks called an employee who sits close to the desk set up for you. He confirmed that you did not show up that day. Ms. Hendricks then called your home and left a message for you to call her. You did not return her call.

In a letter dated November 21, 2003, you and your attorney, Mr. James R. Klimaski, were notified of a proposal to terminate your participation in the leave transfer program unless evidence was provided that verified you were entitled to be in the program. This letter was delivered to your home twice, but you refused delivery.

On November 24, 2003, Ms. Hendricks called your home again. Your wife answered the phone and said that you were not available. Ms. Hendricks asked your wife to have you return her call, and she also mentioned that the office was trying to deliver some papers to you, which your wife acknowledged. You again did not return the call.

On December 5, 2003, a meeting was held with Mr. Klimaski, who indicated that medical documentation regarding your condition would be provided to DHS-OIG by December 12, 2003. A letter dated December 8, 2003, by Doris A. Wojnarowski, Associate Counsel, was sent to Mr. Klimaski confirming this.

A medical report from Antoinette M. Lewis, M.D. was received by DHS-OIG on December 17, 2003, but it did not contain the information requested in our December 8, 2003 letter. The fact that this report was inadequate was related to you and Mr. Klimaski in a letter dated December 18, 2003, by Mona R. Segner, Director of Human Resources Division. The medical report also stated that you were cleared to work at home on a part time basis with certain restrictions; however, you made no attempt to communicate with DHS-OIG management to make arrangements for working at home. Moreover, our attempts to contact you at home have been rebuffed.

On January 14, 2003, I sent a letter to you and Mr. Klimaski informing you that you needed to submit the requested medical documentation by January 30, 2004. No documentation was

provided to either DHS-OIG or Federal Occupational Health, so your participation in the leave transfer program was terminated effective January 25, 2003. You were also notified in this letter that, absent an administratively acceptable excuse, you were expected to report to work on January 26, 2004. You did not report or call in with an excuse that day, or any day since then.

In addition to the above information, on February 4, 2004, I received an email from one of your coworkers, which stated that you are starting a marriage counseling business. Also, none of the letters that DHS-OIG has sent to your home have been accepted, and repeated attempts to contact you by phone have been unsuccessful.

The specific reasons and specifications on which this proposed action is based are as follows:

**Reason #1:** Being Absent Without Leave (AWOL) from January 26, 2004, through the date of this letter.

> **Specification:** On January 14, 2004, I sent you a letter in which you were told that you were to report to the National Press Building on Monday, January 26, 2004, or call me with an administratively acceptable explanation for your continued absence. I informed you that if you failed to report or provide an explanation, then you would be charged with AWOL. You did not report to work on January 26, 2004, or any day since then. Additionally, no information has been provided to justify or explain your absences; nor have you requested or been granted any leave for these absences. Therefore, for the 26 workdays (231 hours) from January 26, 2004 to the present (March 5, 2004), your absences from work have been charged as AWOL.

**Reason #2:** Failure to Follow Supervisory Instructions.

> **Specification #1:** On November 17, 2003, Nancy Hendricks, your previous supervisor, left a message at your home instructing you to call her. Since you did not return her call, Ms. Hendricks again tried to contact you by telephone. On November 24, 2004, she left a message with your wife Beverly with instructions for you to call her. You never called her back prior to her retiring on January 1, 2004.

> **Specification #2:** On January 14, 2004, I sent you a letter in which I directed you to report to the National Press Building on Monday, January 26, 2004. I also informed you in my January 14 letter that if you failed to report to work as directed, or failed to telephone me with an administratively acceptable explanation for your absence, the absence would be charged as AWOL. In my January 14 letter I also instructed you to call me as soon as you became aware that you were unable to report to work and to do so no later than 10:00 a.m. on the date of the absence. On January 26, 2004, you failed to report to work at the National Press Building and you failed to call me to request leave or to report your absence.

> **Specification #3:** On January 27, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date. As was detailed

in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #4:**  On January 28, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date.  As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #5:**  On January 29, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date.  As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #6:**  On January 30, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date.  As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #7:**  On February 3, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date.  As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #8:**  On February 4, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date.  As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #9:**  On February 5, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date.  As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #10:**  On February 6, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date.  As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #11:**  On February 9, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date.  As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #12:**  On February 10, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date.  As was

detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #13:** On February 11, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date. As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #14:** On February 12, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date. As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #15:** On February 13, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date. As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #16:** On February 18, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date. As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #17:** On February 19, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date. As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #18:** On February 20, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date. As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #19:** On February 23, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date. As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #20:** On February 24, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date. As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #21:** On February 25, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date. As was

detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #22:** On February 26, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date. As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #23:** On February 27, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date. As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #24:** On March 2, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date. As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #25:** On March 3, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date. As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #26:** On March 4, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date. As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

**Specification #27:** On March 5, 2004, you failed to report to work at the National Press Building or call me to request leave to cover your absence on this date. As was detailed in Reason #2, Specification #2 above, you did not follow the instructions that I provided you in my letter of January 14, 2004.

As an employee of the DHS-OIG, you are held to a very high standard of conduct. You are expected to understand and abide by the rules, regulations, and policies that apply to you as a DHS-OIG auditor, and to adhere to supervisory instructions. Your repeated misconduct cannot be condoned or tolerated, and warrants disciplinary action. In determining the appropriate action, I considered a number of factors.

First, I considered the seriousness of your misconduct. There were numerous specifications for the reasons listed above. From January 26, 2004 to the present, you have not reported to work and have not requested leave. The extent of your misconduct shows complete disregard for the rules of DHS-OIG.

Another factor I considered is your past work record. You have provided almost 30 years of Federal service, and you have performed at an acceptable level or better and have no past

disciplinary record. However, because of your years of experience, you should be aware of your responsibilities as a Federal employee and should not have behaved in the way you did.

I also considered the impact your misconduct has had on management's confidence in your ability to successfully perform assigned duties. Your repeated failure to adhere to your supervisors' instructions and to report to work has raised serious questions in management's mind as to your overall integrity and dependability, and it has also had a negative impact on the organization.

Finally, consideration was given to the adequacy and effectiveness of alternative sanctions to deter such conduct in the future. After careful review and consideration, I have determined that the reasons stated in the proposal are fully supported by the facts and that removal is the minimum action warranted to promote the efficiency of the service.

**Procedures**

You have a right to reply to this notice orally and/or in writing and to furnish affidavits and/or other documentary evidence in support of your answer. Your written response should be addressed to J. Richard Berman, Assistant Inspector General for Audits (AIGI), 1120 Vermont Avenue, 10th Floor, Washington, DC 20005, fax number (202) 254-4285, who has been designated as the deciding official regarding this proposed action. We encourage you to transmit any written reply by facsimile because of mail delivery delays due to security procedures. If you choose to fax your response to Mr. Berman, please mail the signed original also. Mr. Berman must receive your written response within fifteen (15) calendar days from your receipt of this letter. Consideration will be given to extending this 15-day period if you submit a request in writing to Mr. Berman, before the expiration of the allowed time period, stating your reasons for the request for additional time to respond to this proposal. A copy of your response should also be forwarded to Jessica Hoffman, Human Resources Specialist, Bureau of the Public Debt, Room 206-2, 200 Third Street, Parkersburg, WV 26101, fax number (304) 480-7352.

If you wish to appear personally before Mr. Berman to reply orally to this notice, you must contact him within seven (7) calendar days from your receipt of this letter so an appointment for your reply can be scheduled. You may schedule an appointment for a personal appearance by contacting Mr. Berman at (202) 254-4049. Mr. Berman may choose to hear the reply himself, or he may designate an appropriate official to hear the reply on his behalf. Be advised, however, that an oral reply meeting is not a hearing and the appearance of witnesses will not be permitted.

I acknowledge that you are being represented by Mr. James R. Klimaski. If Mr. Klimaski is no longer representing you, you must designate your new representative in writing to Mr. Berman. DHS-OIG, however, may disallow as your representative an individual whose activities as representative would cause a conflict of interest or position, or a DHS-OIG employee whose release from his or her official position give rise to unreasonable costs or whose priority work assignments preclude his or her release.

Should you return to work during this thirty (30) day advance notice period, you will be allowed a reasonable amount of official time to review the evidence in support of the reasons and

specifications advanced in this proposal, to secure affidavits, and to prepare your written reply. In addition, you and your representative, if your representative is an OIG employee, will be allowed official time to make an oral reply if you choose to do so. You should arrange with me for any use of official time.

You may review the material upon which this proposal is based. In the event you desire to review the material, please make such a request directly to Ms. Hoffman. Copies of the pertinent statutes and regulations governing this action may also be reviewed by contacting Ms. Hoffman at (304) 480-6775.

No decision on this matter will be made until all material relied upon supporting the reason for the proposed action, including any timely written and/or oral reply, has been considered. As soon as is practicable after your reply is received or after expiration of your response time you will be issued a written decision. The written decision will state a decision to (1) take the proposed action; (2) take a lesser action; or (3) not take the proposed action and provide specific reasons for that decision.

You will be retained in a duty status during the advance notice period specified in this letter. Please note that you will continue to be charged with AWOL until such time as you either report to work or provide administratively acceptable evidence to support the need for your continued absence from work.


Copy: James Klimaski, Esq.
      BY FACSIMILE AND FIRST CLASS MAIL

Exhibit 21, Lewis Medical Excuse Note of Feb. 22, 2005

**CERTIFICATE OF PROFESSIONAL CARE**

**ANTOINETTE M. LEWIS, M.D.**
2121 K Street N.W., Suite 800
Washington, DC 20037

Telephone: (202) 261-6584

Date _02/22/05_

This is to certify that

_Demetri J Daniels_

is under my care for the following: _PTSD - EXXC_

_Please excuse from
work today Feb 22
through March 6, 2005
for medical reasons._

Dr. _[signature]_

&3111 — Medical Arts Press    1-800-328-2179

Exhibit 22, Letter of Feb. 28, 2005

# KLIMASKI & ASSOCIATES, P.C.

*Attorneys at Law*

James R. Klimaski*
Lynn I. Miller*
Edward J. Elder*+
Kimberly M. Hibsch+

*Case Manager*
W. Jon Pinkus

February 28, 2005

**By Hand Delivery**

1819 L Street NW
7th Floor
Washington, DC 20036-3830
(202) 296-5600
(202) 296-5601 Fax
firm@klimaskilaw.com
www.klimaskilaw.com

*Lynn Miller*

Ms. Belinda Finn
Deputy Assistant Inspector General – Audit
DHS-OIG
U.S. Department of Homeland Security
*Deliveries, Couriers:*
1120 Vermont Ave. NW — 10th Floor
Washington DC  20005

> *Re:*  Security Clearance Update
> Demetri J. Daniels, Supervisory Auditor

Dear Ms. Finn:

I am forwarding you the following documents on behalf of my client, Mr. Demetri J. Daniels:

1. Federal Employees Notice of Traumatic Injury and Claim for Continuation of Pay – OWCP Form CA-1.
2. Revised leave request, dated 2-24-2005 — OPM Form 71.

Finally, I am also forwarding to you Mr. Daniels' application for disability retirement. Though Mr. Daniels may be eligible for regular retirement in a few months, the stress he is under has made it more difficult to continue his attempts to fully recover and return to full-time employment.

Please complete the application's supervisor statement and forward the application to OPM. We appreciate your assistance in this matter.

Sincerely,

James R. Klimaski

Attachments
JRK / wjp
cc:   Richard L. Skinner

*Also admitted in Maryland
*+Also admitted in New York
+Admitted in Virginia

Federal Employee's Notice of
Traumatic Injury and Claim for
Continuation of Pay/Compensation

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs

Employee: Please complete all boxes 1 - 15 below. Do not complete shaded areas.
Witness: Complete bottom section 16.
Employing Agency (Supervisor or Compensation Specialist): Complete shaded boxes a, b, and c.

**Employee Data**

| 1. Name of employee (Last, First, Middle) | 2. Social Security Number |
|---|---|
| DANIELS Demetri J. | |

| 3. Date of birth Mo. Day Yr. | 4. Sex | 5. Home telephone | 6. Grade as of date of injury |
|---|---|---|---|
| 1950 | ☑ Male ☐ Female | 703-922-5388 | Level 14  Step 9 |

| 7. Employee's home mailing address (include city, state, and ZIP code) | 8. Dependents |
|---|---|
| P.O. Box 30785 Alexandria, Virginia 22310 | ☑ Wife, Husband ☐ Children under 18 years ☐ Other |

**Description of Injury**

9. Place where injury occurred (e.g. 2nd floor, Main Post Office Bldg., 12th & Pine)
5208 Martinique Lane Alexandria Virginia 22315 (Work @ Home)

| 10. Date injury occurred Mo. Day Yr. | Time | 11. Date of this notice Mo. Day Yr. | 12. Employee's occupation |
|---|---|---|---|
| 2-22-05 | 10:30 ☑ a.m. ☐ p.m. | 2-24-05 | Supervisory Auditor |

✗13. Cause of injury (Describe what happened and why)
Aggravation of Pre-existing condition caused by sending Personal and Confidential letter to disabled Employee instead of Representative - As Requested and Agreed to.

| | a. Occupation code |
|---|---|

✗14. Nature of injury (identify both the injury and the part of body, e.g. fracture of left leg)
Aggravation of Pre-existing condition. Workplace measures were in place to prevent avoidable Reinjury

| b. Type code | c. Source body |
|---|---|

OWCP Use - NOI Code:

**Employee Signature**

15. I certify, under penalty of law, that the injury described above was sustained in performance of duty as an employee of the United States Government and that it was not caused by my willful misconduct, intent to injure myself or another person, nor by my intoxication. I hereby claim medical treatment, if needed, and the following, as checked below, while disabled for work:

☑ a. Continuation of regular pay (COP) not to exceed 45 days and compensation for wage loss if disability for work continues beyond 45 days. If my claim is denied, I understand that the continuation of my regular pay shall be charged to sick or annual leave, or be deemed an overpayment within the meaning of 5 USC 5584.

☐ b. Sick and/or Annual Leave

I hereby authorize any physician or hospital (or any other person, institution, corporation, or government agency) to furnish any desired information to the U.S. Department of Labor, Office of Workers' Compensation Programs (or to its official representative). This authorization also permits any official representative of the Office to examine and to copy any records concerning me.

Signature of employee or person acting on his/her behalf  Demetri J. Daniels    Date 2-24-05

Any person who knowingly makes any false statement, misrepresentation, concealment of fact or any other act of fraud to obtain compensation as provided by the FECA or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment or both.

Have your supervisor complete the receipt attached to this form and return it to you for your records.

**Witness Statement**

16. Statement of witness (Describe what you saw, heard, or know about this injury)
See recipients of November 15, 2004 letter to Pauline Campbell (ATTACHED)
See February 18, 2005 letter sent to disabled employee contrary to
November 15, 2004 - which was designed to prevent REINJURY (ATTACHED)

| Name of witness | Signature of witness | Date signed |
|---|---|---|

| Address | City | State | ZIP Code |
|---|---|---|---|

✗ See ATTACHED

Form CA-1
Rev. Apr. 1999

Monday, November 15, 2004

MEMORANDUM FOR:        Pauline Campbell, Director
                       DHS/FEMA Office of Equal Rights (OER)

THROUGH:               Gladys Kessee, EEO Counselor
                       DHS/FEMA

FROM:                  Demetri J. Daniels, Supervisory Auditor
                       DHS/OIG

SUBJECT:               Requested Extension of EEO Counseling

This letter describes an event that has affected my ability to conclude EEO counseling in a timely manner. I will need to postpone my further involvement until I am medically able to resume or until I employ a representative to act in my behalf.

During EEO counseling, I read the following statement by Mr. James Klimaski, my legal representative. In response to a written question, he reported—

"There was an implication that Mr. and Mrs. Daniels were somehow conspiring to deceive the Agency concerning the receipt of his security papers." Mr. Klimaski stated that he "believed this implication came from the Agency's counsel."

This statement reminded me of the May 28, 2003 e-mail from Mr. Richard Reback, counsel to the Inspector General, which initially triggered my preexisting PTSD. As such, I obtained emergency medical treatment on November 14, 2004 for symptoms similar to those documented in the May 28, 2003 on-the-job injury.

This most-recent allegation by DHS counsel adversely affected my memory and ability to concentrate. More specifically, it has (1) interrupted my work-at-home accommodation and (2) delayed my progress to update and complete my security clearance by November 18, 2004.

Given this, I have sent a copy of this letter to Belinda Finn and Ann Tursic, since this recent injury will affect my performance in activities 1 and 2, also. I will resume both when medically able. During my recovery, please honor the July 2003 OIG agreed-upon communication plan by sending all personal correspondence, written and oral, to Mr. James Klimaski.

Happy Thanksgiving; I appreciate your patience and understanding.

CONFIDENTIAL

cc:     Belinda Finn, Deputy Assistant Inspector General for Audit, Office of
        Inspector General (immediate supervisor)
        Ann Tursic, Chief Personnel Security Division, Office of Security

Attachments:

Medical treatment, INOVA Emergency Care Center, November 14, 2004
Request for Leave or Approved Absence (to immediate supervisor only)

CONFIDENTIAL

## INOVA EMERGENCY CARE CENTER

11901 Baron Cameron Avenue
Reston, Virginia 20190
703-471-0175

4315 Chain Bridge Road
Fairfax, Virginia 22030
703-591-9328

6355 Walker Lane
Alexandria, Virginia 22310
703-797-6800

Date: 11/14/04
Patient: Demetri Daniels

To Whom it May Concern:

The above patient was seen in this Emergency Department on 11/14/04 for an (accident) (illness.)

He/she may not be able to return to work immediately. He/she has been instructed to seek any follow up care necessary from his/her own private physician who may advise him/her regarding return to work.

☒ May return to work. 11/16/04

Sincerely,

Emergency Department Physician

CONFIDENTIAL

---

## ANTOINETTE M. LEWIS, M.D.

2121 K Street N.W., Suite 800
Washington, DC 20037
Telephone: (202) 261-6584

17 Nov 04 by 2004

Subject: Demetri Daniels (AKA) James Daniels

To Whom it may concern:

Demetri Daniels was evaluated in my office today.

Please excuse from work 11/9/04 through 11/11/04 for medical reasons.

CONFIDENTIAL

Attending Physician's Report

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs



| 1. Patient's name Last | First | Middle | 2. Date of Injury mo., day yr. | 3. OWCP File Number | OMB No. 1215-0103 Expires: 08-31-05 |
|---|---|---|---|---|---|
| DANIELS | DEMETRI | J | 11/12/2004 | | |

4. What history of injury (including disease) did patient give you? *PT became wildly symptomatic upon reading material regarding history's perception of his behavior in the shelter of all previous claim*

5. Is there any history or evidence of concurrent or pre-existing injury or disease or physical impairment? (If yes, please describe)   ☒Yes  ☐No  *Pre-existing PTSD*      ICD-9 Code *309.81*

6. What are your findings? (Include results of X-Rays, laboratory reports, etc.) *Acute anxiety, depressed mood somatic complaints*

7. What is your diagnosis? *Acute exacerbation of Post Traumatic Stress Disorder*      ICD-9 Code *309.81*

8. Do you believe the condition found was caused or aggravated by an employment activity? (Please explain answer) ☒Yes ☐No *Re-experienced acute symptoms in reaction to information from nearby regarding himself*

9. Did injury require hospitalization? If no, go to item # 13 ☐Yes ☒No *Acute care visit* | 10. Date of admission mo., day, yr. | 11. Date of discharge mo., day, yr. | 12. Additional Hospitalization required If Yes, describe in "Remarks" (Item 25) ☐Yes ☒No

13. What treatment did you receive? *Pharmacotherapy*

| 14. Date of first examination mo., day, yr. *11-17-04* | 15. Date(s) of treatment: mo., day yr.        mo., day yr.        mo., day yr. | 16. Date of discharge from treatment mo., day yr. *N/A* |
|---|---|---|

| 17. Period of total disability From mo. day yr. Thru mo., day, yr. *11-12-2004* | 18. Period of Partial Disability From mo. day yr. Thru mo., day yr. | 19. Date employee able to resume light work mo., day, yr. |
|---|---|---|

| 20. Date employee is able to resume regular work mo., day, yr. *Unditermined* | 21. Has employee been advised that he/she can return to work? ☐Yes ☒No | 22. If yes, on what date was he/she advised? mo., day, yr. *N/A* |
|---|---|---|

| 23. If employee is able to resume only light work, indicate the extent of physical limitations and the type of work that could reasonably be performed with these limitations. (Continue in Item #25 if necessary.) | 24. Are any permanent effects expected as a result of this injury? If yes, describe in item #25. ☒Yes ☐No |
|---|---|

25. Remarks

26. If you have referred the employee to another physician provide the following:
Name *Juru (Amy LCSW)*
Address *119 South Saint Asaph*
City *Alexandria*   State *VA*   ZIP *22314* | Specialty *EMDR*
27. What was the reason for this referral? ☐Consultation ☒Treatment

28. I certify that the statements in response to the questions asked above are true, complete and correct to the best of my knowledge. Further, I understand that any false or misleading statements or any misrepresentation or concealment of material fact which is knowingly made may subject me to felony criminal prosecution.
Signature of Physician  *[signature]*                Date 11/17/2004

29. Name of Physician
Address
ANTOINETTE M. LEWIS, M.D.
2121 K Street N.W., Suite 800
City    State   Washington, DC 20037   ZIP | 30. Tax ID Number *30 0089532*
31. Do you specialize? ☒Yes ☐No
32. If yes, indicate specialty *Psychiatry*

CONFIDENTIAL

Form CA-20
Rev. Nov. 1999

## Request for Leave or Approved Absence

| 1. Name (Last, first, middle) | 2. Employee or Social Security Number |
|---|---|
| Daniels, Demetri J. | |

3. Organization

DHS-OIG

| 4. | Type of Leave/Absence | | | | | 5. | Family and Medical Leave |
|---|---|---|---|---|---|---|---|

| Check appropriate box(es) and enter date and time below) | Date | | Time | | Total Hours |
|---|---|---|---|---|---|
| | From | To | From | To | |
| ☐ Accrued annual leave | | | | | |
| ☐ Restored annual leave | | | | | |
| ☐ Advance annual leave | | | | | |
| ☐ Accrued sick leave | | | | | |
| ☐ Advance sick leave | | | | | |

Purpose:
- ☑ Illness/injury/incapacitation of requesting employee
- ☐ Medical/dental/optical examination of requesting employee
- ☐ Care of family member, including medical/dental/optical examination of family member, or bereavement
- ☐ Care of family member with a serious health condition
- ☐ Other

| ☐ Compensatory time off | | | | | |
|---|---|---|---|---|---|
| ☐ Other paid absence (specify in remarks) | | | | | |
| ☑ Leave without pay | 11-19 | 12-04 | 8:00 | 12:00 | 28 |

5. Family and Medical Leave

If annual leave, sick leave, or leave without pay will be used under the Family and Medical Leave Act of 1993 (FMLA), please provide the following information:

☑ I hereby invoke my entitlement to family and medical leave for:
- ☐ Birth/Adoption/Foster care
- ☐ Serious health condition of spouse, son, daughter, or parent
- ☑ Serious health condition of self

Contact your supervisor and/or your personnel office to obtain additional information about your entitlements and responsibilities under the FMLA. Medical certification of a serious health condition may be required by your agency.

6. Remarks    Original medical documents sent 11-18 by FEDEX to Belinda Fens (8492205881900)

7. Certification: I certify that the leave/absence requested above is for the purpose(s) indicated. I understand that I must comply with my employing agency's procedures for requesting leave/approved absence (and provide additional documentation, including medical certification, if required) and that falsification of information on this form may be grounds for disciplinary action, including removal.

| 7a. Employee signature | 7b. Date signed |
|---|---|
| Demetri J. Daniels | 11-17-04 |

| 8a. Official action on request | ☐ Approved    ☐ Disapproved | (If disapproved, give reason. If annual leave, initiate action to reschedule.) |
|---|---|---|

8b. Reason for disapproval

| 8c. Signature | 8d. Date signed |
|---|---|

**Privacy Act Statement**

Section 6311 of title 5, United States Code, authorizes collection of this information. The primary use of this information is by management and your payroll office to approve and record your use of leave. Additional disclosures of the information may be: To the Department of Labor when processing a claim for compensation regarding a job connected injury or illness; to a State unemployment compensation office regarding a claim; to Federal Life Insurance or Health Benefits carriers regarding a claim; to a Federal, State, or local law enforcement agency when your agency becomes aware of a violation or possible violation of civil or criminal law; to a Federal agency when conducting an investigation for employment or security reasons; to the Office of Personnel Management or the General Accounting Office when the information is required for evaluation of leave administration; or the General Services Administration in connection with its responsibilities for records management.

Public Law 104-134 (April 26, 1996) requires that any person doing business with the Federal Government furnish a social security number or tax identification number. This is an amendment to title 31, Section 7701. Furnishing the social security number, as well as other data, is voluntary, but failure to do so may delay or prevent action on the application. If your agency uses the information furnished on this form for purposes other than those indicated above, it may provide you with an additional statement reflecting those purposes.

Office of Personnel Management
5 CFR 630                                        Local Reproduction Authorized

OPM Form 71
June 2001
Formerly Standard Form (SF) 71

CONFIDENTIAL

February 24, 2005

**Supplementary Remarks for Number 13 and 14 of Form CA-1**

1) My November 15, 2004 letter to the Agency contained these paragraphs:

   *This most-recent allegation by DHS counsel adversely affected my memory and ability to concentrate. More specifically, it has (1) interrupted my work-at-home accommodation and (2) delayed my progress to update and complete my security clearance by November 18, 2004.*

   *Given this, I have sent a copy of this letter to Belinda Finn and Ann Tursic, since this recent injury will affect my performance in activities 1 and 2, also. I will resume both when medically able. During my recovery, please honor the July 2003 OIG agreed-upon communication plan by sending all personal correspondence, written and oral, to Mr. James Klimaski.*

2) Ms. Belinda Finn, the sender of the letter dated February 18, 2005, failed to realize that my doctor had not (since my November 18, 2004 injury) cleared me to resume work on the security clearance. Consistent with past practice, the Agency asked for medical clearance when I attempted to work at the National Press Building in November 2003.

3) Ms. Finn's oversight was compounded by the fact that, during my medical recovery, I asked the OIG to send all personal communications, written and oral, to my representative. This would have prevented the re-injury, and I could have continued to work on my clearance.

4) DHS-OIG has, at times, honored our agreement by sending my representative personal communications. For me, this small measure helps to alleviate some of the symptoms associated with my condition.

5) This will be my fourth work-related injury since May 28, 2003. Taken as a whole, these repeated injuries have affected my ability to complete the security clearance by the requested March 4, 2005 completion date.

*Notice of Traumatic Injury*

   Ms. Finn, please complete the attached OWCP Form CA-1 and return the receipt attached to this form to my representative by traceable means. I request Continuation of Pay, not to exceed 45 days.

Attachments:

OWCP Form CA-1
Request for Medical Leave (COP) from February 22 through March 6, 2005

*Emery*
*Daniels* 2-24-05

## Request for Leave or Approved Absence

| 1. Name (Last, first, middle) | 2. Employee or Social Security Number |
|---|---|
| DANIELS Demetri J. | |

**3. Organization**

DHS-OIS

| 4. | | | Type of Leave/Absence | | | | 5. | Family and Medical Leave |
|---|---|---|---|---|---|---|---|---|

| Check appropriate box(es) and enter date and time below) | Date | | Time | | Total Hours | If annual leave, sick leave, or leave without pay will be used under the Family and Medical Leave Act of 1993 (FMLA), please provide the following information: |
|---|---|---|---|---|---|---|
| | From | To | From | To | | |
| ☐ Accrued annual leave | | | | | | |
| ☐ Restored annual leave | | | | | | |
| ☐ Advance annual leave | | | | | | |
| ☐ Accrued sick leave | | | | | | |
| ☐ Advance sick leave | | | | | | |

☑ I hereby invoke my entitlement to family and medical leave for:

**Purpose:**
- ☑ Illness/injury/incapacitation of requesting employee
- ☐ Medical/dental/optical examination of requesting employee
- ☐ Care of family member, including medical/dental/optical examination of family member, or bereavement
- ☑ Care of family member with a serious health condition
- ☐ Other  NOTE: LEAVE STMT ATTACHED (MEDICAL)

☐ Birth/Adoption/Foster care

☐ Serious health condition of spouse, son, daughter, or parent

☑ Serious health condition of self

| ☐ Compensatory time off | | | | | | |
|---|---|---|---|---|---|---|
| ☐ Other paid absence (specify in remarks) | | | | | | |
| ☑ Leave without pay | 2-22 | 3-6 | 10:30 | 12:00 | 33.5 | |

Contact your supervisor and/or your personnel office to obtain additional information about your entitlements and responsibilities under the FMLA. Medical certification of a serious health condition may be required by your agency.

**6. Remarks**  LEAVE Request submitted 2-23 Revised to Reflect the following (1) Doctors Statement (2) Two-week Period of Leave (3) Request Continuation of Pay (COP)

**7. Certification:** I certify that the leave/absence requested above is for the purpose(s) indicated. I understand that I must comply with my employing agency's procedures for requesting leave/approved absence (and provide additional documentation, including medical certification, if required) and that falsification of information on this form may be grounds for disciplinary action, including removal.

| 7a. Employee signature | 7b. Date signed |
|---|---|
| Demetri J. Daniels | 2-24-05 |

| 8a. Official action on request | | |
|---|---|---|
| ☐ Approved   ☐ Disapproved | (If disapproved, give reason. If annual leave, initiate action to reschedule.) | |

**8b. Reason for disapproval**

| 8c. Signature | 8d. Date signed |
|---|---|
| | |

**Privacy Act Statement**

Section 6311 of title 5, United States Code, authorizes collection of this information. The primary use of this information is by management and your payroll office to approve and record your use of leave. Additional disclosures of the information may be: To the Department of Labor when processing a claim for compensation regarding a job connected injury or illness; to a State unemployment compensation office regarding a claim; to a Federal Life Insurance or Health Benefits carriers regarding a claim; to a Federal, State, or local law enforcement agency when your agency becomes aware of a violation or possible violation of civil or criminal law; to a Federal agency when conducting an investigation for employment or security reasons; to the Office of Personnel Management or the General Accounting Office when the information is required for evaluation of leave administration; or the General Services Administration in connection with its responsibilities for records management.

Public Law 104-134 (April 26, 1996) requires that any person doing business with the Federal Government furnish a social security number or tax identification number. This is an amendment to title 31, Section 7701. Furnishing the social security number, as well as other data, is voluntary, but failure to do so may delay or prevent action on the application. If your agency uses the information furnished on this form for purposes other than those indicated above, it may provide you with an additional statement reflecting those purposes.

| Office of Personnel Management 5 CFR 630 | Local Reproduction Authorized | OPM Form 71 June 2001 Formerly Standard Form (SF) 71 |
|---|---|---|

**CERTIFICATE OF PROFESSIONAL CARE**

**ANTOINETTE M. LEWIS, M.D.**
2121 K Street N.W., Suite 800
Washington, DC 20037

Telephone: (202) 261-6584

Date _02/22/05_

This is to certify that

_Demetri J Danius_

is under my care for the following: _PTSD - EXXU_

_Please excuse from
work today Feb 22
through March 6, 2005
for medical reasons._

Dr. _____

0**111 — Medical Arts Press   1-800-328-2179

Exhibit 23, Lewis Medical Report of March 7, 2005

Exhibit 24, Letter of Nov. 16, 2004 from DHS Personnel Security Division Discontinuing Efforts to Process Pl.'s Top Secret Security Clearance

U.S. Department of Homeland Security
Washington, DC 20528



November 16, 2004

Department of Homeland Security
Office of Inspector General
ATTN:  Mr. Curtis Clark
1120 Vermont Ave.
Washington, DC 20528

Dear Mr. Clark:

This letter is to inform you that this office has discontinued its efforts to process Mr.
Demetri J. Daniels for a Top Secret Security clearance with the Department of Homeland
Security.  Mr. Daniels has been contacted on numerous occasions by this office and the
Department of Treasury, Bureau of Public Debt Security Office in an attempt to obtain
the necessary paperwork to initiate the appropriate background investigation.  All
attempts have failed.  This case is referred to your office for further action that is deemed
necessary.

Sincerely,

Ann Tursic
Chief, Personnel Security Division
Office of Security

Exhibit 25, Finn Security Clearance Letter of Feb. 18, 2005

*Office of Inspector
General*

**U.S. Department of
Homeland Security**
Washington, DC 20528

 **Homeland
Security**

February 18, 2005

**Memorandum For:**  Demitri Daniels
Auditor

**From:**          Belinda Finn
Deputy Assistant Inspector General for Audits

**Subject:**          Security Clearance

By memorandum dated November 16, 2004, the DHS Office of Security notified OIG
that they have discontinued their efforts to process a Top Secret Security clearance for
you. The memorandum states that the DHS Office of Security and the Department of
Treasury, Bureau of the Public Debt Security Office, have contacted you on numerous
occasions over the course of a six to nine month period in an attempt to obtain the
necessary paperwork to initiate a background investigation on you. The memo notes that
all of these attempts have failed to obtain the completed forms from you.

As you know, all employees within DHS OIG are required to have at least a Secret
clearance; your position requires a Top Secret clearance. Therefore, your top priority
work assignment is to complete your security clearance paperwork and submit your
original package to Sandra Wagner, Bureau of the Public Debt, 200 Third Street, Avery
Bldg, Parkersburg, WV 26101 by close of business March 4, 2005. Please confirm your
submission of this package by faxing me a confirmation statement at 202-254-4346 by
close of business on the same date.

Be advised that your failure to complete the security clearance paperwork by March 4,
2005, may result in disciplinary action up to and including removal. As the OIG, we can
no longer continue to employ individuals who have failed to even begin the process to
obtain the necessary clearances for access to classified information.

If you have any questions, please contact me at 202-254-4178.

Exhibit 26, Supervisor's Statement for Disability Retirement
Packet



**Supervisor's Statement**

*In Connection With Disability Retirement Under the Civil Service Retirement System
and the Federal Employees Retirement System*
**This form should be completed by the immediate supervisor
or someone who is in a position to observe the applicant on a regular basis.**



CSRS
Civil Service
Retirement System

FERS
Federal Employees
Retirement System

Form Approved:
OMB No. 3206-0228

*All sections of this form must be completed properly.
Failure to do so will delay the processing of the disability
application at OPM.*

The employee identified in Section A has indicated that he or
she intends to apply for disability retirement. The applicant's
signature on the "Applicant's Statement" authorizes his or her
immediate supervisor (or a supervisor who was and is in a
position to observe the applicant on a regular basis) to provide
the information and documentation requested. The immediate
supervisor is asked to provide information about the applicant's
job, performance, attendance, and conduct.

*If you need more space in any section, attach a separate sheet
and indicate that an attachment is provided.*

The following definitions apply to the terms used in the
Supervisor's Statement.

● "Less than fully successful performance" means performance
of an employee which fails to meet established performance
standards in one or more critical elements of the employee's
position or the equivalent level for a position not under CFR
430.

● "Critical element" means a component of an employee's job
that is of sufficient importance that performing below the
minimum standard established by management requires
remedial action, such as denial of within-grade increase, and
may be the basis for reducing the grade level or removing the
employee.

● "Unacceptable attendance" means absence from work which is
too frequent, unpredictable, or lengthy to allow the job to be
done.

● "Unsatisfactory conduct" means conduct for which an
employee may be removed or disciplined for cause under
adverse action procedures. (For example, discourteous conduct
to the public, behavior which poses a threat to the life, health,
safety, or well-being of co-workers, subordinates, or the
public.)

● "Accommodation" means an adjustment made to a job and/or
work environment that enables a qualified handicapped person
to perform the duties of that position. Reasonable accommo-
dation may include modifying the worksite, adjusting the work
schedule, restructuring the job, acquiring or modifying
equipment or devices, providing interpreters, readers or
personal assistants, and reassigning or retraining employees.

● "5 CFR 531.409(d)" is the regulation that provides for a
waiver of the requirements for determination of an employee's
level of competence in certain cases when the employee was in
duty status for less than 60 days during the 52 calendar weeks
before a within-grade increase would be due.

After completing and certifying this form and attaching the
appropriate documentation, you should return the original to the
employee or to your personnel office according to instructions and
practices in your agency. In either case, *a copy must be given to
the employee.* Please *do not* send the form directly to OPM unless
OPM specifically requested you to do so.

If necessary, you may be contacted by OPM for additional
information or clarification.

### Section A. Applicant Identification

| 1. Name (last, first, middle) | 2. Date of birth (mo./day/yr.) | 3. Social security number |
|---|---|---|
| DANIELS, DEMETRI JAMES | | |

### Section B. Information About Employee's Performance

| 1. Title of position of record. (Attach a copy of position description and current performance standards. If available, attach a copy of the latest performance appraisal.) | 2. Date of entry into position (mo./day/yr.) |
|---|---|
| Supervisory Auditor | 8/8/2005 |

3. Is performance less than fully successful in any critical element of position?

☒ Yes, complete items 4 - 6 of this section.    ☐ No, go to Section C.

| 4. Show the approximate date (mo./yr.) that unacceptable performance or the inability to do the job began. | 5. Has employee received, after the date in item 4, a within-grade step or an award based on performance of a critical element? | 5a. Was within-grade increase granted under 5 CFR 531.409 (d)? (see instructions) |
|---|---|---|
| May 2003 | ☒ Yes  ☐ No | Period the increase or award covered. From (mo./yr.) 10/01  To (mo./yr.) 9/02 | ☐ Yes  ☒ No |

3112-101
U.S. Office of Personnel Management
CSRS/FERS Handbook for Personnel and Payroll Offices

**Original - To OPM Through Agency Channels**

Standard Form 3112B
December 1995
This form supersedes Standard Forms 2824B & 3105B

6. Identify any critical element(s) of the position which employee does not perform successfully or at all. Explain the deficiencies you observed. Attach supporting documentation such as notice to the employee that performance is less than fully successful or physician's recommendation regarding medical restrictions.

*See attached supplemental statement.*

### Section C. Information About Employee's Attendance

1. Has employee stopped coming to work?
☐ No    ☒ Yes, how long is absence expected to continue *(if known)* *indefinite*

2. Is employee's attendance unacceptable for continuing in current position?
☐ No    ☒ Yes, attendance stopped or became unacceptable on *(mo./yr.):* *May 2003*

3. Explain the impact of employee's absence on your work operations.

*See attached supplemental statement.*

| 4. How many hours of leave has employee used for apparent medical reasons since date in item C2? (Attach copies of medical information on which you based your decision to approve leave, leave records, records of contact with or notices to employee. Include as much information as possible about specific reasons for leave use.) | Enter Leave Hours Used | Annual | Sick | LWOP |
|---|---|---|---|---|
| | | 743.25 | 292 | 1363 |

### Section D. Information About Employee's Conduct

1. Is employee's conduct unsatisfactory?
☐ No, go to Section E.    ☒ Yes, conduct became unsatisfactory on *(mo./yr.):*

2. Describe how conduct is unsatisfactory *(attach supporting documentation, such as notice to employee of proposed adverse action).*

*See attached supplemental statement.*

### Section E. Information About Accommodation Efforts

1. What efforts have been made to accommodate the employee in current position?

*See attached supplemental statement.*

2. Has employee been reassigned to a new permanent position? *(If yes, to what position and when?)*    3. Has employee been reassigned to *"light duty"* or a temporary position?
☒ No    ☐ Yes, to                    on *(mo./yr.):*    ☒ No, go to Section F.    ☐ Yes

4. Describe the reason for temporary nature of assignment and length of time the employee is expected to occupy the position.

### Section F. Supervisor's Certification

1. How long have you supervised the employee?
*11 months*

2. I certify that all statements made on this Supervisor's Statement are true to the best of my knowledge and belief.

2a. Supervisor's signature *Belinda J. Finn*    2c. Date *(mo./day/yr.)* *3/15/2005*

2d. Supervisor's office mailing address

2b. Supervisor's name *(type or print legibly)* *Belinda J. Finn*

2e. Supervisor's daytime telephone number *(including area code)* *202-254-4178*

Standard Form 3112B
December 1995

3112-101

Supervisor's Statement
Standard Form 3112B
Supplemental Attachment

Applicant Identification:
    Daniels, Demetri J.                    DOB:        1950              SSN:

B.6. *Identify any critical element(s) of the position which employee does not perform successfully or at all. Explain the deficiencies you observed. Attach supporting documentation such as notice to the employee that performance is less than fully successful or physician's recommendation regarding medical restrictions.*

Mr. Daniels is not successfully performing any of his critical elements. As a GS-14 Supervisory Auditor, Mr. Daniels is expected to plan audit strategies and methodology, manage a team of auditors as they gather and analyze data, and develop recommendations to address deficiencies in Department of Homeland Security operations. Mr. Daniels has been not only totally absent from the workplace since May 2003, but was unresponsive to letters and calls from his supervisors from November 2003. In March 2004, his supervisor at that time, Mr. Edward Stulginsky, issued a proposed Notice of Removal that cited Mr. Daniels absence without leave and failure to follow supervisory instructions as cause for dismissal.

Most recently, Mr. Daniels has not completed the necessary forms to start an investigation for his required security clearance. All DHS OIG personnel are required to obtain and maintain at least a Secret security clearance; Mr. Daniels is required to have a Top Secret clearance. Mr. Daniels has failed to complete the application form even after his supervisors have made completing the required forms his highest work priority.

*See attached position description, performance standards, and Notice of Proposal to Remove.*

C.3. *Explain the impact of employee's absence on your work operations.*

Mr. Daniel's absence has caused numerous operational problems in the OIG Office of Audits. At the time he stopped coming to work, the DHS OIG was working to create a new organization comprised of auditors from several legacy agencies. Mr. Daniels was expected to explain the nuances of his areas of technical expertise to new employees coming into unfamiliar responsibilities. He held key positions as a Contracting Officer's Technical Representative (COTR) and also as the DHS OIG National Single Audit Coordinator. By his absence, Mr. Daniels left the OIG without the expertise needed to fill those key positions and he also left his team, the Audit Support Division, without the leadership they needed to perform their assigned tasks. In the ensuing months, his absence has meant that those employees had to learn on their own and pick up his workload while the OIG was unable to fill his virtually vacant position. The following list highlights some specific examples of the impact of Mr. Daniel's absence on our work operations:

- Development and implementation of the Office of Audit's Audit Manual and Quality Control Review Guide was delayed from the original scheduled completion date of September 2003 until January 2004 and May 2004, respectively.

- Input to the Office of Inspector General's Semi-Annual Report for September 2003 was not submitted in a timely manner.

Supervisor: Belinda J. Finn                                    Date: March 15, 2005

1

Supervisor's Statement
Standard Form 3112B
Supplemental Attachment

Applicant Identification:                 DOB:        1950        SSN:
Daniels, Demetri J.

- Handling of Single Audit Act reports from independent public accounting firms was delayed due to a lack of technical advice and the absence of the National Single Audit Coordinator (Demetri J. Daniels).

- A Memorandum of Understanding with the Defense Contract Audit Agency (DCAA) was not established in a timely manner to ensure that DHS components obtained contract audit services and the OIG remained the agency's liaison with the DCAA.

- Work on 14 new task orders awarded to various auditing firms was delayed until another auditor was recertified to assume the position of Contracting Officer Technical Representative (COTR) and the task orders were modified.

- Auditing firms were not paid for months because Mr. Daniels was the only person who could review and approve invoices and he had not reviewed and approved some invoices before his absence.

- OIG was delayed in developing a database of all legacy audit reports that it needed to ensure follow-up and closure of open recommendations.

*D.2. Describe how conduct is unsatisfactory.*

Mr. Daniels has refused to respond to questions and directions from his supervisors on several occasions. As detailed in Mr. Stulginsky's Proposed Notice of Removal, dated March 8, 2004, Mr. Daniels was totally unresponsive to the agency's communication attempts from December 2003 until he received the Proposed Notice of Removal in March 2004. Mr. Daniels has also refused to complete his required security application form, as evidenced by the attached letter from the DHS Office of Security.

*E.1. What efforts have been made to accommodate the employee in current position?*

In November 2003, the DHS OIG arranged an alternate worksite for Mr. Daniels, but he spent only a few hours at that worksite. In June 2004, the OIG allowed Mr. Daniels to begin working part time from home. His task was to review audit reports on recipients of federal funds and prepare letter transmitting those letters to Department managers. This task would normally be performed by a GS-12 – GS-13 auditor and is not consistent with the responsibilities of a GS-14 Supervisory Auditor. At the time, this assignment seemed logical because, in his request for accommodations, Mr. Daniels maintained that he would be able to return to the workplace within approximately 4 months from the time that accommodations began.

Supervisor: Belinda J Finn                      Date: March 15, 2005

2

Supervisor's Statement
Standard Form 3112B
Supplemental Attachment

Applicant Identification:
  Daniels, Demetri J.              DOB:        1950        SSN:

Mr. Daniels' condition prevented him from coming to the workplace to pick up or return assignments.
Therefore, other OIG personnel made copies of reports and federal guidance to send to him by mail.
Administrative information has been transmitted via facsimile or express mail. All communications
have been through mail or telephone because Mr. Daniels is unable to communicate by electronic mail.
The OIG provided with Mr. Daniels with a mobile telephone for communications and has reimbursed
Mr. Daniels for the cost of faxing administrative forms, sending packages, and replacing a printer
cartridge.

Supervisor: Belinda J Firm                        Date: March 15, 2005

3

Exhibit 27, Approval of Disability Retirement Application

United States
**Office of**
**Personnel Management**     Washington, DC 20415-0001

April 13, 2005

DEMETRI J DANIELS                                           CSA 4247052
5208 MARTINIQUE LANE
ALEXANDRIA VA 22315

Dear Applicant:

Your application for disability retirement has been approved.

According to information received from your agency, you have **not been separated** from
government service. Therefore, we are notifying your agency of the approval and asking
them to separate you. We are also asking them to give us your last day of pay. Payment
of annuity cannot start until after your last day of pay. (If you are in a sick leave pay
status, the last day of pay will be the day your sick leave is exhausted.) This information,
when received, will enable us to begin sending you interim annuity payments. You
should receive the first payment within 14 to 20 calendar days from the date your agency
gives us the last day of pay, and on the first business day of the month thereafter until we
are able to complete the full processing of your claim. You will receive a statement
explaining the interim payments when they begin.

We are also asking your agency to send us your final separation records so we can
establish your final annuity rate. Interim annuity payments will continue until processing
is complete.

**If you are a CSRS-Offset employee** *(If you are not sure whether you are a CSRS-Offset
employee, check with your agency)*, we cannot start your annuity payments until we
receive confirmation that you have applied for Social Security disability benefits. If you
have not already done so, you must now apply for them. Please send us a copy of the
receipt (or notice of allowance or disallowance) which you receive from the Social
Security Administration after you file the application.

If the Social Security Administration awards you monthly benefits, you must also notify
OPM of the amount of the monthly Social Security benefit and effective date of payment
immediately upon becoming eligible (a photocopy of the award notice or a statement
showing the monthly Social Security benefit and effective date when they determined
your eligibility began would be helpful). OPM will be conducting periodic checks
against Social Security records to discover unreported awards. Notification of Social
Security benefits, and the confirmation that you have applied to Social Security should be
sent to:

Office of Personnel Management
Federal Employees Retirement System
Boyers, PA 16017

We will continue processing your claim after we receive the final records from your employing agency and a receipt or other confirmation that you have applied for Social Security benefit.

Sometimes medical conditions that are disabling for a period of time improve. If your medical condition improves to the point you, and your physician, feel your disabling condition is resolved, you may ask us to review current medical evidence to determine if you have recovered. If you are found recovered from your disabling medical condition on your request, annuity payments will cease the month following the one in which the determination is effective.

In addition, if you are under age 60 we may ask you from time to time to submit detailed medical evidence to show your condition continues to be disabling. If the medical evidence shows your condition has improved to the point you can again perform the duties of your previous position, we will find that you are medically recovered. If you are found medically recovered from your disabling medical condition, annuity payments will cease one year from the date of the medical examination on which the action is based.

In either case, you need to understand that if you are found recovered, your former employing agency is **not** obligated to rehire you into your former position, or any position. If your annuity payments are terminated because you are found medically recovered, you will be eligible for a deferred annuity at age 62 or at an earlier date if you meet service criteria for a discontinued service retirement. We will inform you when you are eligible if we find you recovered.

Please be sure to notify us if you are reemployed with the Federal Government, your marital status changes, or there is a change in your address (either the address where we send your payment, or the address where you wish us to send correspondence, notices, etc). You can report these events and get answers to general questions from our Retirement Information Office on 1(888) 767-6738, or you may write to the Office of Personnel Management, Retirement Operations Center, Boyers, PA 16017. Be sure to include your Civil Service Annuity (CSA) claim number on any correspondence.

Please keep this letter with your other retirement papers for future reference.

You may become eligible for Medicare based on your disability. To qualify, you must be disabled within the meaning of the Social Security Act for 29 months and you must have sufficient earnings in Medicare covered employment. If you believe you may qualify for Medicare, you should contact your local Social Security office promptly to file an

application. A delay in filing could result in a delay in the date your Medicare entitlement may begin.

We understand that retiring on disability may be difficult and unsettling, and hope that your retirement proves to be a positive experience for you.

Sincerely,

*Angela R. Washington*

Angela R. Washington
Initial Claims Branch 1
Legal Administrative Specialist
Disability, Reconsideration, and
    Appeals Group

Exhibit 28, Zelnick Email of Feb. 4, 2004

Stulginsky, Edward
From:      Barksdale, Martha
Sent:      Wednesday, February 04, 2004 10:47 AM
To:        Berman, Richard
Cc:        Stulginsky, Edward
Subject:   FW: James Daniels

FYI

Martha Barksdale
DHS - OIG
202-254-4142
202-254-4294 Fax

-----Original Message-----
From:      Barksdale, Martha
Sent:      Wednesday, February 04, 2004 10:45 AM
To:        Zelnick, Todd
Subject:   RE: James Daniels

Todd,

As your supervisor, I can refer you to General Counsel for their advice in regards to conflict of
interest and outside positions.  In no way should you be requesting my **permission** to work for
Jim Daniels or anyone else.  Whatever decision you make is a personal one.  Thanks for
informing me of this matter.

Martha Barksdale
DHS - OIG
202-254-4142
202-254-4294 Fax

-----Original Message-----
From:      Zelnick, Todd
Sent:      Wednesday, February 04, 2004 10:03 AM
To:        Barksdale, Martha
Subject:   James Daniels

Martha, I have kept in touch with Jim since he went on extended sick leave and he is starting
a marriage counseling business.

Jim might want to hire me on a project-by-project basis to do some proofreading for him.  I
will not be doing any work for Jim during regular business hours at DHS OIG and I will not be
using any government equipment to do this work.  Any proofreading work that I do for him, I
will do at home.

I already discussed this with Rick Doery in our General Counsel's office.  Rick thought that
there was no conflict of interest because the OIG is not involved in marriage counseling.

Do I have your permission to work for Jim on a part-time basis under the conditions that I
have described?

Exhibit 29, Third Workers' Compensation Claim

**Traumatic Injury and Claim for**
**Continuation of Pay/Compensation**

U.S. Department of Labor
Employment Standards Administration
Office of Workers' Compensation Programs

Employee: Please complete all boxes 1 - 15 below. Do not complete shaded areas.
Witness: Complete bottom section 16.
Employing Agency (Supervisor or Compensation Specialist): Complete shaded boxes a, b, and c.

**Employee Data**

| 1. Name of employee (Last, First, Middle) | | 2. Social Security Number |
|---|---|---|
| DANIELS DEMETRI J. | | |

| 3. Date of birth Mo./ day Yr. | 4. Sex | 5. Home telephone | 6. Grade as of date of injury |
|---|---|---|---|
| 1950 | [X] Male [ ] Female | 703-922-5388 | Level 14 Step 9 |

| 7. Employee's home mailing address (Include city, state, and ZIP code) | 8. Dependents |
|---|---|
| 5208 MARTINIQUE LANE | [X] Wife, Husband |
| Alexandria VIRGINIA 22315 | [ ] Children under 18 years [ ] Other |

**Description of Injury**

9. Place where injury occurred (e.g. 2nd floor, Main Post Office Bldg., 12th & Pine)    8:00 to 12:00 NOON
5208 MARTINIQUE Lane Alexandria, VA 22315 (Approved For Work AT Home)

| 10. Date injury occurred Mo. Day Yr. | Time | 11. Date of this notice Mo. Day Yr. | 12. Employee's occupation |
|---|---|---|---|
| 11-12-04 | 11:00 [X]a.m. [ ]p.m. | 11-17-04 | Supervisory Auditor |

13. Cause of injury (Describe what happened and why)
New Injury (NON-recurrent)
See Attached Letter Dated November 15, 2004

| 14. Nature of injury (Identify both the injury and the part of body, e.g., fracture of left leg) | a. Occupation code |
|---|---|
| New Injury - related to "Brief Psychological | b. Type code   c. Source code |
| Evaluation (OWCP FILE # 252044239) | OWCP Use - NOI Code |

**Employee Signature**

15. I certify, under penalty of law, that the injury described above was sustained in performance of duty as an employee of the United States Government and that it was not caused by my willful misconduct, intent to injure myself or another person, nor by my intoxication. I hereby claim medical treatment, if needed, and the following, as checked below, while disabled for work:

[X] a. Continuation of regular pay (COP) not to exceed 45 days and compensation for wage loss if disability for work continues beyond 45 days. If my claim is denied, I understand that the continuation of my regular pay shall be charged to sick or annual leave, or be deemed an overpayment within the meaning of 5 USC 5584.

[ ] b. Sick and/or Annual Leave

I hereby authorize any physician or hospital (or any other person, institution, corporation, or government agency) to furnish any desired information to the U.S. Department of Labor, Office of Workers' Compensation Programs (or to its official representative). This authorization also permits any official representative of the Office to examine and to copy any records concerning me.

Signature of employee or person acting on his/her behalf   Demetri J. Daniels   Date 11-12-04

Any person who knowingly makes any false statement, misrepresentation, concealment of fact or any other act of fraud to obtain compensation as provided by the FECA or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment or both.

Have your supervisor complete the receipt attached to this form and return it to you for your records.

**Witness Statement**

16. Statement of witness (Describe what you saw, heard, or know about this injury)
See Attached Letter Dated 11-1-04; Page

| Name of witness | Signature of witness | Date signed |
|---|---|---|
| James Klimaski, Attorney | (See Attached Letter | 11-1-04 |

| Address | City | State | ZIP Code |
|---|---|---|---|
| 1819 L. Street N.W. 7th Floor | Washington DC | | 20036-3830 |

Form CA-1
Rev. Apr. 1999

CONFIDENTIAL

Supervisor's Report

**17. Agency name and address of reporting office (Include city, state, and zip code)**

Department of Homeland Security
Office of Inspector General
Washington, DC

OWCP Agency Code: 1712 WV
OSHA Site Code:
ZIP Code:

**18. Employee's duty station (Street address and ZIP code)**
1120 Vermont Avenue, Washington, DC

**19. Employee's retirement coverage**  ☒CSRS ☐FERS ☐Other, (identify)

| 20. Regular work hours From: 8:00 ☒a.m. ☐p.m. To: 12:00 ☐a.m. ☒p.m. | 21. Regular work schedule ☐Sun. ☒Mon. ☒Tues. ☒Wed. ☒Thurs. ☒Fri. ☐Sat. |
|---|---|

| 22. Date of Injury Mo. Day Yr. Unknown | 23. Date notice received Mo. Day Yr. 11/22/2004 | 24. Date stopped work Mo. Day Yr. 11/15/2004 Time: UnK ☐a.m. ☐p.m. |
|---|---|---|

| 25. Date pay stopped Mo. Day Yr. 11/15/2004 | 26. Date 45 day period began Mo. Day Yr. Unknown | 27. Date returned to work Mo. Day Yr. Unknown Time: ☐a.m. ☐p.m. |
|---|---|---|

**28. Was employee injured in performance of duty?** ☐Yes ☐No (If "No," explain)

✳

**29. Was injury caused by employee's willful misconduct, intoxication, or intent to injure self or another?** ☐Yes (If "Yes," explain) ☐No

✳

| 30. Was injury caused by third party? ☐Yes ☐No (If "No," go to item 32.) ✳ | 31. Name and address of third party (Include city, state, and ZIP code) |
|---|---|

| 32. Name and address of physician first providing medical care (Include city, state, ZIP code) INOVA Emergency Care Center #6355 Walker Lane Alexandria, VA 22310 | 33. First date medical care received Mo. Day Yr. 11/14/04 |
|---|---|
| | 34. Do medical reports show employee is disabled for work? ☐Yes ☐No ✳ |

**35. Does your knowledge of the facts about this injury agree with statements of the employee and/or witnesses?** ☐Yes ☐No (If "No," explain)

✳

| 36. If the employing agency controverts continuation of pay, state the reason in detail. ✳ | 37. Pay rate when employee stopped work $107,934 Per per annum |
|---|---|

Signature of Supervisor and Filing Instructions

**38.** A supervisor who knowingly certifies to any false statement, misrepresentation, concealment of fact, etc., in respect of this claim may also be subject to appropriate felony criminal prosecution.

I certify that the information given above and that furnished by the employee on the reverse of this form is true to the best of my knowledge with the following exception:

Name of supervisor (Type or print)  Belinda J. Finn

Signature of supervisor  Belinda J. Finn    Date  11/29/2004

Supervisor's Title  Deputy Assistant Inspector General    Office phone  202-254-4178

**39. Filing instructions**
☐ No lost time and no medical expense: Place this form in employee's medical folder (SF-66-D)
☒ No lost time, medical expense incurred or expected: forward this form to OWCP
☒ Lost time covered by leave, LWOP, or COP: forward this form to OWCP
☐ First Aid Injury

Form CA-1,
Rev. Apr. 1999

✳ See attached "Supplemental Statement to Form CA-1"

CONFIDENTIAL

Supplemental Statement to Form CA-1

28. I have no personal knowledge of the incident reported by Mr. Daniels and cannot determine whether he was performing work duties at the time. I was unaware of any proceedings that required him to speak with any EEO counselors.

29. I have no personal knowledge of the incident reported by Mr. Daniels and cannot determine whether any injury was caused by willful misconduct, intoxication, or intent to injure self or another.

30. I have no personal knowledge of the incident reported by Mr. Daniels and cannot determine whether any injury was caused by a third party.

34. Physician's note states that employee may not be able to return to work immediately, but does not state that employee is disabled for work.

35. I have no personal knowledge of the incident reported by Mr. Daniels.

36. The employing agency controverts continuation of pay because we have no knowledge of traumatic injury or whether the incident described by Mr. Daniels occurred during the conduct of his duties.

Author: Belinda J. Finn

November 29, 2004

## Instructions for Completing Form CA-1

Complete all items on your section of the form. If additional space is required to explain or clarify any point, attach a supplemental statement to the form. Some of the items on the form which may require further clarification are explained below.

### Employee (Or person acting on the employee's behalf)

**13) Cause of Injury**

Describe in detail how and why the injury occurred. Give appropriate details (e.g.: if you fell, how far did you fall and in what position did you land?)

**14) Nature of Injury**

Give a complete description of the condition(s) resulting from your injury. Specify the right or left side if applicable (e.g., fractured left leg; cut on right index finger).

**15) Election of COP/Leave**

If you are disabled for work as a result of this injury and filed CA-1 within thirty days of the injury, you may be entitled to receive continuation of pay (COP) from your employing agency. COP is paid for up to 45 calendar days of disability, and is not charged against sick or annual leave. If you elect sick or annual leave you may not claim compensation to repurchase leave used during the 45 days of COP entitlement.

### Supervisor

At the time the form is received, complete the receipt of notice of injury and give it to the employee. In addition to completing items 17 through 39, the supervisor is responsible for obtaining the witness statement in Item 16 and for filling in the proper codes in shaded boxes a, b, and c on the front of the form. If medical expense or lost time is incurred or expected, the completed form should be sent to OWCP within 10 working days after it is received.

The supervisor should also submit any other information or evidence pertinent to the merits of this claim.

If the employing agency controverts COP, the employee should be notified and the reason for controversion explained to him or her.

**17) Agency name and address of reporting office**

The name and address of the office to which correspondence from OWCP should be sent (if applicable, the address of the personnel or compensation office).

**18) Duty station street address and zip code**

The address and zip code of the establishment where the employee actually works.

**19) Employers Retirement Coverage.**

Indicate which retirement system the employee is covered under.

**30) Was injury caused by third party?**

A third party is an individual or organization (other than the injured employee or the Federal government) who is liable for the injury. For instance, the driver of a vehicle causing an accident in which an employee is injured, the owner of a building where unsafe conditions cause an employee to fall, and a manufacturer whose defective product causes an employee's injury, could all be considered third parties to the injury.

**32) Name and address of physician first providing medical care**

The name and address of the physician who first provided medical care for this injury. If initial care was given by a nurse or other health professional (not a physician) in the employing agency's health unit or clinic, indicate this on a separate sheet of paper.

**33) First date medical care received**

The date of the first visit to the physician listed in item 31.

**36) If the employing agency controverts continuation of pay, state the reason in detail.**

COP may be controverted (disputed) for any reason; however, the employing agency may refuse to pay COP only if the controversion is based upon one of the nine reasons given below:

a) The disability was not caused by a traumatic injury.

b) The employee is a volunteer working without pay or for nominal pay, or a member of the office staff of a former President;

c) The employee is not a citizen or a resident of the United States or Canada;

d) The injury occurred off the employing agency's premises and the employee was not involved in official "off premise" duties;

e) The injury was proximately caused by the employee's willful misconduct, intent to bring about injury or death to self or another person, or intoxication;

f) The injury was not reported on Form CA-1 within 30 days following the injury;

g) Work stoppage first occurred 45 days or more following the injury;

h) The employee initially reported the injury after his or her employment was terminated; or

i) The employee is enrolled in the Civil Air Patrol, Peace Corps, Youth Conservation Corps, Work Study Programs, or other similar groups.

### Employing Agency - Required Codes

**Box a (Occupation Code), Box b (Type Code), Box c (Source Code), OSHA Site Code**

The Occupational Safety and Health Administration (OSHA) requires all employing agencies to complete these items when reporting an injury. The proper codes may be found in OSHA Booklet 2014, "Recordkeeping and Reporting Guidelines.

**OWCP Agency Code**

This is a four-digit (or four digit plus two letter) code used by OWCP to identify the employing agency. The proper code may be obtained from your personnel or compensation office, or by contacting OWCP.

Form CA-1
Rev. Apr. 1999

## Benefits for Employees under the Federal Employees' Compensation act (FECA)

The FECA, which is administered by the Office of Workers' Compensation Programs (OWCP), provides the following benefits for job-related traumatic injuries:

(1) Continuation of pay for disability resulting from traumatic, job-related injury, not to exceed 45 calendar days. (To be eligible for continuation of pay, the employee, or someone acting on his/her behalf, must file Form CA-1 within 30 days following the injury and provide medical evidence in support of disability within 10 days of submission of the CA-1. Where the employing agency continue's the employee's pay, the pay must not be interrupted unless one of the provision's outlined in 20 CFR 10.222 apply.

(2) Payment of compensation for wage loss after the expiration of COP. If disability extends beyond such point, or if COP is not payable. If disability continues after COP expires, Form CA-7, with supporting medical evidence, must be filed with OWCP. To avoid interruption of income, the form should be filed on the 40th day of the COP period.

(3) Payment of compensation for permanent impairment of certain organs, members, or functions of the body (such as loss or loss of use of an arm or kidney, loss of vision, etc.), or for serious defringement of the head, face, or neck.

(4) Vocational rehabilitation and related services where directed by OWCP.

(5) All necessary medical care from qualified medical providers. The injured employee may choose the physician who provides initial medical care. Generally, 25 miles from the place of injury, place of employment, or employee's home is a reasonable distance to travel for medical care.

An employee may use sick or annual leave rather than LWOP while disabled. The employee may repurchase leave used for approved periods. Form CA-7b, available from the personnel office, should be studied BEFORE a decision is made to use leave.

For additional information, review the regulations governing the administration of the FECA (Code of Federal Regulations, Chapter 20, Part 10) or pamphlet CA-810.

## Privacy Act

In accordance with the Privacy Act of 1974, as amended (5 U.S.C. 552a), you are hereby notified that: (1) The Federal Employees' Compensation Act, as amended and extended (5 U.S.C. 8101, et seq.) (FECA) is administered by the Office of Workers' Compensation Programs of the U.S. Department of Labor, which receives and maintains personal information on claimants and their immediate families. (2) Information which the Office has will be used to determine eligibility for and the amount of benefits payable under the FECA, and may be verified through computer matches or other appropriate means. (3) Information may be given to the Federal agency which employed the claimant at the time of injury in order to verify statements made, answer questions concerning the status of the claim, verify billing, and to consider issues relating to retention, rehire, or other relevant matters. (4) Information may also be given to other Federal agencies, other government entities, and to private-sector agencies and/or employers as part of rehabilitative and other return-to-work programs and services. (5) Information may be disclosed to physicians and other health care providers for use in providing treatment or medical/vocational rehabilitation, making evaluations for the Office, and for other purposes related to the medical management of the claim. (6) Information may be given to Federal, state and local agencies for law enforcement purposes, to obtain information relevant to a decision under the FECA, to determine whether benefits are being paid properly, including whether prohibited dual payments are being made, and, where appropriate, to pursue salary/administrative offset and debt collection actions required or permitted by the FECA and/or the Debt Collection Act. (7) Disclosure of the claimant's social security number (SSN) or tax identifying number (TIN) on this form is mandatory. The SSN and/or TIN, and other information maintained by the Office, may be used for identification, to support debt collection efforts carried on by the Federal government, and for other purposes required or authorized by law. (8) Failure to disclose all requested information may delay the processing of the claim or the payment of benefits, or may result in an unfavorable decision or reduced level of benefits.

Note: This notice applies to all forms requesting information that you might receive from the Office in connection with the processing and adjudication of the claim you filed under the FECA.

## Receipt of Notice of Injury

This acknowledges receipt of Notice of Injury sustained by (Name of injured employee)

Demetri J. Daniels

Which occurred on (Mo., Day, Yr.)

unKnown

At (Location)

UnKnown

Signature of Official Superior  _Belinda J. Finn_   Title _Deputy AIGA_   Date (Mo., Day, Yr.) 11/29/04

*U.S. GPO: 1999-54-845/12704

Form CA-1
Rev. Apr. 1999

Monday, November 15, 2004

| | |
|---|---|
| MEMORANDUM FOR: | Pauline Campbell, Director<br>DHS/FEMA Office of Equal Rights (OER) |
| THROUGH: | Gladys Kessee, EEO Counselor<br>DHS/FEMA |
| FROM: | Demetri J. Daniels, Supervisory Auditor<br>DHS/OIG |
| SUBJECT: | Requested Extension of EEO Counseling |

This letter describes an event that has affected my ability to conclude EEO counseling in a timely manner. I will need to postpone my further involvement until I am medically able to resume or until I employ a representative to act in my behalf.

During EEO counseling, I read the following statement by Mr. James Klimaski, my legal representative. In response to a written question, he reported—

*"There was an implication that Mr. and Mrs. Daniels were somehow conspiring to deceive the Agency concerning the receipt of his security papers."* Mr. Klimaski stated that he *"believed this implication came from the Agency's counsel."*

This statement reminded me of the May 28, 2003 e-mail from Mr. Richard Reback, counsel to the Inspector General, which initially triggered my preexisting PTSD. As such, I obtained emergency medical treatment on November 14, 2004 for symptoms similar to those documented in the May 28, 2003 on-the-job injury.

This most-recent allegation by DHS counsel adversely affected my memory and ability to concentrate. More specifically, it has (1) interrupted my work-at-home accommodation and (2) delayed my progress to update and complete my security clearance by November 18, 2004.

Given this, I have sent a copy of this letter to Belinda Finn and Ann Tursic, since this recent injury will affect my performance in activities 1 and 2, also. I will resume both when medically able. During my recovery, please honor the July 2003 OIG agreed-upon communication plan by sending all personal correspondence, written and oral, to Mr. James Klimaski.

Happy Thanksgiving; I appreciate your patience and understanding.

*Page 1 of 2*

cc:     Belinda Finn, Deputy Assistant Inspector General for Audit, Office of
        Inspector General (immediate supervisor)
        Ann Tursic, Chief Personnel Security Division, Office of Security

Attachments:

Medical treatment, INOVA Emergency Care Center, November 14, 2004
Request for Leave or Approved Absence (to immediate supervisor only)

CONFIDENTIAL

11/15/2004 MON 13:55   [JOB NO. 5669]   @003

**INOVA EMERGENCY CARE CENTER**

| 11901 Baron Cameron Avenue | 4315 Chain Bridge Road | 6355 Walker Lane |
|---|---|---|
| Reston, Virginia 20190 | Fairfax, Virginia 22030 | Alexandria, Virginia 22310 |
| 703-471-0175 | 703-591-9328 | 703-797-6800 |

Date: 11/14/04

Patient: Demetri Daniels

To Whom It May Concern:

The above patient was seen in this Emergency Department on
11/14/04 for an (accident) (illness.)

He/she may not be able to return to work immediately. He/she has been instructed to seek any follow up care necessary from his/her own private physician who may advise him/her regarding return to work.

☒ May return to work 11/18/04

Sincerely,

Emergency Department Physician

**CONFIDENTIAL**

CAT #90026 / RS-01 • PADS OF 100

Exhibit 30, Second Workers' Compensation Claim

Federal Employee's Notice of
Traumatic Injury and Claim for 00505-RBW    Document 12    Filed 09/26/2006    Page 23 of 47
Continuation of Pay/Compensation

U.S. Department of Labor
Employment Standards Administration
Office of Workers' Compensation Programs

**Employee:** Please complete all boxes 1 - 15 below. Do not complete shaded areas.
**Witness:** Complete bottom section 16.
**Employing Agency** (Supervisor or Compensation Specialist): Complete shaded boxes a, b, and c.

## Employee Data

**1. Name of employee (Last, First, Middle)**
DANIELS, JAMES

**2. Social Security Number**
252 84 3063

**3. Date of birth Mo. Day Yr.**
04 28 50

**4. Sex** ☒ Male ☐ Female

**5. Home telephone**
(703) 922-5388

**6. Grade as of date of injury** Level 14 Step 9

**7. Employee's home mailing address (Include city, state, and ZIP code)**
5208 MARTINIQUE LANE
Alexandria, Virginia 22315

**6. Dependents**
☒ Wife, Husband
☐ Children under 18 year!
☐ Other

## Description of Injury

**9. Place where injury occurred (e.g. 2nd floor, Main Post Office Bldg., 12th & Pine)**
5208 MARTINIQUE Lane, Alexandria 22315 (Approved For Work AT Home)

**10. Date injury occurred Mo. Day Yr.**
06 28 04

**Time** 11:30 ☐ a.m.

**11. Date of this notice Mo. Day Yr.**
07 27 04

**12. Employee's occupation**
Auditor

**13. Cause of injury (Describe what happened and why)**
New Injury (Non-recurrent) Discovery of Personal Government
Security Papers AT Kinkos in Waldorf, Maryland.

**a. Occupation code**

**b. Type code**

**c. Source code**

**14. Nature of Injury (identify both the injury and the part of body, e.g., fracture of left leg)**
New Injury. See "Brief Psychological Evaluation"
on Attached pages 3 an 4 of 8.

**OWCP Use - NO! Code**

## Employee Signature

**15.** I certify, under penalty of **law**, that the injury described above was sustained in performance of duty as **an** employee of the United States Government and that it was not caused by my willful misconduct, intent to injure myself or another person, nor by my intoxication. I hereby claim medical treatment, if needed, and the following, as checked below, while disabled for work:

☒ a. Continuation of regular pay (COP) not to exceed 45 days and compensation for wage loss if disability for work continues beyond 45 days. If my claim is denied, I understand that the continuation of my regular pay shall be charged to sick or annual leave, or be deemed an overpayment within the meaning of 5 USC 5584.

☐ b. Sick and/or Annual Leave

I hereby authorize any physician or hospital (or any other person, institution, corporation, or government agency) to furnish any desired information to the U.S. Department of Labor, Office of Workers' Compensation Programs (or to its official representative). This authorization also permits any official representative of the Office to examine and to copy any records concerning me.

**Signature of employee or person acting on his/her behalf** James Daniels **Date** 7-27-04

Any person who knowingly makes any false statement, misrepresentation, concealment of fact or any other act of fraud to obtain compensation as provided by the FECA or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment or both.

**Have your supervisor complete the receipt attached to this form and return it to you for your records.**

## Witness Statement

**16. Statement of witness (Describe what you saw, heard, or know about this injury)**

See Statement of witnesses compiled By Kinko's Security Officer on Page 6 of 8. Police report requested 7-15-04.

See Page 56 Kinko's Security Officer Mr. Todd Addis

See Attached page 6 of 8

**Name of witness**

**Signature of witness**

**Date signed**

**Address**
3230 Crain Hwy (Kinkos)

**City**
Waldorf

**State**
Maryland

**ZIP Code**
20603

Form CA-I
Rev. Jan. 1997

CONFIDENTIAL

1 of 8 a

**Official Supervisor's Report: Please complete information requested below:**

**Supervisor's Report**

**17.** Agency name and address of reporting office (Include city, state, and ZIP code) | OWCP Agency Code

OSHA Site Code

**18.** Employee's duty station (Street address and ZIP code) | ZIP Code

**19.** Employee's retirement coverage

☐ CSRS ☐ FERS ☐ Other, ( identify)

**20.** Regular work hours    From:  :  ☐ a.m.  ☐ p.m.   To: :  ☐ a.m.  ☐ p.m.

**21.** Regular work schedule ☐ Sun. ☐ Mon. ☐ Tues. ☐ Wed. ☐ Thurs. ☐ Fri. ☐ Sat.

**22.** Date of Injury    MO. Day Yr.  |_____|

**23.** Date notice received    M o. Day Yr.  _____

**24.** Date stopped work    MO. Day Yr.  |___| Time: :  ☐ a.m. ☐ p.m.

**25.** Date pay stopped    M o. Day Yr.  |___|

**26.** Date 45 day period began    Mo. Day Yr.

**27.** Date returned to work    Mo. Day Yr.  |___| Time: :  ☐ a.m. ☐ p.m.

**28.** Was employee injured in performance of duty? ☐ Yes ☐ No (If "No," explain)

**29.** Was injury caused by employee's willful misconduct, intoxication, or intent to injure self or another? ☐ Yes (If "Yes," explain) ☐ NO

**30.** Was injury caused by third party?
☐ Yes ☐ No (If "No." go to item 31.)

**31.** Name and address of third party (Include city, state, and ZIP code)

**32.** Name and address of physician first providing medical care (Include city, state, ZIP code)

**33.** First date medical care received    M o. Day Yr.  |___|

**34.** Do medical reports show employee is disabled for work? ☐ Yes ☐ No

**35.** Does your knowledge of the facts about this injury agree with statements of the employee and/or witness? ☐ Yes ☐ No (If "No," explain)

**36.** If the employing agency controverts continuation of pay, state the reason in detail.

**37.** Pay rate when employee stopped work    $ ____ Per ____

**Signature of Supervisor and filing instructions**

**38.** A supervisor who knowingly certifies to any false statement, misrepresentation, concealment of fact, etc., in respect of this claim may also be subject to appropriate felony criminal prosecution.

I certify that the information given above and that furnished by the employee on the reverse of this form is true to the best of my knowledge with the following exception:

Name of supervisor (Type or print)

Signature of supervisor | Date

Supervisor's Title | Office phone

**38.** Filing instructions
☐ No lost time and no medical expense: Place this form in employee's medical folder (SF-66-D)
☐ No lost time, medical expense incurred or expected: forward this form to OWCP
☐ Lost time covered by leave, LWOP, or COP: forward this form to OWCP
☐ First Aid Injury

Form CA-1
Rev. Jan. 1997

CONFIDENTIAL

The FECA, which is administered by the Office of Workers' Compensation Programs (OWCP), provides the following benefits for job-related traumatic injuries:

(1) Continuation of pay for disability resulting from traumatic, job-related injury, not to exceed 45 calendar days. (To be eligible for continuation of pay, the employee, or someone acting on his/her behalf, must file Form CA-1 within 30 days following this injury; however, to avoid possible interruption of pay, the form should be filed within 2 working days. If the form is not filed within 30 days, compensation may be substituted for continuation of pay.)

(2) Payment of compensation for wage loss after the 45 days, if disability extends beyond such period.

(3) Payment of compensation for permanent impairment of certain organs, members, or functions of the body (such as loss or loss of use of an arm or kidney, loss of vision, etc.), or for serious disfigurement of the head, face, or neck.

(4) Vocational rehabilitation and related services where necessary.

(5) Full medical care from either Federal medical officers and hospitals, or private hospitals or physicians, of the employee's choice. Generally, 25 miles from the place of injury, place of employment, or employee's home is a reasonable distance to travel for medical care; however, other pertinent facts must also be considered in making selection of physicians or medical facilities.

At the time an employee stops work following a traumatic, job-related injury, he or she may request continuation of pay or use sick or annual leave credited to his or her record. Where the employing agency continues the employee's pay, the pay must not be interrupted until:

(1) The employing agency receives medical information from the attending physician to the effect that disability has terminated;

(2) The OWCP advises that pay should be terminated; or

(3) The expiration of 45 calendar days following initial work stoppage.

If disability exceeds, or it is anticipated that it will exceed, 45 days, and the employee wishes to claim compensation, Form CA-7, with supporting medical evidence, must be filed with OWCP. To avoid interruption of income, the form should be filed on the 40th day of the COP period. Form CA-3 shall be submitted to OWCP when the employee returns to work, disability ceases, or the 45 days period expires.

An employee may use sick or annual leave rather than LWOP while disabled. The empoyee may repurchase leave used for approved periods. Form CA-7b. available from the personnel office, should be studied BEFORE a decision is made to use leave.

For additional information, review the regulations governing the administration of the FECA (Code of Federal Regulations, Title 20, Chapter 1) or Chapter 810 of the Office of Personnel Management's Federal Personnel Manual.

**Privacy Act**

In accordance with the Privacy Act of 1974, as amended (5 U.S.C. 552a), you are hereby notified that: (1) The Federal Employees' Compensation Act, as amended and extended (5 U.S.C. 8101, et seq.) (FECA) is administered by the Office of Workers' Compensation Programs of the U.S. Department of Labor, which receives and maintains personal information on claimants and their immediate families. (2) Information which the Office has will be used to determine eligibility for and the amount of benefits payable under the FECA, and may be verified through computer matches or other appropriate means. (3) Information may be given to the Federal agency which employed the claimant at the time of injury in order to verify statements made, answer questions concerning the status of the claim, verify billing, and to consider issues relating to retention, rehire, or other relevant matters.. (4) Information may also be given to other Federal agencies, other government entities, and to private-sector agencies and/or employers as part of rehabilitative and other return-to-work programs and services. (5) Information may be disclosed to physicians and other health care providers for use in providing treatment or medical/vocational rehabilitation, making evaluations for the Office, and for other purposes related to the medical management of the claim. (8) Information may be given to Federal, state and local agencies for law enforcement purposes, to obtain information relevant to a decision under the FECA, to determine whether benefits are being paid properly, including whether prohibited dual payments are being made, and, where appropriate, to pursue salary/administrative offset and direct collection actions required or permitted by the FECA and/or the Debt Collection Act. (7) Disclosure of the claimant's social security number (SSN) or tax identifying number (TIN) on this form is mandatory. The SSN and/or TIN), and other information maintained by the Office, may be used for identification, to support debt collection efforts carried on by the Federal government, and for other purposes required or authorized by law. (8) Failure to disclose all requested information may delay the processing of the claim or the payment of benefits, or may result in an unfavorable decision or reduced level of benefits.

**Note:** This notice applies to all forms requesting information that you might receive from the Office in connection with the processing and adjudication of the claim you filed under the FECA.

**Receipt of Notice of Injury**

This acknowledges receipt of Notice of Injury sustained by (Name of injured employee)

James Daniels

Which occurred on (Mo., Day, Yr.)    6/28/04

At (Location)

5208 Martinque Lane, Alexandria VA 22315

Signature of Official Superior    Matta Bordolal    Title Supervisor Auditor    Date (Mo., Day, Yr.) 7/27/04

☆U.S. GPO:1997-418-422/62    Form CA-1 Rev. Jan. 1997

3 of

CERTIFICATE OF PROFESSIONAL CARE

**ANTOINETTE M. LEWIS, M.D.**
2121 K Street N.W., Suite 800
Washington, DC 20037

Telephone: (202) 261-6584

Date _07/30/2004_

This is to certify that

_James Daniels_

is under my care for the following:

_Post Traumatic Stress_
_Disorder — Acute Exac_

_Excuse from work_
_Altogether 6/29/04 thru_
_7/23/04_

**CONFIDENTIAL** Dr. _[signature]_

#13-01  Medical Arts Press  1-800-328-2179

5-18
6 01 9

Monday, July 26, 2004

# FedEx Kinko's  Employee Statements

### Graham Bennett -

A customer came up to the front at approximately 4 pm and told me that she had found a black plastic bag in the express area and that it had some personal looking papers in it. She asked me what my name was and she also asked the name of the assistant manager. She also suggested that if I could, call the owner of the papers. About 10 minutes later I called the phone number on the first page of the papers and it was disconnected. I wrote down what time I called and the date on a sticky note and pasted it on the front of the bag. I then put the bag in lost and found. I did not notice anyone working with or leaving the documents behind.

### Tim Gerald -

I received a phone call from a customer between 11pm and 2am stating that someone from FedEx Kinko's had called him to let him know that someone had discovered his papers in the branch and turned them in to an employee. I placed the caller on hold and checked the lost and found area where I discovered said documents. I then returned to the caller and informed him that the documents were indeed in the lost and found area at which point he asked me if I had known how they got there. I informed him that I did not know and no one from the previous shift had mentioned them to me. He ranted for a few minutes about why his papers were at the branch or how they had gotten there. He then stated that he would call later in the day to speak with a manager..

### Damita Freeland -

The customer arrived at the branch between 11:30 am -- 12:30 pm came to the counter and requested the documents that had been turned in I gave the documents to him and he refused to touch them he then asked me how they had arrived at branch. I responded the items were turned in the previous day by a concerned  customer. He became agitated and demanded to see my manager.

### Deborah Ford-Davis -

I came to the counter and asked how could I be of assistance the customer was upset and demanded to know how his documents had arrived at the branch. He was again informed that they were turned in by a customer. He then asked that the documents be sent by FedEx free of charge, I apologized and stated that the documents could not be sent for free.  He then wanted the police to be called in I directed him to the phone and he then placed a call to the Charles County Police Dept. The police responded about 10 minutes later, at that point I turned the matter over to the police.  One of the officers asked me for a brief statement I asked the officer if I could be of any further assistance, he said I was finished I then left the branch and went to drop off store deposit.

### Damita Freeland -

The customer remained in the branch for a short while working in the express area and then sent a package by FedEx , after sending the package the customer left the branch.





Thursday, July 15, 2004

James Daniels
5208 Martinique Lane
Alexandria, Virginia 22315

Office of the Sheriff
Charles County, MD
P.O. Box 189
La Plata, M 20646-0189

Dear Sir:

Please send, to my above home address, the incident report in connection with the following matter.

1. Type of incident: Lost federal government security documents belonging to James Daniels, found at the Kinkos Copy Store in Waldorf, Maryland.  County police officers Bryant (ID Number 155) and Rager (ID Number 404) investigated this matter.

2. Incident Number: S041800169.

3. Incident Date: June, 28, 2004.

Enclosed is the required $5.00 (five dollar) fee, check 0946, made payable to the Charles County Sheriff.  Should you have any questions or need additional information, please call me at 703-922-5388.

As indicated, you will mail this information to my home address in about 7 to 10 working days.

Thank You,

James Daniels

RECEIVED

JUL 1 6 2004

RECORDS MANAGEMENT
C.C.S.O.

P. 1-26-04 | m: 7-27-04- 1221/198

C.A.D.

Event Listing For: 06/18/0063                                07/25/04

Event Number: S041800169

```
Start Dt     Time      Situation/Description                      HR  PR
06/28/04  12:39:51  FND: 26    ADVICE / INFORMATION NON - DOMESTIC   1   3
```

Call Taker: 1359 Pos: DO1     Dispatcher: 1492 Pos: P50.8

```
Location                                    C/A   USE    OPER
3230 CRAIN HWY, KINKOS {10 E2}              03D2         1359
```

Caller Information                (How Received: Telephone)
DANIELS, JIM-Y

Cause/Extent: 10-17 WISHES TO SPEAK WITH OFFICER REF RETRIEVING (N)

                         Notes
SOME DOCUMENTS FROM THE STORE...1359... [06/28/04 13:08:58] Unit A404 Late
Safety [06/28/04 13:19:06] Unit A404 Late Safety [06/28/04 13:19:06] Unit
P155 Late Safety [06/28/04 13:24:47] A404 ADV GVIEN

```
Sent Disp CC   Comp. Dt   Time  Cleared   Susp   Unsusp  Under Ctl
12:40:58  AG   06/28/04   13:24
```

```
Unit      Dispatch  Enroute   Arrived   Okay     Area Chk   Avail     Cleared  Stat
A404      12:59:49  12:59:49  13:03:58  13:19:31            13:24:51  13:24:51 AP
P155      13:06:26  13:06:26  13:10:41  13:19:31            13:24:51  13:24:51 A
```

Units Dispatched at Alarm Levels
    1    A404 P155

Run Card: 318    Type:

CHARLES COUNTY SHERIFF'S OFFICE
RECORDS MANAGEMENT
DISSEMINATION PROHIBITED
MR 12.15.10.E/28CFR20.33
SG. 10611(e), CJIS.5.22.Na)
DESTROY WHEN NO LONGER NEEDED
James Daniel
1221    DATE 1-26-04

6/25/04 7:19 AM

MEMORANDUM FOR:    Martha Barksdale, Supervisory Auditor
                           Audit Support, DHS-OIG

FROM:                  James Daniels, Auditor

SUBJECT:           ***Second Weekly Progress Report*** — Processing Single Audit Reports
                           Period: June 13 through June 26, 2004

Good Morning, Martha

      Attached is my time-sheet for pay-period 12, which began on June 13 and ends on June 26. It shows 71 total hours worked — 38 and 33 hours for the first and second weeks.

      As shown in the table below, I will have devoted a total of 138 hours — from May 26 through June 26 — conducting single audit research, performing initial report reviews and processing reports.

| Pay Period | Total Hours | Task | Percent of Time |
|---|---|---|---|
| 10 | 4 | SAIS & FAC Research | 100% |
| 11 | 63 | SAIS & FAC Research<br>Initial Report Review<br>Report Processing | 35%<br>65%<br>0% |
| 12 | 71 | SAIS &FAC Research<br>Report Processing | 20%<br>80% |

***Processed Single Audit Reports.***

      During this period, I processed 15 of 18 reports. The 3 unfinished reports are more complex. So, I will need more time to complete (1) Government of Guam, (2) the Commonwealth of Puerto Rico Police, and (3) Department of Defense-Hawaii.

      With the report numbers that you gave me today, you can expect to receive the 15 reports next week. I will send them to you by FedEx, five at a time. I would like your feedback on my performance to see how I am progressing. 1

---

1 Here are the FedEx Tracking Numbers that I will use. In order: 8447 7841 4932, 8447 7841 4943, and 8447 7841 4954.

CONFIDENTIAL

*Summary*

On June 17, Ms. Belinda Finn called my home to tell me about the required security update. After I talked with Ms. Finn, I called Ms. Cheryl Smith at BPD Security. She told me that she would mail me the forms, along with my prior SF 86, to my home address that I gave her. However, when I checked the mailbox yesterday, the security forms were not there.

Thank you for your help in trying to track the forms by talking with Ms. Smith. I suggest that we now FedEx them to my home. As you instructed, once I receive the forms, I will stop processing Single Audit Reports until the security forms are completed and returned. I will let you know once that is done.

Martha, that's all for now. Give the team my regards. This concludes my fourth letter.


Attachments:   (1) Time-sheet for pp.12.
                      (2) Request for Leave, Signed by employee, June 24, 2004.





**Official Supervisor's Report:** Please complete information requested below:

**17.** Agency name and address of reporting office (include city, state, and zip code)    OWCP Agency Code

Department of Homeland Security-Office of Inspector General  1712WV

1120 Vermont Avenue NW, Suite 11200    OSHA Site Code

Washington, DC 2005    ZIP Code

**18.** Employee's duty station (Street address and ZIP code)
5208 Martinque Lane, Alexandria, VA  22315

**19.** Employee's retirement coverage  ☒CSRS ☐FERS ☐Other, (identify)

| 20. Regular work hours | From: 8:00 ☒a.m. ☐p.m. To: 4:30 ☐a.m. ☒p.m. | 21. Regular work schedule ☐Sun. ☒Mon. ☒Tues. ☒Wed. ☒Thurs.☒Fri. ☐Sat. |
|---|---|---|

| 22. Date of Injury 6/28/04 | 23. Date notice received 7/27/04 | 24. Date stopped work * Time: ☐a.m. ☐p.m. |
|---|---|---|

| 25. Date pay stopped * | 26. Date 45 day period began * | 27. Date returned to work * Time: ☐a.m. ☐p.m. |
|---|---|---|

**28.** Was employee injured in performance of duty? ☐Yes ☒No (If "No," explain)

**29.** Was injury caused by employee's willful misconduct, intoxication, or intent to injure self or another? ☐Yes (If "Yes," explain) ☒No

**30.** Was injury caused by third party? ☐Yes ☒No (If "No," go to item 32.)
**31.** Name and address of third party (Include city, state, and ZIP code)
N/A

**32.** Name and address of physician first providing medical care (Include city, state, ZIP code)
Inova Alexandria Hospital
4320 Seminary Road
Alexandria, VA  22304

**33.** First date medical care received 7/18/04

**34.** Do medical reports show employee is disabled for work? ☐Yes ☒No

**35.** Does your knowledge of the facts about this injury agree with statements of the employee and/or witnesses? ☐Yes ☒No (If "No," explain)

**36.** If the employing agency controverts continuation of pay, state the reason in detail.    Yes *

**37.** Pay rate when employee stopped work $107,934 Per Annually

**Signature of Supervisor and Filing Instructions**

**38.** A supervisor who knowingly certifies to any false statement, misrepresentation, concealment of fact, etc., in respect of this claim may also be subject to appropriate felony criminal prosecution.

I certify that the information given above and that furnished by the employee on the reverse of this form is true to the best of my knowledge with the following exception: * Supplemental Statement

Name of supervisor (Type or print)  Martha Barksdale

Signature of supervisor  *Martha Barksdale*    Date 8/4/04

Supervisor's Title  Supervisory Auditor    Office phone 202-254-4142

**39.** Filing instructions
☐ No lost time and no medical expense: Place this form in employee's medical folder (SF-66-D)
☐ No lost time, medical expense incurred or expected: forward this form to OWCP
☒ Lost time covered by leave, LWOP, or COP: forward this form to OWCP
☐ First Aid Injury

Form CA-1,    Rev. Apr. 1999

**Supplemental Statement to Form CA-1 for James Daniels**

**Numbers 24, 25, and 26.**

I do not know when Mr. Daniels stopped work. On July 6, 2004, Mr. Daniels inquired about his leave balance and told me he would be on leave from July 1 through July 9. He never stated it was the result of an injury and that he needed to seek medical attention. The Agency became aware of Mr. James Daniels' on the job injury on July 8, 2004.

**Number 27.**

On August 2, 2004, Mr. Daniels submitted a copy of Form CA-20, Attending Physician's Report. The report indicates that Mr. Daniels can resume part time light work on August 4, 2004.

**Number 28.**

Whenever I would ask Mr. Daniels how he was injured, he would say everything would be explained in the doctor's report. Mr. Daniels has never explained to me what happened that day. He did not contact the Agency before making the trip to Waldorf, MD. That trip was not authorized or necessary. Had the Agency been informed that DHS documents were at the location, the Agency would have arranged to retrieve them.

**Numbers 32 and 33.**

On Tuesday, July 27, as requested I met Mr. Daniels across the street from the office and he gave me his Form CA – 1. Mr. Daniels told me that the emergency room visit was his first treatment.

**Number 34.**

Mr. Daniels's medical reports do not specifically state that he is disabled for work. Mr. Daniels has submitted three medical documents stating: 1) "excuse until July 21" submitted July 19, dated July18th; 2) excuse from work altogether 6/29 thru 7/23, submitted July 21, dated July 20; and 3) "Mr. Daniels' return to work plan is not attainable in the foreseeable future. This only means he cannot return to work onsite", submitted July 27th, date of evaluation July 14, date of report 7/23/04. He submitted a fourth report, Form CA-20 stating that he could resume part-time work on August 4, 2004.

**Number 35.**

I find the witness statements (July 26, 2004) to be very vague and leave too many questions unanswered. In addition, except for going to Waldorf, Md. to retrieve his package containing his background paper work, Mr. Daniels has never explained to me what happened at Kinko's.

**Number 36.**

The Agency first became aware of Mr. James Daniels' on the job injury on July 8, 2004 when he submitted his timesheet for pay period 13 (June 27 – July 10, 2004). Mr. Daniels included a note/remark on his timesheet and request for leave or approved absence, "on the job injury while working at home on 6/29/04". Mr. Daniels said it happened when he went to Waldorf, MD (6/28) to retrieve his security background paperwork. He would not state the nature of his injury. He was asked if he went to a doctor. He said no, he had an appointment the following week with a special doctor. He informed me that he planned to file Form CA–1 and submit medical documentation.

We have no detailed description from Mr. Daniels of the incident. The statements from the Kinko's employees are unsigned and undated, do not state when the incident occurred, do not identify Mr. Daniels by name, and do not in any way evidence that the Agency was responsible for the documents being at the Kinko's.


_Martha Barksdale_
Supervisory Auditor

_8/4/04_
Date

2

CONFIDENTIAL

## Request for Leave or Approved Absence

| 1. Name (Last, first middle) | 2. Employee or Social Security Number |
|---|---|
| Daniels, James | 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 |

3. Organization

HHS-OIG

| 4. | | | | | | | 5. Family and Medical Leave |
|---|---|---|---|---|---|---|---|
| **Type of Leave/Absence** | | | | | | | |

| Check appropriate box(es) and enter date and time below) | Date | | Time | | Total Hours | If annual leave, sick leave, or leave without pay will be used under the Family and Medical Leave Act of 1993 (FMLA), please provide the following information: |
|---|---|---|---|---|---|---|
| | From | To | From | To | | |
| ☐ Accrued annual leave | | | | | | |
| ☐ Restored annual leave | | | | | | I hereby invoke my entitlement to family and medical leave for: |
| ☐ Advance annual leave | | | | | | |
| ☐ Accrued sick leave | | | | | | ☐ Birth/Adoption/Foster care |
| ☐ Advance sick leave | | | | | | |
| | | | | | | ☐ Serious health condition of spouse, son, daughter, or parent |
| Purpose: ☑ Illness/injury/incapacitation of requesting employee | | | | | | ☐ Serious health condition of self |
| ☐ Medical/dental/optical examination of requesting employee | | | | | | |
| ☐ Care of family member, including medical/dental/optical examination of family member, or bereavement | | | | | | |
| ☐ Care of family member with a serious health condition | | | | | | Contact your supervisor and/or your personnel office to obtain additional information about your entitlements and responsibilities under the FMLA. Medical certification of a serious health condition may be required by your agency. |
| ☐ Other | | | | | | |
| ☐ Compensatory time off | | | | | | |
| ☐ Other paid absence (specify in remarks) | | | | | | |
| ☑ Leave without pay | 7-28 | 8-3 | 8:00 | 4:30 | 32 | |

6. Remarks

OWCP CA-1 Hand delivered to Supv on 7-27-04. COP requested since 6/29 on the job injury. Medical Leave statement forthcoming

7. Certification: I certify that the leave/absence requested above is for the purpose(s) indicated. I understand that I must comply with my employing agency's procedures for requesting leave/approved absence (and provide additional documentation, including medical certification, if required) and that falsification of information on this form may be grounds for disciplinary action, including removal.

| 7a. Employee signature | 7b. Date signed |
|---|---|
| James Daniel | 7-27-04 |

| 8a. Official action on request | ☐ Approved    ☐ Disapproved | (If disapproved, give reason. If annual leave, initiate action to reschedule.) |
|---|---|---|

8b. Reason for disapproval

| 8c. Signature | 8d. Date signed |
|---|---|
| | |

**Privacy Act Statement**

Section 6311 of title 5, United States Code, authorizes collection of this information. The primary use of this information is by management and your payroll office to approve and record your use of leave. Additional disclosures of the information may be: To the Department of Labor when processing a claim for compensation regarding a job connected injury or illness; to a State unemployment compensation office regarding a claim; to Federal Life Insurance or Health Benefits carriers regarding a claim; to a Federal, State, or local law enforcement agency when your agency becomes aware of a violation or possible violation of civil or criminal law; to a Federal agency when conducting an investigation for employment or security reasons; to the Office of Personnel Management or the General Accounting Office when the information is required for evaluation of leave administration; or the General Services Administration in connection with its responsibilities for records management.

Public Law 104-134 (April 26, 1996) requires that any person doing business with the Federal Government furnish a social security number or tax identification number. This is an amendment to title 31, Section 7701. Furnishing the social security number, as well as other data, is voluntary, but failure to do so may delay or prevent action on the application. If your agency uses the information furnished on this form for purposes other than those indicated above, it may provide you with an additional statement reflecting those purposes.

Office of Personnel Management
5 CFR 630

Local Reproduction Authorized

OPM Form 71
June 2001
Formerly Standard Form (SF) 71

Exhibit 31, Denial Letter of May 10, 2005

U.S. DEPARTMENT OF LABOR

EMPLOYMENT STANDARDS ADMINISTRATION
OFFICE OF WORKERS' COMP PROGRAMS
PO BOX 8300 DISTRICT 25 WAS
LONDON, KY 40742
Phone: (202) 513-6800

May 10, 2005

Date of Injury: 02/22/2005
Employee: DEMETRI J. DANIELS



DEMETRI J DANIELS
P O BOX 30785
ALEXANDRIA, VA 22310

Dear Mr. DANIELS:

Your claim for compensation is denied as the evidence is not sufficient to establish that you sustained an injury as defined by the Federal Employees' Compensation Act (FECA).

On February 24, 2005 you filed an OWCP form CA-1, Notice of Traumatic Injury, for date of injury February 22, 2005. According to your CA-1 you sustained a Aggravation of your pre-existing Post Traumatic Stress Disorder condition as the result the sending of a personal and confidential letter.

The initial evidence received in support of your claim consists of the following:

-Your CA-1 and supplemental statement(s) dated February 24, 2005;
-Supervisor statement supplemental to CA-1;
-Disability slips, from Dr. Antoinette M. Lewis, M.D., dated February 22, 2005 and March 14, 2005 respectively;
-Your November 15, 2004 memo to Pauline Campbell, Director DHS/FEMA Office of Equal Rights;

The initial evidence supported that you filed a timely claim for compensation as a Federal employee for an injury as referenced above. In order for further consideration to be given under the FECA, the evidence must demonstrate that 1) a specific event, incident or exposure occurred at the time and place, and in the manner alleged, and 2) a diagnosed medical condition is connected to the accepted trauma or exposure.

The evidence submitted is insufficient to establish that the event(s) occurred as alleged. Furthermore, there is no medical evidence that provides a diagnosis which could be connected to the claimed event(s). The medical evidence consisted of only the disability slips from Dr. Lewis. Although the physician stated that you were totally disabled from February 22, 2005 through April 4, 2005, the physician did not provide a history of injury that supported that you sustained a work related traumatic injury on February 22, 2005.

You were advised of the deficiencies in your claim in a letter dated April 8, 2005, and provided the opportunity to provide the necessary evidence. The letter stated that you would be afforded a period of 30 days, from the letter date, to submit the requested information. If at the end of the 30 day period we you failed to provide any further evidence your claim would be adjudicated based upon the evidence in file.

In response to our April 8, 2005 we received a medical report from Dr. Antoinette M. Lewis, M.D., dated March 7, 2005. Although Dr. Lewis provided medical evidence that you have a history of Post Traumatic Stress Disorder the report failed to support that you had a traumatic aggravation of the condition on February 22, 2005 as you alleged

The Employees' Compensation Appeals Board has held that:

> To accept fact of injury in a traumatic injury case, the Office must find that the employee has established by the weight of the reliable, probative and substantial evidence the occurrence of an injury while in the performance of duty, in the time, place and manner alleged and that the injury resulted from a specific event or incident. Where a claim for compensation is predicated upon a traumatic injury, the employee must establish the fact of injury by proof of an accident or fortuitous event having relative definiteness with respect to time, place and circumstances and have occurred in the performance of duty, and by proof that such accident or fortuitous event caused an injury as defined in the Act and its regulations. Fact of injury should be supported by medical evidence based upon a history of injury specific to the dates alleged in appellant's claim; where this is lacking, the reports submitted by a claimant are of diminished probative value. Thus the burden of establishing the occurrence of the injury at the time, place and in the manner alleged has not been met. Similarly, medical reports submitted by a claimant are of diminished probative value where they do not contain a rationalized medical opinion relating the diagnosed condition to the alleged employment incident. Daniel J. Overfield, 42 ECAB___ (Docket No. 91-0321, issued June 25, 1991).

> To accept fact of injury in a traumatic injury case, the Office, in addition to finding that the employment incident occurred in the performance of duty as alleged, must also find that the employment incident resulted in an injury. The question of whether an employment incident caused a personal injury generally can be established only by medical evidence. Cheryl L. Veale, 47 ECAB ___ (Docket No. 94-2000, issued May 23, 1996).

Based on these findings, the claim is denied because the requirements have not been met for establishing that you sustained an injury as defined by the FECA. Medical treatment is not authorized and prior authorization, if any, is terminated.

If you disagree with this decision, you should carefully review the attached appeal rights, and pursue whichever avenue is appropriate to your situation.

Exhibit 32, Letter of Apr. 25, 2005

# KLIMASKI & ASSOCIATES, P.C.
*Attorneys at Law*

James R. Klimaski*
Lynn I. Miller*
Edward J. Elder⁺⁺
Kimberly M. Hibsch⁻

*Case Manager*
W. Jon Pinkus

April 25, 2005

1819 L Street NW
7th Floor
Washington, DC 20036-3830
(202) 296-5600
(202) 296-5601 Fax
firm@klimaskilaw.com
www.klimaskilaw.com

<u>BY FAX 202-254-4285 and First Class Mail</u>

Richard L. Skinner
Acting Inspector-General
DHS-OIG
U.S. Department of Homeland Security
1120 Vermont Ave. NW
10th Floor
Washington DC  20005

Re: Demetri J. Daniels, Supervisory Auditor
OPM grant of disability retirement
CSA 4247052

Dear Mr. Skinner:

This letter is to inform you that the Office of Personnel Management (OPM) has approved Demetri J. Daniels' application for disability retirement. The April 13, 2005, approval accompanies this letter. OPM is sending a copy of this letter to the Agency.

We request, on Mr. Daniels' behalf, that his separation date from the Agency be April 30, 2005.

James R. Klimaski is presently out of the country. He will be back in the office on Thursday, April 28, 2005.

If you have any questions please feel free to call me. My extension is 1014.

Sincerely,

Lynn I. Miller

Encl.

*Also admitted in Maryland
⁺⁺Also admitted in New York
⁻Admitted in Virginia

cc: Belinda Finn
    Deputy Assistant Inspector General - Audits

    Doris A. Wojnarowski
    Associate Counsel, Office of the Inspector General

    Demetri J. Daniels

2

# Office of
# Personnel Management    Washington, DC 20415-0001

April 13, 2005

DEMETRI J DANIELS                                      CSA 4247052
5208 MARTINIQUE LANE
ALEXANDRIA VA 22315

Dear Applicant:

Your application for disability retirement has been approved.

According to information received from your agency, you have **not been separated** from
government service. Therefore, we are notifying your agency of the approval and asking
them to separate you. We are also asking them to give us your last day of pay. Payment
of annuity cannot start until after your last day of pay. (If you are in a sick leave pay
status, the last day of pay will be the day your sick leave is exhausted.) This information,
when received, will enable us to begin sending you interim annuity payments. You
should receive the first payment within 14 to 20 calendar days from the date your agency
gives us the last day of pay, and on the first business day of the month thereafter until we
are able to complete the full processing of your claim. You will receive a statement
explaining the interim payments when they begin.

We are also asking your agency to send us your final separation records so we can
establish your final annuity rate. Interim annuity payments will continue until processing
is complete.

**If you are a CSRS-Offset employee** *(If you are not sure whether you are a CSRS-Offset
employee, check with your agency)*, we cannot start your annuity payments until we
receive confirmation that you have applied for Social Security disability benefits. If you
have not already done so, you must now apply for them. Please send us a copy of the
receipt (or notice of allowance or disallowance) which you receive from the Social
Security Administration after you file the application.

If the Social Security Administration awards you monthly benefits, you must also notify
OPM of the amount of the monthly Social Security benefit and effective date of payment
immediately upon becoming eligible (a photocopy of the award notice or a statement
showing the monthly Social Security benefit and effective date when they determined
your eligibility began would be helpful). OPM will be conducting periodic checks
against Social Security records to discover unreported awards. Notification of Social
Security benefits, and the confirmation that you have applied to Social Security should be
sent to:

Office of Personnel Management
Federal Employees Retirement System
Boyers, PA 16017

We will continue processing your claim after we receive the final records from your employing agency and a receipt or other confirmation that you have applied for Social Security benefit.

Sometimes medical conditions that are disabling for a period of time improve. If your medical condition improves to the point you, and your physician, feel your disabling condition is resolved, you may ask us to review current medical evidence to determine if you have recovered. If you are found recovered from your disabling medical condition on your request, annuity payments will cease the month following the one in which the determination is effective.

In addition, if you are under age 60 we may ask you from time to time to submit detailed medical evidence to show your condition continues to be disabling. If the medical evidence shows your condition has improved to the point you can again perform the duties of your previous position, we will find that you are medically recovered. If you are found medically recovered from your disabling medical condition, annuity payments will cease one year from the date of the medical examination on which the action is based.

In either case, you need to understand that if you are found recovered, your former employing agency is **not** obligated to rehire you into your former position, or any position. If your annuity payments are terminated because you are found medically recovered, you will be eligible for a deferred annuity at age 62 or at an earlier date if you meet service criteria for a discontinued service retirement. We will inform you when you are eligible if we find you recovered.

Please be sure to notify us if you are reemployed with the Federal Government, your marital status changes, or there is a change in your address (either the address where we send your payment, or the address where you wish us to send correspondence, notices, etc). You can report these events and get answers to general questions from our Retirement Information Office on 1(888) 767-6738, or you may write to the Office of Personnel Management, Retirement Operations Center, Boyers, PA 16017. Be sure to include your Civil Service Annuity (CSA) claim number on any correspondence.

Please keep this letter with your other retirement papers for future reference.

You may become eligible for Medicare based on your disability. To qualify, you must be disabled within the meaning of the Social Security Act for 29 months and you must have sufficient earnings in Medicare covered employment. If you believe you may qualify for Medicare, you should contact your local Social Security office promptly to file an

application. A delay in filing could result in a delay in the date your Medicare entitlement may begin.

We understand that retiring on disability may be difficult and unsettling, and hope that your retirement proves to be a positive experience for you.

Sincerely,

*Angela R. Washington*

Angela R. Washington
Initial Claims Branch 1
Legal Administrative Specialist
Disability, Reconsideration, and
    Appeals Group

Exhibit 33, 2005 Work Stub

DHSOIG Production Region

| Name: | **DEMETRI DANIELS** | Pay Period: | **04 : Feb 20 to Mar 5** |
|---|---|---|---|
| Report Type: | **Correction** | Leave Year: | **2005** |
| Status: | **Validated** | | |

Time In Pay: **80:00**                    Other Time: **0:00**                    Days In Pay: **10**

### Time In Pay

| Transaction | Pfx | Sfx | Account Description | 20 S | 21 M | 22 T | 23 W | 24 T | 25 F | 26 S | Wk1 | 27 S | 28 M | 1 T | 2 W | 3 T | 4 F | 5 S | Wk2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Regular Base Pay | | | (NFC Stored Account) | | | 2:30 | | | | | 2:30 | | | | | | | | |
| Admin/Excused Absence | | | (NFC Stored Account) | | | 5:30 | | | | | 5:30 | | | | | | | | |
| OWCP Injury Leave | | | (NFC Stored Account) | | | | 8 | 8 | 8 | | 24 | | 8 | 8 | 8 | 8 | 8 | | 40 |
| Holiday Pay | | | (NFC Stored Account) | | 8 | | | | | | 8 | | | | | | | | |
| **Total** | | | | | 8 | 8 | 8 | 8 | 8 | | **40** | | 8 | 8 | 8 | 8 | 8 | | **40** |

### T&A Profile

| | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F |
| Alternative Schedule | Regular 8-hour Days |
| Agency | DHSOIG |
| State | WV |
| Town | 2040 |
| Unit | 01 |
| Timekeeper | 01 |
| Retain Data | None |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 4102000000 |
| Service Comp Date | Mar 01 1974 |
| Annual Leave Category | 8 hr/pp |

### Leave Data

| | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | 4:00 | 8:00 | 12:00 | -- | 12:00 |
| Sick | 25:00 | 4:00 | 29:00 | -- | 29:00 |
| LWOP | 126:00 | | | -- | 126:00 |
| OWCP Sick | -- | | | 64:00 | 64:00 |
| Other | | | | 5:30 | |

Your signature certifies that all reported time was worked and approved according to law and regulation.

Copyright © 1999-2004 **3i Systems** Inc.

Time & Attendance: Untitled: com.threeis.webta.P550dataTASum

DHSOIG Production Region

| | | |
|---|---|---|
| Name: | **DEMETRI DANIELS** | Pay Period: **04 : Feb 20 to Mar 5 2005** |
| Report Type: | **Regular** | Leave Year: |
| Status: | **Validated** | |

Time In Pay: **10:30**          Other Time: **69:30**          Days In Pay: **2**

### Time In Pay

| | | | | Feb | | | | | | | Feb | | Mar | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 20 | 21 | 22 | 23 | 24 | 25 | 26 | | 27 | 28 | 1 | 2 | 3 | 4 | 5 | |
| Transaction | Pfx | Sfx | Account Description | S | M | T | W | T | F | S | Wk1 | S | M | T | W | T | F | S | Wk2 |
| Regular Base Pay | | | (NFC Stored Account) | | | 2:30 | | | | | 2:30 | | | | | | | | |
| Holiday Pay | | | (NFC Stored Account) | | 8 | | | | | | 8 | | | | | | | | |

### Other Time

| | S | M | T | W | T | F | S | Wk1 | S | M | T | W | T | F | S | Wk2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LWOP | | | 5:30 | 8 | 8 | 8 | | 29:30 | | 8 | 8 | 8 | 8 | 8 | | 40 |
| **Total** | | 8 | 8 | 8 | 8 | 8 | | **40** | | 8 | 8 | 8 | 8 | 8 | | **40** |

| T&A Profile | |
|---|---|
| Pay Plan | General Schedule (reg) |
| Tour of Duty | Full Time |
| Duty Hours | 80 |
| Work Week | M-F |
| Alternative Schedule | Regular 8-hour Days |
| Agency | DHSOIG |
| State | WV |
| Town | 2040 |
| Unit | 01 |
| Timekeeper | 01 |
| Retain Data | Exception Processing |
| Account Data Code | Use Stored Account (NFC) |
| Stored Account (NFC) | 4102000000 |
| Service Comp Date | Mar 01 1974 |
| Annual Leave Category | 8 hr/pp |

| Leave Data | Fwd | Accr | Avail | Used | Bal |
|---|---|---|---|---|---|
| Annual | 4:00 | -- | 4:00 | -- | 4:00 |
| Sick | 25:00 | -- | 25:00 | -- | 25:00 |
| LWOP | 126:00 | | | 69:30 | 195:30 |

Your signature certifies that all reported time was worked and approved according to law and regulation.

Copyright © 1999-2004 3i Systems Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEMETRI J. DANIELS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL CHERTOFF, Secretary, | ) |
| U.S. Department of Homeland Security | ) |
| | ) |
| Defendants. | ) |
| | ) |

Civil Action No. 07-0505 (RBW)

# EXHIBITS

MOTION TO DISMISS OR IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT

| | |
|---|---|
| Exhibit 1 | Email May 21, 2003 |
| Exhibit 2 | Email May 27, 2003 |
| Exhibit 3 | Letter of July 12, 2003 |
| Exhibit 4 | Workers' Compensation Claim |
| Exhibit 5 | Letters of Denial from Department of Labor |
| Exhibit 6 | Letter dated Sept. 24, 2003 |
| Exhibit 7 | Supervisor's Memo to Record of Nov. 19, 2003 |
| Exhibit 8 | Leave request package dated Oct. 29, 2003 |
| Exhibit 9 | Letter of Nov. 21, 2003 with Voice Mail Transcripts |
| Exhibit 10 | Letter of Dec. 1, 2003 |
| Exhibit 11 | Letter of Dec. 8, 2003 Documenting Agreement between OIG and Pl.'s Counsel |
| Exhibit 12 | Lewis Summary Medical Report of Dec. 17, 2003 - FILED UNDER SEAL |

| Exhibit 13 | Letter of Dec. 18, 2003 |
| --- | --- |
| Exhibit 14 | Letter of Jan. 14, 2004 |
| Exhibit 15 | Letter of Feb. 9, 2004 |
| Exhibit 16 | Letter of Feb. 10, 2004 |
| Exhibit 17 | Letter of Feb. 11, 2004 |
| Exhibit 18 | Allen Medical Report of March 1, 2004 - FILED UNDER SEAL |
| Exhibit 19 | Emails of March 2, 2004 |
| Exhibit 20 | Notice of Proposed Removal of March 8, 2004 |
| Exhibit 21 | Lewis Medical Excuse Note of Feb. 22, 2005 |
| Exhibit 22 | Letter of Feb. 28, 2005 |
| Exhibit 23 | Lewis Medical Report of March 7, 2005 - FILED UNDER SEAL |
| Exhibit 24 | Letter of Nov. 16, 2004 from DHS Personnel Security Division Discontinuing Efforts to Process Pl.'s Top Secret Security Clearance |
| Exhibit 25 | Finn Security Clearance Letter of Feb. 18, 2005 |
| Exhibit 26 | Supervisor's Statement for Disability Retirement Packet, pp. 3-5 |
| Exhibit 27 | Approval of Disability Retirement Application dated Apr. 13, 2005 |
| Exhibit 28 | Zelnick Email of Feb. 4, 2004 |
| Exhibit 29 | Third Workers' Compensation Claim |
| Exhibit 30 | Second Workers' Compensation Claim - PARTIALLY FILED UNDER SEAL |
| Exhibit 31 | Denial Letter of May 10, 2005 |
| Exhibit 32 | Letter of Apr. 25, 2005 |
| Exhibit 33 | 2005 Work Stub |

**FILED UNDER SEAL**

| | |
|---|---|
| Exhibit 12 | Lewis Summary Medical Report of Dec. 17, 2003 |
| Exhibit 18 | Allen Medical Report of March 1, 2004 |
| Exhibit 23 | Lewis Medical Report of March 7, 2005 |
| Exhibit 30 (in part) | Dr. Jan E. Fiske's brief psychological evaluation |